# In the United States Court of Federal Claims

No. 18-496C
Filed: December 27, 2018

*******************************************

|  |  |
|---|---|
| CHRISTINE E. STAHL, | * |
|  | * |
| Plaintiff, *pro se*, | * |
|  | * |
| v. | * |
|  | * |
| THE UNITED STATES, | * |
|  | * |
| Defendant. | * |

*******************************************

**Christine E. Stahl,** Tampa, Florida, Plaintiff, *pro se*.

**Sonia Williams Murphy**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION TO DISMISS

**BRADEN,** *Senior Judge*.

## I.    RELEVANT FACTUAL BACKGROUND.[1]

Dr. Christine E. Stahl was an active duty United States Air Force ("Air Force") Lieutenant Colonel ("Lt. Col."), who served for approximately 17 years and 9.5 months, most recently as the Medical Director of the Internal Medicine Clinic of the 6th Medical Operations Squadron at MacDill Air Force Base ("MacDill") in Tampa, Florida.  Compl. at 2.  From December 18, 2009 to March 1, 2017, Lt. Col. Stahl was stationed at MacDill, but for a one year deployment to Afghanistan in 2012.  Compl. at 2–3.

In October of 2013, Lt. Col. Stahl entered into an agreement with the Air Force to accept $20,000 in Multi-Year Incentive Special Pay ("MISP") and $35,000 in Multi-Year Special Pay ("MSP"), in exchange for a four year active duty service commitment ("ADSC").  Compl. at 3. This required Lt. Col. Stahl to serve until November 30, 2017, subject to *pro rata* recoupment of the MISP and MSP, if she did not serve for the entire term.  Compl. at 3.

---

[1] The facts herein were derived from the April 4, 2018 Transfer Complaint ("Compl.").

In January 2014, Lt. Col. Stahl "suffered hardship" caused by her mother's death and a divorce proceeding that resulted in shared custody of her two children. Compl. at 3.

In December 2015, Lt. Col. Stahl was selected for promotion to Colonel, with an expected promotion date of May 2017. Compl. at 4.

On March 15, 2016, the Air Force Colonel Management Office ("Colonel's Group") notified Lt. Col. Stahl that she was being reassigned to Lackland Air Force Base in Texas ("Lackland"). Compl. at 3. Lt. Col. Stahl declined the assignment and instead elected to separate from the Air Force, pursuant to Air Force Instruction ("AFI") 36-2110, § 2.30 (Sept. 22, 2009), that provides officers a seven day option to accept or reject an assignment, by requesting a separation. Compl. at 3. The Air Force "told [Lt. Col. Stahl that she] had no other choice but to request separation and join the reserves[;]" she was not informed that she could "request a hardship waiver in lieu of assignment[,]" pursuant to Air Force Instructions.[2] Compl. at 3–4. On March 16, 2016, Lt. Col. Stahl applied for a separation date of July 1, 2016. Compl. at 4.

On May 21, 2016, Lt. Col. Stahl was notified that she had been promoted to the rank of Colonel and was instructed to "pin on" the rank of Colonel the next working day. Compl. at 4. On July 18, 2016, Lt. Col. Stahl was instructed to remove the rank of Colonel and replace it with the rank of Lt. Col, without any explanation. Compl. at 4.

On November 16, 2016, Lt. Col. Stahl formally withdrew her separation request by a letter to the lead assignments officer, Lt. Col. Nate Somers, citing AFI 36-3207, § 2.14.1 (July 9, 2004).[3] Compl. at 5. Lt. Col. Somers informed Lt. Col. Stahl that, nonetheless, she would be separated and February 1, 2017 was her separation date.[4] Compl. at 5.

---

[2] AFI 36-2110, § A24.1 (Sept. 22, 2009) states that a reassignment or deferment "may be approved when it is clearly in the best interests of the Air Force." To be eligible, a servicemember must substantiate a humanitarian problem involving a family member "that is more severe than usually encountered by other Air Force members with a similar problem." AFI 36-2110, § A24.5.1 (Sept. 22, 2009). AFI 36-2110 provides examples of requests that are normally disproved, including requests "associated with child care arrangements" and "[t]hreatened separation, divorce action, or the desire to pursue child custody." AFI 36-2110, §§ A24.7.2, 9 (Sept. 22, 2009).

[3] AFI 36-3207, § 2.14.1 provides that officers may request withdrawal of (1) "an approved [date of separation ("DOS")] up to 30 days before the DOS takes effect by giving reasons for the withdrawal and stating that they have not traveled or used the separation orders to move family members, ship household goods, or receive advance travel entitlements[;]" or (2) "a pending separation application by giving reasons for the withdrawal." AFI 36-3207, § 2.14.1.1–2 (July 9, 2004). But, AFI 36-3207, § 2.14.1 also contains an exception that states: "Officers may not submit withdrawal requests within 30 days of their approved DOS unless the request is for hardship." AFI 36-3207, § 2.14.1 (July 9, 2004).

[4] AFI 36-2110, § 2.30.1.1 states, in pertinent part, that "[t]he decision to approve or disapprove the withdrawal request will be based upon the best interest of the Air Force." AFI 36-2110, § 2.30.1.1 (Sept. 22, 2009).

On January 5, 2017, the Secretary of Air Force Personnel Counsel ("SAF/PC") approved the separation date of February 1, 2017, but declined to waive the ADSC. Compl. at 5. As a result, Lt. Col. Stahl owed the Air Force the amount she received for the pro-rated MISP and MSP bonuses. Compl. at 5.

On January 9, 2017, Lt. Col. Stahl received orders reflecting a voluntary honorable discharge and separation date of February 1, 2017. Compl. at 6. On January 26, 2017, Lt. Col. Stahl wrote Lt. Col. Somers that she had not heard a response about her November 16, 2016 withdrawal of separation and was concerned about completing the necessary tasks prior to separation, including taking a Transition Assistance Program ("TAP") course.[5] Compl. at 6.

On January 30, 2017, Lt. Col. Stahl's separation date was extended to March 1, 2017. Compl. at 6.

On February 8, 2017, Lt. Col. Stahl contacted the Colonel's Group to notify the Air Force of her intention to seek a writ of prohibition from the United States Court of Appeals for the Armed Forces to receive retirement benefits. Compl. at 7. The Colonel's Group responded that Lt. Col. Stahl would be separated on March 1, 2017 and provided her with information about the procedure for withdrawing a separation request by obtaining an endorsement from the Wing Commander. Compl. at 7. On February 13, 2017, Lt. Col. Stahl requested an endorsement from her Wing Commander. Compl. at 7. On February 20, 2017, the Wing Commander met with Lt. Col. Stahl, but denied endorsement of the February 13, 2017 withdrawal request, stating that "it was at her complete discretion to do so." Compl. at 7.

On February 16, 2017, Lt. Col. Stahl completed a correspondence version of the TAP course. Compl. at 6.

On February 20, 2017, Lt. Col. Stahl requested assistance and clarification from the SAF/PC about her November 16, 2016 and February 13, 2017 requests to withdraw the prior separation request, but did not receive a reply. Compl. at 7.

---

[5] TAP is a congressionally mandated course designed to "provide for individual pre[-]separation counseling of each member of the armed forces whose discharge or release from active duty is anticipated as of a specific date." 10 U.S.C. § 1142(a) (effective Dec. 12, 2017 to Aug. 12, 2018; an identical regulation was in effect from Jan. 2, 2013 to Nov. 24, 2015). Counseling "shall commence as soon as possible . . . [and] in no event shall pre[-]separation counseling commence later than 90 days before the date of discharge of release[,]" unless "separation is unanticipated until there are 90 or fewer days before the anticipated retirement or separation date . . . [then] pre[-]separation counseling shall begin as soon as possible within the remaining period of service." 10 U.S.C. § 1142(a)(3)(A), (B) (effective Dec. 12, 2017 to Aug. 12, 2018; an identical regulation was in effect from Jan. 2, 2013 to Nov. 24, 2015). AFI 36-3203 § 1.9 states that "TAP participation is mandatory for all eligible separating Service members with 180 days of active duty or more. Members are required to contact the installation Airman & Family Readiness Centers (A&FRC) to be scheduled for the TAP." AFI 36-3203 § 1.9 (Sept. 18, 2015).

On March 1, 2017, Lt. Col. Stahl separated from the Air Force. Compl. at 7. Dr. Stahl was unemployed for the next four months. Compl. at 7. On May 1, 2017, Dr. Stahl repaid the Air Force the $15,122.08 for the MISP and MSP. Compl. at 5-6.

On June 26, 2017, Dr. Stahl was rehired at MacDill as a civilian doing the same work she previously performed. Compl. at 8.

## II.  PROCEDURAL HISTORY.

On February 27, 2017, Dr. Stahl ("Plaintiff") filed a *pro se* Complaint in the United States District Court for the Middle District of Florida, Tampa Division ("District Court"). On April 4, 2018, the District Court transferred the case to the United States Court of Federal Claims and Plaintiff filed a *pro se* Transfer Complaint in the United States Court of Federal Claims. The April 4, 2018 Transfer Complaint alleges that Plaintiff was discharged from the Air Force without cause, in violation of: (1) the due process clause of the Fifth Amendment to the United States Constitution; (2) promissory estoppel; (3) "Congressional Mandate[;]" and (4) Air Force regulations. Compl. at 8. In addition, the April 4, 2018 Complaint alleges retaliation and intentional infliction of emotional distress. Compl. at 8–9. The April 4, 2018 Transfer Complaint requests: (1) back pay; (2) the cost of medical insurance for four months of unemployment; (3) the "recouped prorated medical specialty bonus pay[;]" and (4) "reinstatement at the rank of Colonel with credit for time in service lost," together with interest, or "immediate full active duty retirement benefits (with credit for a minimum of 24 years of military service)." Compl. at 9.

On May 31, 2018, the Government filed an Unopposed Motion For An Enlargement Of Time to file a response. On June 1, 2018, the court granted the May 31, 2018 Unopposed Motion.

On June 19, 2018, the Government filed a second Motion For An Enlargement Of Time to file a response. On June 21, 2018, the court granted the June 19, 2018 Motion. That same day, the Government filed an Administrative Record ("AR 1–79") and a Motion To Dismiss And Alternatively, For Judgment On The Administrative Record ("Gov't Mot.").

On August 22, 2018, Plaintiff, by leave of the court, filed a Response To The Motion To Dismiss And Cross-Motion For Judgment On The Administrative Record ("Pl. Resp.").

On September 6, 2018, the Government filed a Reply In Support Of Its Motion To Dismiss And Alternatively, For Judgment on the Administrative Record ("Gov't Reply").

## III.  DISCUSSION.

### A. Subject Matter Jurisdiction.

Subject matter jurisdiction is a threshold issue that a court must determine at the outset of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

The Tucker Act authorizes the United States Court of Federal Claims with jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act does not "create[] substantive rights." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). Instead, the Tucker Act is a "jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)." *Id.*

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"). "The other source of law need not explicitly provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it 'can fairly be interpreted as mandating compensation by the Federal Government.'" *Navajo Nation*, 556 U.S. at 1552 (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)). "This 'fair interpretation' rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity." *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (citations omitted).

The court addresses whether it has subject matter jurisdiction to adjudicate each of the claims alleged in the April 4, 2018 Transfer Complaint at Section III.D.4, *infra*.

**B. Standing.**

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017). Therefore, the party "invoking federal jurisdiction bears the burden of establishing the[ ] elements [of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To demonstrate the existence of a case or controversy, a plaintiff must show "an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision.'" *Bank of Am. Corp.*, 137 S. Ct. at 1302 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). The United States Court of Federal Claims, although an Article I court, "applies the same standing requirements enforced by other federal courts created under Article III." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009).

The April 4, 2018 Transfer Complaint alleges that the Air Force involuntarily discharged Plaintiff from service resulting in monetary injury in the form of lost pay, medical insurance costs, and lost retirement benefits. Compl. at 8–9. Therefore, the April 4, 2018 Transfer Complaint alleges an injury in fact that is "fairly traceable" to the challenged Air Force actions and that can be redressed by a favorable decision. *See Pittman v. United States*, 135 Fed. Cl. 507, 522 (Fed. Cl. 2017) (determining that a retired service member had standing, because "a favorable decision by the court would allow Plaintiff to recover that back pay owed").

For these reasons, the court has determined that Plaintiff has standing to seek an adjudication of the claims alleged in the April 4, 2018 Transfer Complaint.

### C. Standards Of Review.

Rule 12(b)(1) of the United States Court of Federal Claims ("RCFC") authorizes a party to file a motion asserting a "lack of subject-matter jurisdiction." RCFC 12(b)(1). "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Stephens v. United States*, 884 F.3d 1151, 1155 (Fed. Cir. 2018) (citations omitted).

Rule 12(b)(6) of the United States Court of Federal Claims authorizes a party to file a motion asserting a "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). "To survive a Rule 12(b)(6) motion, [a] complaint must allege facts plausibly suggesting (not merely consistent with) a showing of entitlement to relief." *Harris v. United States*, 868 F.3d 1376, 1379 (Fed. Cir. 2017) (citations omitted). And, as with Rule 12(b)(1), the court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.*

It has been the tradition of this court to "interpret [a] *pro se* complaint liberally." *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). A *pro se* plaintiff must still establish the court's jurisdiction. *See Tindle v. United States*, 56 Fed. Cl. 337, 341 (Fed. Cl. 2003) ("The fact that plaintiff is proceeding *pro se,* however, does not change the ultimate legal standard and plaintiff's burden of proof on subject matter jurisdiction."). And, a *pro se* plaintiff "must still meet minimal standards to avoid dismissal under Rule 12(b)(6)." *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018).

### D. The Government's June 21, 2018 Motion To Dismiss.

#### 1. The Government's Argument.

The Government argues that the court should dismiss the April 4, 2018 Transfer Complaint's due process and promissory estoppel claims. Gov't Mot. at 11. The court does not have jurisdiction "to adjudicate claims arising under the [D]ue [P]rocess [C]lause of the Fifth Amendment to the United States Constitution[,] because [it is] not money-mandating." Gov't Mot. at 13 (citation omitted). The court also does not have jurisdiction to adjudicate a claim for promissory estoppel. Gov't Mot. at 13.

In addition, the April 4, 2018 Transfer Complaint fails to state a claim upon which relief can be granted for involuntary discharge, because Plaintiff voluntarily resigned from military service. Gov't Mot. at 15. Instead of accepting her promotion and reassignment, Plaintiff "knowingly and voluntarily decided to exercise her 7 day option to separate from the Air Force." Gov't Mot. at 15. Granting a hardship request is within the discretion of the Air Force. Gov't Mot. at 15. Therefore, whether the Air Force failed to inform Plaintiff of the possibility of seeking a hardship request does not alter Plaintiff's voluntary decision to separate. Gov't Mot. at 15. In addition, Plaintiff's withdrawal request does not "rebut the presumption of voluntariness[,]" because such a request is not automatically approved and is left to the discretion of the Air Force. Gov't Mot. at 16. As such, the April 4, 2018 Transfer Complaint "fail[s] to state a plausible Tucker

6

Act claim[; therefore,] the [c]ourt does not have jurisdiction to order the equitable relief" including reinstatement and promotion that Plaintiff requests. Gov't Mot. at 17.

In addition, Plaintiff is not entitled to recoupment of the medical specialty bonus pay, because the April 4, 2018 Transfer Complaint alleges that Plaintiff understood the MISP and MSP bonuses required her to serve until November 30, 2017 or those pay incentives could be recouped. Compl. at 3. Plaintiff did not serve until that date; therefore, proportional recoupment was proper. Gov't Mot. at 18.

Plaintiff also does not request nor is entitled to any relief for the alleged violation of a "Congressional mandate" that presumably refers to not completing the TAP course within the proper time frame. Gov't Mot. at 18. Plaintiff took the course prior to separation and the April 4, 2018 Transfer Complaint does not allege that the Air Force obstructed her from taking the course. Gov't Mot. at 19. In addition, the court does not have jurisdiction to adjudicate the alleged tort claims of retaliation and intentional infliction of emotion distress. Gov't Mot. at 19.

## 2. Plaintiff's Response.

Plaintiff responds that the "non-frivolous allegations in [the April 4, 2018 Transfer Complaint] satisfies the jurisdictional requirement" of the Tucker Act as to the due process and promissory estoppel claims. Pl. Resp. at 18. The Military Pay Act is a separate money-mandating statute that allows a wrongful discharge claim to be adjudicated by the court. Pl. Resp. at 19. The Tucker Act also "allows actions upon express or implied-in-fact contracts" and "money claims against the [G]overnment to determine issue[s] of law and fact." Pl. Resp. at 19. The Air Force did not afford Plaintiff her due process rights and did not abide by its regulations by ignoring her withdrawal request. Pl. Resp. at 20. Moreover, there are "multiple cases that have allowed estoppel to be employed against the [G]overnment." Pl. Resp. at 20.

In addition, the April 4, 2018 Transfer Complaint does state a claim on which relief can be granted, because Plaintiff involuntarily was discharged when she "unsuccessfully tried to withdraw [her] resignation with ample time before its effective date[.]" Pl. Resp. at 21. The Air Force disregarded Plaintiff's right to withdraw her separation request. Pl. Resp. at 22. In addition, it was not in the Air Force's best interest to decline her withdrawal request, as demonstrated by the Air Force's need for Plaintiff's services and decision to retain her for a year after her initial separation request and rehire her as a civilian after her separation. Pl. Resp. at 22, 28. Furthermore, "when a withdrawal of resignation is made prior to the effective date of its execution, it cannot be arbitrarily rejected on the grounds of complete discretion." Pl. Resp. at 26 (quotations omitted). The Air Force did not provide a reason why Plaintiff's withdrawal request was in its best interests. Pl. Resp. at 26. In addition, Plaintiff was harassed, retaliated against, subjected to a hostile work environment, and "denied the 90 days to execute what she 'learned' in the TAP course[.]" Pl. Resp. at 24.

## 3. The Government's Reply.

The Government replies that Plaintiff received orders to relocate and voluntarily resigned in lieu of reassignment. Gov't Reply at 5. Plaintiff never had a "right" to withdraw her separation request; "the ultimate decision as to whether to accept the withdrawal was always in the hands of

the Air Force." Gov't Reply at 5. In addition, the April 4, 2018 Transfer Complaint "provides no explanation for how the Air Force allegedly 'denied' or in any way prevented her from taking the TAP course within the proscribed ninety days before her separation." Gov't Reply at 6. It was Plaintiff's responsibility to take the course that is publicly advertised and available online. Gov't Reply at 6.

Finally, the court should ignore the claims Plaintiff raises in her Response of abuse, sexual discrimination, and hostile work environment, because it is "improper for a party to raise new claims not included in its complaint in an opposition to a motion to dismiss." Gov't Reply at 7 (citation omitted).

### 4. The Court's Resolution.

#### a. Plaintiff's Due Process Claim.

The Tucker Act requires a plaintiff to identify a substantive right for money damages under an independent source of law that can fairly be interpreted as money-mandating. *See Navajo Nation*, 556 U.S. at 1552; *see also Todd*, 386 F.3d at 1094. The United States Court of Appeals for the Federal Circuit has held that the Fifth Amendment Due Process Clause is not money-mandating. *See Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987) ("Although the Fifth Amendment's due process clause provides that no person shall be deprived of property without due process of law, no language in the clause itself requires the payment of money damages for its violation."); *see also Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) ("The [United States] Court of Federal Claims ordinarily lacks jurisdiction over due process claims under the Tucker Act[.]"). Therefore, the court "does not have jurisdiction to hear [] due process . . . claims under the Fifth Amendment to the United States Constitution." *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997).

For this reason, the court has determined that it does not have jurisdiction to adjudicate the due process claim alleged in the April 4, 2018 Transfer Complaint and must dismiss that claim for lack of subject matter jurisdiction. *See* RCFC 12(b)(1).

#### b. Plaintiff's Promissory Estoppel Claim.

The United States Supreme Court has held that Tucker Act "jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules, Inc. v. United States*, 516 U.S. 417, 423, (1996). "Promissory estoppel is another name for an implied-in-law contract claim." *Lawndale Restoration Ltd. P'ship v. United States*, 95 Fed. Cl. 498, 506 (Fed. Cl. 2010). Therefore, the court does not have jurisdiction to adjudicate a claim based upon promissory estoppel. *See Carter v. United States*, 98 Fed. Cl. 632, 639 (Fed. Cl. 2011) ("This court has no jurisdiction to hear a claim for promissory estoppel[.]") (citations omitted).

For this reason, the court has determined that it does not have jurisdiction to adjudicate the promissory estoppel claim alleged in the April 4, 2018 Transfer Complaint and must dismiss that claim for lack of subject matter jurisdiction. *See* RCFC 12(b)(1).

### c.  Plaintiff's Tort Claims.

The Tucker Act authorizes the United States Court of Federal Claims with jurisdiction to adjudicate claims "for liquidated damages in cases *not* sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added).  In other words, the court "lacks jurisdiction over tort actions against the United States." *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997).

For this reason, the court has determined that it does not have jurisdiction to adjudicate the claims of retaliation and intentional infliction of emotional distress alleged in the April 4, 2018 Transfer Complaint and must dismiss those claims for lack of subject matter jurisdiction.[6]  *See* RCFC 12(b)(1).

### d.  Plaintiff's Transition Assistance Program Claim.

The United States Court of Appeals for the Federal Circuit has held that 10 U.S.C. § 1142 does not "mandate[] money damages." *Ullman v. United States*, 151 F. App'x. 970, 973 (Fed. Cir. 2004).

For this reason, the court has determined that it does not have jurisdiction to adjudicate the April 4, 2018 Transfer Complaint's claim that the Air Force violated the TAP course requirements and must dismiss this claim for lack of subject matter jurisdiction. *See* RCFC 12(b)(1).

### e.  Plaintiff's Involuntary Discharge Claim.

The United States Court of Appeals for the Federal Circuit has held that the Military Pay Act, 37 U.S.C. § 204, is money-mandating. *See Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). "[T]he issue of the voluntariness of a plaintiff's discharge is not jurisdictional; rather, i[t] i[s] a question that should be considered in the context of the merits of a plaintiff's case in determining whether a plaintiff can take advantage of § 204's money-mandating status." *Id.* Therefore, the court has determined it has jurisdiction under the Tucker Act to adjudicate the April 4, 2018 Transfer Complaint's claim of involuntary discharge.  The plaintiff, however, must establish that her "separation was involuntary in order to fit within the scope of, and take advantage of, the money-mandating status of § 204, or else h[er] claim falls for failure to state a claim upon which relief can be granted." *Id.*

"A resignation is 'presumed to be voluntary.'" *Moyer v. United States*, 190 F.3d 1314, 1320 (Fed. Cir. 1999) (citations omitted).  And, "the imposition of a less desirable alternative (mandatory retirement) does not render an otherwise voluntary retirement involuntary." *Id.* at 1319; *see also Sammt v. United States*, 780 F.2d 31, 33 (Fed. Cir. 1985) ("[A] choice of unpleasant alternatives does not make a choice involuntary.").  But, there are circumstances where the United

---

[6] The court does not have jurisdiction to adjudicate the claims of abuse, sexual discrimination, and hostile work environment raised in Plaintiff's August 22, 2018 Response. *See Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[Reply briefs] do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."); *see also Driessen v. United States*, 116 Fed. Cl. 33, 44 n.10 (Fed. Cl. 2014) ("It is generally improper for a party to raise new claims not included in its complaint in an opposition to a motion to dismiss.").

States Court of Appeals for the Federal Circuit has recognized that "the element of voluntariness is vitiated" and a resignation has been held to be involuntary. *See Scharf v. Dep't of the Air Force*, 710 F.2d 1572, 1574 (Fed. Cir. 1983) (listing circumstances where courts have found a resignation rendered involuntary, such as duress, unsuccessful withdrawal, and time pressure). Applicable in this case are two such circumstances: (1) when a resignation is "obtained by agency misrepresentation or deception[;]" and (2) when "an employee unsuccessfully tries to withdraw h[er] resignation before its effective date[.]" *Id.*

### i.   Misrepresentation Or Deception.

"An otherwise voluntary resignation or request for discharge is rendered involuntary if it . . . results from misrepresentation or deception on the part of government officers." *Tippett v. United States*, 185 F.3d 1250, 1255 (Fed. Cir. 1999) *abrogated on other grounds by Metz*, 466 F.3d 991; *see also Moyer*, 190 F.3d at 1320 (holding that the lower court "did not clearly err in finding as a fact that [the plaintiff's] retirement was voluntary[,]" because there was no misrepresentation). The United States Court of Appeals for the Federal Circuit has held that the court must apply an objective test to determine whether "a reasonable person would have been misled [or deceived] by the agency's statements." *Covington v. Dep't of Health & Human Servs*, 750 F.2d 937, 942 (Fed. Cir. 1984). "[T]here is no requirement that an employee be intentionally deceived[,]" so long as the plaintiff "materially relies on the misinformation to h[er] detriment, h[er] retirement is considered involuntary." *Id.*; *see also Scharf*, 710 F.2d at 1575 (holding a plaintiff "justifiably relied on . . . misleading advice to his detriment").

In this case, the April 4, 2018 Transfer Complaint alleges that Plaintiff declined assignment to relocate but, instead, elected to separate from the Air Force. Compl. at 3. This separation is presumed voluntary and the choice between "unpleasant alternatives" does not make Plaintiff's decision involuntary. *See Sammt*, 780 F.2d at 33; *see also Moyer*, 190 F.3d at 1320. The April 4, 2018 Transfer Complaint, however, also alleges that Plaintiff "elected to [] separate from the Air Force as [she] was told [she] had no other choice but to request separation and join the reserves[,]" when she could have applied for a hardship exception under AFI 36-2110, § A24.1. Compl. at 3–4. Therefore, the April 4, 2018 Transfer Complaint alleges that the Air Force misled or deceived Plaintiff to believe that she had only two options and Plaintiff relied on that misrepresentation in making her initial decision to separate.

The Government argues that any misrepresentation or deception was harmless, because the Air Force had the ability to grant hardship requests, although AFI 36-2110 states that requests "associated with child care arrangements" and "[t]hreatened separation, divorce action, or the desire to pursue child custody" normally are disproved. *See AFI 36-2110, §§ A24.7.2, 9 (Sept. 22, 2009)*. The law, however, does not require that a plaintiff must establish that a misrepresentation rises to the level of being prejudicial. *See Covington*, 750 F.2d at 942 (holding that a plaintiff relied on the misinformation or deception that "the agency was going to be abolished and the [plaintiff] had no right of assignment to another position" when the *possibility* of reassignment existed); *see also Tippett*, 185 F.3d at 1256 (holding that the court is "not persuaded by the [G]overnment's argument" that a misrepresentation "was not prejudicial"). The April 4, 2018 Transfer Complaint's allegation that the Air Force represented to Plaintiff that her only two choices were to accept the reassignment or separate, when she could have applied for a hardship request, even if the Air Force was unlikely to grant such a request, is enough at this stage to

10

"plausibly suggest[] . . . a showing of entitlement to relief." *Harris*, 868 F.3d at 1379 (citations omitted).

For these reasons, the court has determined that the April 4, 2018 Transfer Complaint alleges sufficient facts to state a claim for involuntary discharge upon which relief can be granted, based on the Air Force's alleged misrepresentation or deception.

### ii.  Unsuccessful Withdrawal.

In the context of a civilian resignation, a voluntary resignation can be rendered involuntary, if "an employee unsuccessfully tries to withdraw h[er] resignation before its effective date." *Scharf*, 710 F.2d at 1574 (listing withdrawal as a situation where courts have found "that the element of voluntariness is vitiated") (citing *Cunningham v. United States*, 423 F.2d 1379, 1384–85 (Ct. Cl. 1970) (holding a plaintiff's resignation was involuntary when the Air Force denied the withdrawal request)). The United States Court of Federal Claims also has applied this principle in military pay cases. *See Brown v. United States*, 30 Fed. Cl. 227, 230 (Fed. Cl. 1993), *aff'd,* 26 F.3d 139 (Fed. Cir. 1994); *see also Gallucci v. United States*, 41 Fed. Cl. 631, 637 (Fed. Cl. 1998) (considering whether the unsuccessful withdrawal rebutted the presumption of voluntariness).

The predecessor to the United States Court of Appeals for the Federal Circuit has held that "[t]he Secretary [of the Army] can exercise discretion to accept or not, and allow [a] withdrawal [of a resignation] or not, and his decision will be sustained if not arbitrary and capricious and contrary to law." *Cole v. United States*, 231 Ct. Cl. 702, 704 (Ct. Cl. 1892). Therefore, in *Brown*, the court determined that a plaintiff's attempted withdrawal request "had no effect upon his prior resignation" for two reasons. *See Brown*, 30 Fed. Cl. at 230. First, because the "decision to deny or accept a withdrawal of resignation from services rests solely within the discretion of the Army" and that "decision must be granted substantial deference." *Id.* at 230–31. Second, "plaintiff's request was untimely."[7] *Id.* at 231.

In this case, the April 4, 2018 Transfer Complaint alleges that Plaintiff submitted a withdrawal request on November 16, 2016 to the lead assignments officer and again on February 13, 2017 to the Wing Commander. Compl. at 5, 7. The April 4, 2018 Transfer Complaint alleges that the lead assignments officer did not act on the withdrawal request and the Wing Commander denied endorsement of the withdrawal request, stating only that "it was at her complete discretion to do so." Compl. at 5, 7. Drawing "all reasonable inferences" in Plaintiff's favor, these withdrawal requests satisfy the procedural requirements of AFI 36-3207, § 2.14.1.[8] *See Harris*, 868 F.3d at 1379 (citations omitted).

---

[7] At this juncture, the court does not determine whether an untimely withdrawal is fatal to a claim of involuntary discharge based upon an unsuccessful withdrawal. *But cf. Gallucci*, 41 Fed. Cl. at 642 ("Plaintiff must [] be able to demonstrate that all the conditions precedent to granting such a [withdrawal] request were fulfilled.").

[8] AFI 36-3207, § 2.14.1 states that officers may request withdrawal of (1) "an approved DOS up to 30 days before the DOS takes effect by giving reasons for the withdrawal and stating that they have not traveled or used the separation orders to move family members, ship household

More importantly, although the Air Force's decision to reject Plaintiff's withdrawal request is afforded deference, the April 4, 2018 Transfer Complaint alleges that the Air Force's rejection of Plaintiff's withdrawal did not evidence any reasoning that the decision was "based upon the best interests of the Air Force." AFI 36-2110, § 2.30.1.1 (Sept. 22, 2009). The Wing Commander had discretion to deny Plaintiff's withdrawal request, but that alone does not evidence that the decision was not arbitrary and capricious. *See Cunningham*, 423 F.2d at 1384 (holding that the Air Force's stated reason of rejection, that it was "not considered to the mutual advantage of yourself and the Air Force to withdraw this resignation[,]" did not enable the court to "discern [any] exercise of discretion in denying the resignation withdrawal"); *see also Cole*, 231 Ct. Cl. at 704 ("[A withdrawal] decision will be sustained if not arbitrary and capricious and contrary to law.").

For these reasons, the court has determined that the April 4, 2018 Transfer Complaint alleges sufficient facts to state a claim for involuntary discharge on which relief can be granted, based on the Air Force's initial failure to act on Plaintiff's withdrawal request and later decision to deny Plaintiff's withdrawal request without stating the reasons why such a decision was in the "best interests" of the Air Force. To the contrary, the fact that Plaintiff was rehired as a civilian in the same position of responsibility appears to indicate that Plaintiff's separation was not in the "best interests" of the Air Force.

### E. The Motions For Judgment On The Administrative Record.

#### 1. The Government's Argument.

The Government argues, in the alternative, that it is entitled to judgment on the Administrative Record. Gov't Mot. at 21. Grants of hardship requests are left to the discretion of the Air Force and there was "nothing 'illegal' about the Air Force offering [Plaintiff] two options: reassign or separate." Gov't Mot. at 21. In addition, Plaintiff had no "right" to withdraw her separation request and the "Air Force is the ultimate decision maker of whether approval is proper based on manning and the overall best interests of [the] Air Force." Gov't Mot. at 22. Moreover, Plaintiff did not comply with Air Force regulations in making her withdrawal request. Gov't Mot. at 22. The first withdrawal request was not made "through her local chain" and did not "explain her reasons for withdrawal." Gov't Mot. at 22 (citing AFI 36-3207, §§ 2.14.1.2, 2.14.2). The second request was not less than thirty days from the approved separation date and did not "raise any hardship which would arguably have justified processing the withdrawal[.]" Gov't Mot. at 22. In addition, there is nothing in the Administrative Record "to suggest that the Air Force's actions were without a rational basis or not in accordance with the law." Gov't Mot. at 22.

---

goods, or receive advance travel entitlements[;]" or (2) "a pending separation application by giving reasons for the withdrawal." AFI 36-3207, § 2.14.1.1–2 (July 9, 2004). But, AFI 36-3207, § 2.14.1 also contains an exception that states: "Officers may not submit withdrawal requests within 30 days of their approved DOS unless the request is for hardship." AFI 36-3207, § 2.14.1 (July 9, 2004).

### 2. Plaintiff's Response.

Plaintiff responds that the Air Force did not "provide a reason why the [P]laintiff's withdrawal of separation would adversely affect the agency's administration of its personnel requirements" in accordance with Air Force regulations. Pl. Resp. at 26 (citing AFI 36-307, § 2.14.4). The Air Force acted arbitrary and capriciously in denying Plaintiff's withdrawal request and "demonstrated that it desperately needed [] Plaintiff, and needed her at MacDill, because it offered her a [civilian] position filling the same position she occupied as an Active Duty physician[.]" Pl. Resp. at 27–28.

### 3. The Government's Reply.

The Government replies that the Air Force decision to grant Plaintiff's separation request and refusal to accept either of the withdrawal requests "was rational and in accordance with Air Force regulations." Gov't Reply at 8. The Air Force determined that Plaintiff's desire to remain at MacDill was contrary to its needs and hiring her back as a civilian "demonstrates that the Air Force was not retaliating against [Plaintiff] or treating [Plaintiff] as a wrongdoer." Gov't Reply at 9. In addition, Plaintiff required the endorsement of her Wing Commander properly to submit a withdrawal request. Gov't Reply at 10. The Wing Commander was not required to provide a reason for the decision not to endorse Plaintiff's request. *See* AFI 36-3207 § 2.14.4.

### 4. The Court's Resolution.

The Tucker Act provides that "[i]n any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2); *see also* RCFC 52.2(a) (The court "may order the remand of appropriate matters to an administrative or executive body or official.").

In this case, Plaintiff did not first submit a claim of involuntary discharge to the Air Force Board for Correction of Military Records ("AFBCMR"). Therefore, the court remands Plaintiff's involuntary discharge claim to the AFBCMR to determine whether: (1) the Air Force either misrepresented or deceived Plaintiff by informing her that either she was required to accept reassignment or separate; (2) Plaintiff relied on a misrepresentation or deceptive statement by the Air Force to her detriment; and (3) the failure either of the lead assignments officer to act on the November 16, 2016 separation request or the Wing Commander's exercise of discretion in refusing to endorse the February 13, 2017 request was a violation of AFI 36-2110, § 2.30.1.1 (Sept. 22, 2009), particularly since the Air Force rehired Plaintiff as a civilian in the same position of responsibility. *See* Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## IV.   CONCLUSION.

For these reasons, the Government's June 21, 2018 Motion To Dismiss is granted in part and denied in part. All other motions are denied as moot. The involuntary discharge claim is remanded for consideration to the AFBCMR. *See* RFCF 52.2. The Government is directed to report to the court every ninety days on the status of the remand proceedings. *See* RCFC 52.2(b)(1)(D). Within fourteen days after the AFBCMR's decision, the parties will file a Joint Status Report with the court advising whether: (1) the remand affords a satisfactory basis for

disposition of the case; or (2) further proceedings are required. *See* RCFC 52.2(e)(1). This case is stayed during the remand period. *See* RCFC 52.2(b)(1)(C).

The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**SUSAN G. BRADEN**
**Senior Judge**