# In the United States Court of Federal Claims

No. 18-496
Filed:  10 October 2023

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CHRISTINE E. STAHL, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Wojciech Z. Kornacki*, Pentagon Law Office, of Washington, DC, for plaintiff.

*Sonia Williams Murphy*, Trial Attorney, Civil Division, Department of Justice, and *Adam Frey*, Air Force, Judge Advocate General Corps, Department of Litigation, United States Air Force, both of Washington, DC, for defendant.

### OPINION AND ORDER

**HOLTE, Judge.**

Plaintiff Christine E. Stahl,[1] a former Air Force[2] medical officer in the rank of Lieutenant Colonel ("Lt. Col."), alleges:  (1) her separation from the Air Force was involuntary; and (2) the Air Force and its correction board violated their mandates when plaintiff attempted to remain on active duty.  Before the Court are the parties' cross-Motions for Judgment on the Administrative Record and the government's Motion to Dismiss.  Plaintiff contends the Air Force provided inaccurate and incomplete advice regarding her promotion and reassignment-related options and arbitrarily and capriciously refused to properly acknowledge her separation withdrawal requests.  Plaintiff also asserts the Air Force Board for Correction of Military Records acted arbitrarily and capriciously when it concurred with an unreasoned advisory opinion.  The government argues plaintiff failed to state a claim upon which relief can be granted for involuntary discharge because she made an informed decision to separate.  In the alternative, the government argues it is entitled to judgment on the administrative record because the contemporaneous record—notwithstanding "a lot of typos"[3]— demonstrates the Air Force and the Air Force Board for

---

[1] The Court uses "plaintiff"; "Dr. Stahl"; and "Lt. Col. Stahl" interchangeably.

[2] The Court uses "Air Force"; "the government"; and "the agency" interchangeably.

[3] At oral argument, the government agreed the Administrative Record has "a lot of typos." *See* Oral Argument Tr. ("Tr.") at 55:8–9, ECF No. 72 ("[THE GOVERNMENT]:  I found a lot of typos in these records, so the typos do not

Correction of Military Records acted rationally and in accordance with law.  For the following reasons, the Court:  (1) denies the government's Motion to Dismiss; (2) grants in part and denies in part plaintiff's Motion for Judgment on the Administrative Record; and (3) grants in part and denies in part the government's cross-Motion for Judgment on the Administrative Record.

## I.      Factual Background

Plaintiff Christine E. Stahl is a former lieutenant colonel in the United States Air Force. Admin. R. ("AR") at 001 (Undated "Action of the Secretary of the Air Force – 1113506802"), ECF No. 59.  Lt. Col. Stahl served on active duty for approximately seventeen years before separating from the Air Force in March 2017.  AR at 145 (13 January 2017[4] "Memorandum for Force Support Squadron/Commander").

Before her separation, Lt. Col. Stahl served as the Medical Director of the Internal Medicine Clinic of the 6th Medical Operations Squadron at MacDill Air Force Base ("AFB") in Tampa, Florida.  AR at 163 (28 June 2016 "Officer Performance Report").  She was stationed at MacDill from 2009 through her separation, with the exception of a one-year deployment to Afghanistan.  AR at 42–61 (1 July 1999–28 February 2017 Service Record).

Dr. Stahl was promoted to Lt. Col. on 15 May 2011.  *Id.*  On 25 October 2013, Lt. Col. Stahl entered into an agreement with the Air Force to accept a dual contract for Multi-Year Incentive Special Pay ("MISP") and Multi-Year Special Pay ("MSP") for $20,000 and $35,000, respectively.  AR at 062–065 (23 October 2013–30 October 2013 MISP/MSP Form).  The dual contract required Lt. Col. Stahl to accept a four-year active-duty service commitment ("ADSC"), which mandated she serve in the Air Force until 30 November 2017 and subjected her to a pro rata recoupment of the MISP and MSP if she failed to serve the entirety of her committed term. *Id.*

On 10 December 2015, Lt. Col. Stahl was selected for promotion to full colonel and was expected to be promoted in May 2017.  AR at 40–41 (10 December 2015 Colonel Promotion Letters).  In connection with her promotion, Air Force Colonel Management ("AF/A1LO") determined Lt. Col. Stahl should be reassigned to Lackland Air Force Base in Texas.  AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email).  Lt. Col. Stahl was notified of the reassignment via email on 15 March 2016.  AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email).  In accordance with Air Force policy, Lt. Col. Stahl was given seven days to accept or reject the assignment, with separation from the Air Force being a required consequence of rejection.  AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email).  The email provided advice plaintiff's only alternative to accepting her new assignment was to request to separate under Air Force Instruction ("AFI") 36-2110 Assignments (2009).  AR at 66–67 (15

---

surprise me, months, dates, et cetera.").  The Court highlights the typographical errors because:  (1) it is alarming the Air Force failed to properly document procedures and records; and (2) multiple issues in this case resulted from a lack of attention to detail on the part of the Air Force-meaning they could have been avoided with proper diligence. *See* infra Section VIII.F.

[4] The date on the "Memorandum for Force Support Squadron/Commander," AR at 145, incorrectly states "13 January 2016" as opposed to "2017."  *See* AR at 032.

March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email).

According to plaintiff, on the morning of 16 March 2016, plaintiff's chain of command advised plaintiff her only path after declining the reassignment was to resign her commission, transfer to a Reserve unit, and then reapply for the same Air Force position as a civilian.  Pl.'s Resp. and Reply at 4, ECF No. 66.  In 2016, Dr. Stahl was divorced and shared child custody of her two children with her ex-husband in Florida.  Pl.'s Resp. and Reply at 3.  According to plaintiff, she was not advised she could request a humanitarian deferment that would be consistent with Air Force Instruction 36-2110, paragraph A24.9, and Department of Defense Instruction ("DODI") 1315.18 that allow single parents to apply for hardship deferments.  Pl.'s Resp. and Reply at 16, 18 (citing AFI 36-2110, Assignments (2005), Paragraph A24.3 ("A member desiring humanitarian deferment must formally submit his or her request to the Air Force Contact Center.")).  Plaintiff adds her chain of command did not explain she could defer her promotion or request another assignment, or that she would need the Air Force to indorse her withdrawal request.  Pl.'s Resp. and Reply at 5.  Plaintiff also alleges her chain of command failed to advise her she would lose about $2,000,000 of her military retired benefits, once vested, by transferring to a Reserve unit and that these benefits would only become available once she turned 60 years of age.  Pl.'s Resp. and Reply at 14.

On 16 March 2016 at 9:29 a.m., Lt. Col. Stahl rejected the reassignment and elected instead to separate from the Air Force.  AR at 68 (16 March 2016, 9:29 a.m. Separation Request Email); AR at 69 (16 March 2016 "Memorandum for Secretary of the Air Force Personnel Council ("SAF/PC")").  Lt. Col. Stahl indicated her decision was "due to a difficult family situation," as she was "recently divorced . . . and [has] a 10-year-old son" with whom she shares custody with her ex-husband.  AR at 68 (16 March 2016, 9:29 a.m. Separation Request Email).  She noted "there [was] no guarantee that [she] would be able to bring [her] child with [her] to Texas due to these circumstances," and "[t]hree years is too long for [her] to be separated from [her] precious loved one."  AR at 68 (16 March 2016, 9:29 a.m. Separation Request Email).  She also acknowledged her commitment to serve through November 2017 and that she would "owe" because of the conditions of her receipt of the MISP and MSP bonuses.  AR at 68 (16 March 2016, 9:29 a.m. Separation Request Email).

On 17 March 2016, Lt. Col. Stahl completed the paperwork necessary to initiate her separation from the Air Force, including a personally drafted memorandum where she reiterated her reasons for separating:  her divorce and the need to be near her ten-year-old son.  AR at 72 (17 March 2016, 3:14 p.m. Separation Paperwork Email); AR at 069 (16 March 2016 "Memorandum for SAF/PC").  Lt. Col. Stahl also indicated she planned to serve as an Air Force Reserve flight surgeon and intended to apply for her same position at the internal medicine clinic at MacDill.  AR at 69 (16 March 2016 "Memorandum for SAF/PC").

On 21 May 2016, Lt. Col. Stahl claims she was informed she had been promoted to Colonel and was directed to wear the rank of Colonel—exemplified in a single 1 June 2016 Officer Performance Report ("OPR") listing her rank as "Col" on the form.  Pl.'s Resp. and Reply. at 4; AR at 147 (9 June 2016 "Officer Performance Report").  Plaintiff originally requested 1 July 2016 as her separation date, but plaintiff reasons her promotion prevented her from separating on that day, considering the 927th Air Refueling Wing had a *Lieutenant* Colonel

vacancy, although no documentation supports her allegation.  *See* Pl.'s MJAR at 2; AR at 099 (4 June 2016, 7:43 p.m. Email regarding Air Force Reserve Positions).  Lt. Col. Stahl was not scheduled to promote until May 2017, so the Air Force explains the information must have been relayed to Dr. Stahl in error.  *See* Pl.'s Resp. and Reply at 3; AR at 098 (7 July 2016, 1:22 p.m. Email Confirming Lt. Col. Rank).

Over the next several months, Lt. Col. Stahl appeared to work on applying to a Reserve component of the Air Force.  AR at 99 (4 June 2016, 7:43 p.m. Email regarding Air Force Reserve Positions).  It appears she ultimately stopped her pursuit of a Reserve commission because the available assignments and positions were geographically too far away for her personal preference.  AR at 974 (8 July 2021 Memorandum for [the Air Force Board for Correction of Military Records] from AF/A1LO); AR at 1390 (2 February 2017, 3:14 p.m. Email to Air Force District of Washington of Timeline for Lt. Col. Stahl).  Lt. Col. Stahl was then asked to select a date by which she wished to separate from the regular Air Force, to which she replied AFI 36-3207 allowed her to request withdrawal of separation orders.  AR at 1390–91 (2 February 2017, 3:14 p.m. Email to Air Force District of Washington of Timeline for Lt. Col. Stahl).  She later argued her circumstances should permit her to be retained at MacDill.  AR at 114 (14 November 2016, 10:49 a.m. Email Seeking Separation Withdrawal Request).

On 16 November 2016, AF/A1LO informed Lt. Col. Stahl pursuant to AFI 36-3207, she was obligated to separate from active duty because she turned down her assignment.  AR at 928–29 (16 November 2016, 3:37 p.m. Separation Notification Email).  AF/A1LO then notified the Secretary of the Air Force Personnel Council of Lt. Col. Stahl's decision to turn down an opportunity with the Reserve or Air National Guard; Lt. Col. Stahl requested a separation date of 1 February 2017.  AR at 928 (16 November 2016, 3:42 p.m. Separation Notification Email).

Between September 2016 and February 2017, Dr. Stahl emailed numerous Air Force personnel requesting to stop her separation, but her unit failed to process her email requests.  Admin. R. ("Transfer AR") at 28–30, ECF No. 10 (12 September 2016, 9:03 a.m. Email Seeking Separation Withdrawal Request); AR at 114 (14 November 2016, 10:49 a.m. Email Seeking Separation Withdrawal Request); AR at 928–29 (16 November 2016, 3:15 p.m. Email Seeking Separation Withdrawal Request); AR at 135 (19 January 2017, 10:26 a.m. Email Seeking Separation Withdrawal Request); Transfer AR at 2–4 (22 January 2017, 5:47 p.m. Email Seeking Separation Withdrawal Request).  Dr. Stahl also filed an Inspector General complaint; a Congressional inquiry; an amicable resolution request; and a lawsuit in the United States District Court for the Middle District of Florida to stop her separation.  AR at 105–07 (20 January 2017 Inspector General Complaint); AR at 115–16 (24 January 2017 Congressional Inquiry); AR at 117–18 (8 February 2017 "Amicable Resolution of Petition to United States Court of Appeals for Armed Forces for Extraordinary Relief"); Transfer Order at 1, ECF No. 1.

On 5 January 2017, the SAF/PC approved Lt. Col. Stahl's separation from the Air Force with an effective date of 1 February 2017.  *See* AR at 1 (Undated "Action of the Secretary of the Air Force – 1113506802").  SAF/PC declined to waive the ADSC, which resulted in Lt. Col. Stahl owing recoupment of the pro-rated MISP and MSP bonuses.  *Id.*  Lt. Col. Stahl's orders indicated she was considered a voluntary honorable discharge.  AR at 180 (30 January 2017 Request and Authorization for Separation Form).

Lt. Col. Stahl emailed her commander on 19 January 2017 to indicate she did not receive a response to her request to withdraw her separation, and she had not taken any positive steps to out-process from the Air Force. AR at 135 (19 January 2017, 10:26 a.m. Email Seeking Separation Withdrawal Request). Lt. Col. Stahl was ultimately given a one-month extension, moving her separation date to 1 March 2017. Def.'s MTD and Cross-MJAR at 7, ECF No. 64; *see* Pl.'s Resp. and Reply at 19.

On 13 February 2017, Lt. Col. Stahl asked her Wing Commander, Col. April Vogel, to indorse Lt. Col. Stahl's withdrawal of separation as required by Air Force regulations. AR at 119–21 (13 February 2017 Memorandum Seeking Endorsement of Separation Withdrawal Request). In her withdrawal letter, Lt. Col. Stahl indicated she was a skilled physician, and the Air Force needed people with her talents. AR at 119–21 (13 February 2017 Memorandum Seeking Endorsement of Separation Withdrawal Request). Lt. Col. Stahl did not identify any hardships requiring she remain at MacDill. *Id.* On 14 February 2017, Col. Vogel contacted Lt. Col. Stahl's leadership to ask for their opinions. *See* AR at 102 (14 February 2017, 1:27 p.m. Email from Assignment Management System to Wing Commander). The Commander and Deputy Commander of MacDill's medical group opined Lt. Col. Stahl was an excellent physician, but her desire to remain stationed only at MacDill was not in the best interest of the Air Force. AR at 101–02 (14 February 2017, 7:05 p.m. Email from Assignment Management System to Wing Commander). Col. Vogel declined to indorse Lt. Col. Stahl's withdrawal request on 16 February 2017 without providing any reasons. Def.'s MTD and Cross-MJAR at 7.

Lt. Col. Stahl separated from the Air Force on 1 March 2017. *Id.* She paid back the unearned portion of her MISP and MSP bonuses and began working at MacDill AFB Internal Medicine Clinic as a civilian on 26 June 2017. *Id.* Lt. Col. Stahl joined the U.S. Army Reserve on 26 October 2017. *Id.* at 8.

## II. Procedural History

In February 2017, plaintiff, originally *pro se*, filed a complaint and request for an injunction with the United States District Court for the Middle District of Florida, Tampa Division. *See* Transfer Compl., ECF No. 4-1. Plaintiff sought an injunction preventing the Air Force from separating her, or if she was separated, an immediate reinstatement. *Id.* After briefing from both plaintiff and the government, the case was transferred to this court without reaching the merits. Transfer Order at 8–9.

On 4 April 2018, plaintiff filed her complaint with this court. *Id.* at 4. She asserted claims for violation of her Fifth Amendment due process rights, promissory estoppel, involuntary discharge, and violation of Congressional mandate and Air Force regulations. *Id.* at 1, 8. Plaintiff sought back pay, reimbursement for medical insurance and unused leave, pro-rated recoupment of the medical specialty bonuses she received and was required to remit, and reinstatement with a promotion to Colonel. Transfer Compl. at 9. Alternatively, she sought "immediate full active-duty retirement benefits (with credit for a minimum of 24 years of military service)." *Id.* After briefing, on 27 December 2018, the previous judge issued an opinion and order dismissing plaintiff's due process, promissory estoppel, and tort claims for

lack of subject-matter jurisdiction. *See Stahl v. United States*, 141 Fed. Cl. 396, 404–5 (2018) (Braden, J.). Plaintiff's involuntary discharge claim was remanded to the Air Force Board for Correction of Military Records ("AFBCMR" or "the Board") to determine whether:

(1) the Air Force either misrepresented or deceived Lt. Col. Stahl by informing her that she was required to accept the reassignment to Lackland or separate;

(2) Lt. Col. Stahl relied on a misrepresentation or deceptive statement by the Air Force to her detriment; and

(3) the failure of the Air Force officials to act on Lt. Col. Stahl's request to withdraw her separation or of her Wing Commander to indorse her request to withdraw her separation was a violation of AFI 36-2110, § 2.30.1.1, particularly considering the Air Force rehired Lt. Col. Stahl as a civilian in the same position.

*Id.* at 408.

On 29 July 2019, the case was reassigned to the undersigned judge. On 10 February 2020, plaintiff obtained counsel, ECF No. 38. On 3 December 2019, the AFBCMR rendered its decision finding "there is no evidence of an error or injustice" regarding involuntary separation. AR at 1021–27 (3 December 2019 Board Decision). On 21 May 2020, after the remand period concluded, plaintiff amended her complaint ("First Am. Compl."), ECF No. 44. On 14 July 2020, she moved to stay the proceedings and filed a petition for reconsideration with the AFBCMR. *See* Motion to Stay Proceedings, ECF No. 47; AR at 837–39 (12 September 2020 DD Form 149). The AFBCMR rendered its decision on plaintiff's reconsideration petition on 5 August 2022, finding insufficient evidence to overturn the AFBCMR's previous decision. AR at 1009–15 (5 August 2022 Board Decision).

The Administrative Record in this case includes four installments: (1) Transfer AR; (2) AR I, ECF No. 42; (3) AR II, ECF No. 43; and (4) AR.[5] On 5 December 2022, plaintiff filed her Second Amended Complaint. Second Am. Compl., ECF No. 62. The same day, she filed a motion for judgment on the administrative record ("MJAR"). Pl.'s MJAR, ECF No. 63. The government filed a motion to dismiss ("MTD") or, in the alternative, a cross-MJAR on 1 January 2023. Def.'s MTD and Cross-MJAR, ECF No. 64. On 31 January 2023, plaintiff filed her Response to the government's MTD. Pl.'s Resp. to Def.'s MTD, ECF No. 65. On 6 February 2023, plaintiff filed her Response and Reply regarding the cross-MJAR. Pl.'s Resp. and Reply, ECF No. 66. The government filed its Reply in support of its MTD and cross-MJAR on 20 March 2023. Def.'s Reply, ECF No. 68. Plaintiff filed her Reply in opposition to the government's MTD on 2 April 2023. Pl.'s Reply to Def.'s MTD, ECF No. 69. The Court held oral argument on 26 May 2023. Order Setting Oral Argument, ECF No. 70; Oral Argument Tr. ("Tr."), ECF No. 72. At oral argument, the parties confirmed—notwithstanding the density of briefing—the issues before the undersigned judge are: (1) whether the Board's review of Judge Braden's three remand instructions was arbitrary and capricious; and (2) plaintiff's allegation the Board engaged in *ex parte* communications in violation of 10 U.S.C. §1556. Tr. at 100:20–23.

## III.   The Government's Motion to Dismiss Regarding Plaintiff's Claim of Involuntary Discharge

---

[5] Tr. at 32:13–14 ("[THE GOVERNMENT]: It is a voluminous record.")

As noted *supra* Section II, on 27 December 2018, the previous Court of Federal Claims judge denied the government's 21 June 2018 Motion to Dismiss as to plaintiff's involuntary discharge claim.  *See generally Stahl v. United States*, 141 Fed. Cl. 396 (2018) (Braden, J.).  The judge then remanded the claim to the AFBCMR to document the process surrounding plaintiff's separation.  *See supra* Section II; *Stahl*, 141 Fed. Cl. at 408.  On 9 January 2023, post-remand and transfer to the undersigned judge, the government filed a second motion to dismiss.  *See* Def.'s MTD and Cross-MJAR.  At oral argument on 26 May 2023, the government agreed its current Motion to Dismiss should be denied under the law of the case doctrine if it advances the same arguments put forth in the government's 2018 motion.  *See* Tr. at 236:4–9 ("THE COURT: [T]he government agrees that if the decision from Judge Braden covers the current motion to dismiss, then the motion to dismiss can be denied, and we can just focus on the motion for judgment on the Administrative Record?  [THE GOVERNMENT]: Yes, Your Honor.").  The Court therefore compares the government's current Motion to that denied by this court in 2018.

Plaintiff characterizes the government's 2023 Motion as "effectively a rehash of its 2018 motion."  Pl.'s Resp. to Def.'s MTD at 14.  Plaintiff specifically notes the government re-alleges: (1) plaintiff "'knowingly and voluntarily' decided to exercise her option to separate" and (2) "assignment deferment requests are ['typically'] disapproved over divorce and child custody issues."  *Id.*  Plaintiff maintains "[t]he Court of Federal Claims has already considered these arguments in 2018 and it denied the motion."  *Id.* (citing *Stahl*, 141 Fed. Cl. 396).

The government counters plaintiff filed two amended complaints after Judge Braden's decision on 27 December 2018, justifying a "renewed" motion to dismiss.  *See* Tr. at 235:9–10 ("[THE GOVERNMENT]:  [W]e reargued that we could move to dismiss on the voluntary discharge claim alone.").  At oral argument, the government agreed "the original complaint was the exact same as the amended complaint after Judge Braden's decision."  Tr. at 232:11–25 ("[THE GOVERNMENT]:  [T]he most recent complaint, December 2022, was reframed to be consistent with the remand order and the remand decision to the Board.").  The government also understood "the Court is wedded to the law of the case."  Tr. at 235:16–21.

The government argues "Lt. Col. Stahl cannot establish any misrepresentation or deception on the part of the Air Force with regard to her decision to separate" and agreed "to the extent that there are firm decisions that Judge Braden made, those decisions should stand."  Def.'s MTD and Cross-MJAR at 11–16; Tr. at 235:17–19.  In 2018, Judge Braden stated in relevant part:

> [T]he court has determined that the April 4, 2018 Transfer Complaint alleges sufficient facts to state a clam for involuntary discharge on which relief can be granted, based on the Air Force's [alleged misrepresentation or deception and] initial failure to act on [p]laintiff's withdrawal request and later decision to deny [p]laintiff's withdrawal request without stating the reasons why such a decision was in the "best interests" of the Air Force.  To the contrary, the fact that [p]laintiff was rehired as a civilian in the same position of responsibility appears to indicate that [p]laintiff's separation was not in the "best interests" of the Air Force.

*Stahl*, 141 Fed. Cl. at 406–7.

In 2018, the government argued before Judge Braden that plaintiff failed to: (1) state a claim for involuntary discharge; (2) state a plausible Tucker Act claim, meaning this court does not have jurisdiction to order the equitable relief she requests; and (3) justify an entitlement to any monetary relief. *See* Def.'s 21 June 2018 MTD, ECF No. 11. At oral argument held 26 May 2023, the government stated numerous times the undersigned judge is "wedded to the law of the case." Tr. at 235:17. Judge Braden's 27 December 2018 opinion determined: (1) plaintiff's complaint alleges sufficient facts to state a claim for involuntary discharge upon which relief can be granted;[6] (2) the court has jurisdiction under the Tucker Act to adjudicate plaintiff's claim of involuntary discharge[7]; and (3) plaintiff plausibly suggests a showing of entitlement to relief.[8] *See generally Stahl*, 141 Fed. Cl. 396.

The Court accordingly finds the government's Motion to Dismiss was decided in 2018. As agreed by the government at oral argument, a finding that the 2018 motion to dismiss covered the same issues as the government's current Motion to Dismiss warrants denial of the latter. Tr. at 253:4–8 ("[THE GOVERNMENT]: I accept the Court's representation that the law of the case stands. So if the motion to dismiss is denied based on the law of the case and issues being determined already in Judge Braden's decision, then we accept that."). The Court therefore reaffirms the government's Motion to Dismiss is denied. *Id*.; *see also* 18 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4478 (3d ed. 2002); *Suel v. Sec'y of Health & Hum. Servs.*, 192 F.3d 981, 985 (Fed. Cir. 1999) (Under the law of the case doctrine, "a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation."); *SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341, 1355 (Fed. Cir. 2021) (A litigant given one good "bite at the apple" should not have a second.); *Toro, Co. v. White Consolidated Indus., Inc*. 383 F.3d 1326, 1335 (Fed. Cir. 2004) ("The law of the case doctrine is limited to issues that were actually decided . . . .").

## IV.   The Parties' Arguments in Their Cross-Motions for Judgment on the Administrative Record Regarding Whether the AFBCMR Violated its Mandate to Correct Errors or Injustices Identified in the Record and Logically Connect its Denial with the Facts

---

[6] Judge Braden's determination regarding plaintiff's stated claims is two-part: "[T]he court has determined that the April 4, 2018 Transfer Complaint alleges sufficient facts to state a claim for involuntary discharge upon which relief can be granted" based on the Air Force's (1) "alleged misrepresentation or deception"; and (2) "initial failure to act on [p]laintiff's withdrawal request and later decision to deny [p]laintiff's withdrawal request without stating the reasons why such a decision was in the 'best interests' of the Air Force." *Stahl v. United States*, 141 Fed. Cl. 396, 397–98, 407 (2018) (Braden, J.).

[7] Judge Braden stated, in relevant part, "[T]he issue of the voluntariness of a plaintiff's discharge is not jurisdictional, rather, i[t] i[s] a question that should be considered in the context of the merits of a plaintiff's case in determining whether a plaintiff can take advantage of [37 U.S.C.] § 204's money-mandating status." *Stahl*, 141 Fed. Cl. at 405 (citing *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006)). The previous judge thus determined "the court has determined it has jurisdiction under the Tucker Act to adjudicate the April 4, 2018 Transfer Complaint's claim of involuntary discharge." *Id.*

[8] Specifically, Judge Braden decided "[t]he April 4, 2018 Transfer Complaint's allegations that the Air Force represented to [p]laintiff that her only two choices were to accept the reassignment or separate, when she could have applied for a hardship request, even if the Air Force was unlikely to grant such a request, is enough at this stage to 'plausibly suggest[] . . . a showing of entitlement to relief." *Id. at* 396 (citing *Harris v. United States*, 868 F.3d 1376, 1379 (Fed. Cir. 2017)).

Although the parties' MJAR briefing includes a broad range of arguments, at oral argument, the parties agreed the Court was responsible for reviewing four issues regarding the Board:  (1)–(3) Whether the Board satisfied Judge Braden's three remand instructions; and (4) whether the Board engaged in *ex parte* communications.  Tr. at 101:12–20 ("THE COURT:  "[F]or the purposes of the MJAR briefing and what [this Court] need[s] to review, all MJAR briefing counts fit within Judge Braden's three remands that the Board fully review, plus the *ex parte* communications which were later discovered?  [PLAINTIFF]:  Yes, Your Honor.  THE COURT:  [D]oes the government agree?  [THE GOVERNMENT]:  I do.").  The Court accordingly analyzes the parties' briefing in four categories.  Judge Braden's three remand instructions provide this Court with the scope of its review to determine whether the Board "considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it." *Verbeck v. United States*, 97 Fed. Cl. 443 (2011) (citing *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) ("Under the substantial evidence rule, *all* of the competent evidence must be considered.")).  The Court analyzes the fourth issue regarding *ex parte* communications as a new, separate issue because it evolved after remand and before the case was assigned to the undersigned judge.

## A. The Parties' Arguments Regarding Remand Issue One:  Whether the Air Force Either Misrepresented or Deceived Plaintiff by Informing Her that She was Required to Either Accept Reassignment or Separate

In 2018, Judge Braden remanded plaintiff's involuntary discharge claim to the AFBCMR to determine whether "(1) the Air Force either misrepresented or deceived plaintiff by informing her that either she was required to accept reassignment or separate." *Stahl v. United States*, 141 Fed. Cl. 396, 408 (2018) (Braden, J.).  After the Board's decision and the case's transfer to the undersigned judge, the parties dispute whether the agency rationally advised plaintiff regarding her separation.  Plaintiff argues "[the government's] incomplete advice to Dr. Stahl rendered her separation involuntary."  Pl.'s MJAR at 20.  Specifically, plaintiff alleges the government repeatedly failed to ensure Dr. Stahl knew about her rights, made an informed decision, and was aware of the ramifications of her decision.  *Id.*  According to plaintiff, her separation was involuntary considering the Air Force's failure to advise her about the possibility of an assignment deferment request.  *See Id.* at 24.

The government contends plaintiff neither identifies in her complaint any Air Force regulation that required any Air Force official to advise her to decline her promotion nor cites any regulation that suggests she would have been permitted to do so and remain on active duty.  Def.'s MTD and Cross-MJAR at 13.  Likewise, the government asserts Dr. Stahl does not identify any regulation that would have required Air Force officials to advise her to request another assignment.  *Id.* at 13–14.

### (1) Whether the Air Force Failed to Advise About an Assignment Deferment Request

Plaintiff first cites the Air Force's failure to advise her about an assignment deferment

request. Pl.'s MJAR at 20–21. According to plaintiff, on 15 March 2016, the government referred Dr. Stahl to AFI 36-2110 and informed her she had seven days to decline her new assignment under the seven-day option or it would be deemed accepted. Pl.'s MJAR at 20 (AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email); AFI 36-2110, paragraph 2.30 (instructing officers may request to retire or separate)). Plaintiff insists her "commander advised her she had to separate, request a waiver of her bonus, and transfer to a Reserve unit to preserve her retired military benefits." Pl.'s MJAR at 20. In September 2016, the Air Force directed Dr. Stahl to re-submit her separation paperwork, but plaintiff maintains "it again did not advise her on her rights, options, and [the] consequences of her decision." Pl.'s MJAR at 21 (citing Transfer AR at 58–59 (14 September 2018, 10:22 a.m. Email Regarding Pre-Separation Worksheet)).

Plaintiff contends, "[a]lthough the Air Force detailed a Lieutenant Colonel to advise Dr. Stahl about her rights and options, . . . he failed to provide . . . critical information." *Id.* (citing Transfer AR at 16 (16 March 2016, 9:29 a.m. Separation Request Email)). For example, plaintiff argues the Air Force never advised her: (1) she was a single parent, so she could request to defer her assignment and (2) she could simply decline her promotion under AFI 36-2501, and once she reached 18 years of service, the Air Force was unlikely to separate her. Pl.'s MJAR at 20–21 (citing DODI 1315.18, Section 9a; AFI 36-2110, *Assignments*, paragraph A24.8 (2005) ("A request for humanitarian reassignment or deferment is considered based on individual merit taking into account the human factors involved."); AFI 36-3207, paragraph 1.12). Plaintiff explains once she "realized that she received incomplete advice, she repeatedly requested to be retained and to withdraw her [separation] request. Also, she contacted her Congressional representative, filed an Inspector General complaint, and initiated litigation before she was separated." *Id.* at 21.

The government maintains "Lt. Col. Stahl's justification for a humanitarian deferral—her child custody issues—were known and rejected by Air Force officials." Def.'s MTD and Cross-MJAR at 19 (citing AR at 1024 (3 December 2019 Board Decision)). The government clarifies "[h]umanitarian deferrals must be in the best interest of the Air Force," and "the contemporaneous record clearly establishes that the relevant Air Force officials did not believe Lt. Col. Stahl's desire to 'stay in uniform only at MacDill' due to child custody issues was in the best interest of the Air Force." Def.'s MTD and Cross-MJAR at 19 (citing AR at 101 (14 February 2017, 7:05 p.m. Email from Assignment Management System to Wing Commander)). The government concludes "while Lt. Col. Stahl takes issue with that fact that she was not 'advised' that she could request a deferral . . . the fact that she was not included in the discussions regarding her potential for a hardship deferral does not mean the discussions did not occur." Def.'s MTD and Cross-MJAR at 19 (citing AR at 101 (14 February 2017, 7:05 p.m. Email from Assignment Management System to Wing Commander)).

**B. The Parties' Arguments Regarding Remand Issue Two: Whether Plaintiff Relied on a Misrepresentation or Deceptive Statement by the Air Force to Her Detriment**

Judge Braden's second remand instruction—the AFBCMR must determine whether: "(2) [p]laintiff relied on a misrepresentation or deceptive statement by the Air Force to her detriment"—is broad enough to capture a majority of plaintiff's claims in her MJAR briefing.

*Stahl*, 141 Fed. Cl. at 408.  Dr. Stahl challenges the Air Force's failure to advise her about:  (1) retirement interest rates; (2) a transfer delay; and (3) an administrative separation hearing or other rights and options.  Pl.'s MJAR at 21–26.  The government counters "the contemporaneous record shows" plaintiff was provided the requisite pre and post-counseling surrounding her separation.  *See* Def.'s MTD and Cross-MJAR at 22.

### (1) Whether the Air Force Failed to Advise About Retirement Interest Options

Plaintiff next asserts the government failed to advise her about retirement interest options.  Pl.'s MJAR at 21–23.  Plaintiff claims "[a]t the time [she] was making inquiries about her continued service and the new assignment with her chain of command, she also received incomplete advice about her military retired pay."  Pl.'s MJAR at 21 (citing AR at 69 (16 March 2016 "Memorandum for SAF/PC")).  As of March 2016, Dr. Stahl had 3 years and 11 months left before retirement.  Pl.'s MJAR at 21.  Plaintiff adduces "[h]er chain of command advised her to transfer to a Reserve unit to protect her military retired pay and benefits interest."  Pl.'s MJAR at 21–22.  Plaintiff maintains she was not advised a transfer to a Reserve unit "would delay her retired pay and benefits until she was 60 and she would receive approximately $2,000,000 less than if she stayed on active duty."  Pl.'s MJAR at 22.  Plaintiff insists she "did not comprehend the impact of her March 2016 separation request on her retirement benefits until after she was discharged on 1 March 2017."  Pl.'s MJAR at 22.  Plaintiff concludes her "separation was not voluntary as a matter of fundamental fairness and due process" given the government's incomplete advice "omitted relevant information and . . . misrepresented Dr. Stahl's options." Pl.'s MJAR at 23.

The government counters the Air Force not counseling plaintiff regarding the financial consequences of her decision does not establish a misrepresentation or deceit on the part of the Air Force.  Def.'s MTD and Cross-MJAR at 13.  The government emphasizes plaintiff fails to identify any regulation requiring the Air Force provide financial counseling.  Def.'s MTD and Cross-MJAR at 13–14.

### (2) Whether the Air Force Failed to Advise About the Unit Delaying Plaintiff's Transfer Request

Plaintiff adds the government failed to advise about the unit delaying her transfer request. Pl.'s MJAR at 23–24.  In March 2016, Dr. Stahl requested to separate effective 1 July 2016. Pl.'s MJAR at 23 (citing Transfer AR at 24 (17 March 2016 Officer Separation Actions Form)). Plaintiff details she informed her chain of command she would start her reserve service at 927th Air Refueling Wing as a Lieutenant Colonel.  Pl.'s MJAR at 23.  According to plaintiff, "at the time, the second military internist deployed to Afghanistan which meant . . . if Dr. Stahl separated on time the unit would be left with no military internists."  Pl.'s MJAR at 23.  Plaintiff avers, on 21 May 2016, "the unit illegally ordered her to 'pin on' the rank of Colonel, which delayed Dr. Stahl's transfer to the Reserve unit"; once the perceived danger of plaintiff leaving her unit passed, however, plaintiff explains her "chain of command ordered her to 'pin on' her actual rank of Lieutenant Colonel so she could continue to treat patients."  Pl.'s MJAR at 23 (citing AR at 98 (7 July 2016, 1:22 p.m. Email Confirming Lt. Col. Rank)).  Plaintiff concludes the government "wrongfully interfered with her transfer to 927th Air Refueling Wing."  Pl.'s

MJAR at 23.

The government argues plaintiff "relies solely on her own contentions, [and] alleges without support that the rank error was done with intent to prevent her from joining the Air Force Reserves." Def.'s MTD and Cross-MJAR at 23 n.7 (citing Second Am. Compl. ¶¶ 84, 94). The government adds: Plaintiff's "claim is not supported in the record beyond Lt. Col. Stahl pointing to a single Officer Performance Report which, by admission, erroneously identifies her as 'Col.'" *Id.* (citing AR at 163 (28 June 2016 "Officer Performance Report")). The government asserts plaintiff "does not actually claim a legal entitlement to pay any earlier than the actual date the Air Force scheduled her to promote, prospectively May 2017." *Id.* (citing AR at 98 (7 July 2016, 1:22 p.m. Email Confirming Lt. Col. Rank); Second Am. Compl. at 24, ¶ 2 (asking "that Dr. Stahl's military records be corrected to show that she was not discharged on March 1, 2017 but continued to serve without interruption on active duty in the rank of Colonel once her promotion took legal effect")).

### (3) Whether the Air Force Failed to Advise About Rights and Other Options

Plaintiff also takes issue with the Air Force's failure to advise plaintiff about other options available to her. Pl.'s MJAR at 24–25. Specifically, plaintiff presents "[c]onsistent with D[o]DI 1332.30 and AFI 36-3207, Dr. Stahl was entitled to an administrative separation hearing on retention because she has served for over six years on active duty," but plaintiff did not realize the ramifications of giving up her right to a hearing. Pl.'s MJAR at 24 (citing DODI 1332.30; AFI 36-3207). Plaintiff argues she "received no counseling to educate her about her rights and options concerning [the] very important decision for her military service and professional career." Pl.'s MJAR at 24. For example, plaintiff explains the Lieutenant Colonel assigned to counsel Dr. Stahl "only sent one email and otherwise did not respond to Dr. Stahl's inquiries[; a]ll other communications were about how to separate Dr. Stahl." Pl.'s MJAR at 24 (citing AR at 895 (16 March 2016, 10:25 a.m. Email regarding Counseling)).

The government characterizes plaintiff's contention "she could have requested a 'separation hearing under [DoD]I 1332.30'" as "[g]rasping at straws." Def.'s Reply at 6 (citing Pl.'s Resp. to Def.'s MTD at 3). The government contends plaintiff "is plainly incorrect, as 'show cause' hearings before a board of inquiry pursuant to DoDI 1332.30 apply to officers being separated for cause who therefore need to 'show cause for retention.'" Def.'s Reply at 6–7 (citing DoDI 1332.30). The government thus reasons the "instruction was not applicable to Lt Col Stahl's situation." Def.'s Reply at 7. The government concludes:

> The contemporaneous record shows that Lt. Col. Stahl received "leadership support and counseling pre & post her decision to 7-day opt in lieu of an assignment," and that the Air Force was "incredibly accommodating" to Lt. Col. Stahl despite the fact that her declination of reassignment was not in the best interest of the Air Force.

Def.'s MTD and Cross-MJAR at 22-23 (citing AR at 101 (14 February 2017, 7:05 p.m. Email from Assignment Management System to Wing Commander)).

C. **The Parties' Arguments Regarding Remand Issue Three:  Whether Either the Failure of the Lead Assignments Officer to Act on Plaintiff's 16 November 2016 Separation Withdrawal Request or the Wing Commander's Exercise of Discretion in Refusing to Indorse Her 13 February 2017 Request was a Violation of AFI 36-2110 § 2.30.1.5 (2009)[9] and AFI 36-3207 § 2.14.4 (2004)**

The third and final instruction from Judge Braden in 2018 required the Board to analyze the treatment of plaintiff's separation withdrawal requests. *See Stahl*, 141 Fed. Cl. at 408; AFI 36-2110 (2009). Specifically, the previous judge tasked the Board with determining whether the failure either of the lead assignments officer to act on plaintiff's 16 November 2016 separation withdrawal request or the Wing Commander's exercise of discretion in refusing to indorse her 13 February 2017 request was a violation of AFI 36-2110 § 2.30.1.5 (2009). *Stahl*, 141 Fed. Cl. at 408. The Court reviews the parties' post-remand arguments surrounding plaintiff's separation withdrawal process.

(1) **Whether the Air Force Failed to Advise About a Separation Withdrawal Request**

Plaintiff also contends the government provided incomplete advice to Dr. Stahl on how to submit her separation withdrawal request and then failed to timely process it in accordance with AFI 36-3207. Pl.'s MJAR at 25–26 (citing AFI 36-3207). Plaintiff documents "[b]etween September 2016 and February 2017, Dr. Stahl continued to request to be retained, to deploy, and not to be separated." Pl.'s MJAR at 25 (citing Transfer AR at 28–30 (12 September 2016, 9:03 a.m. Email Seeking Separation Withdrawal Request); AR at 113–14 (14 November 2016, 10:49 a.m. Email Seeking Separation Withdrawal Request); Transfer AR at 2–4 (22 January 2017, 5:47 p.m. Email Seeking Separation Withdrawal Request)). Plaintiff explains, on 5 January 2017, "the Secretary of the Air Force approved Dr. Stahl's separation without knowing Dr. Stahl did not want to be separated." Pl.'s MJAR at 26 (citing AFI 36-3207, paragraph 2.14.2.1 (stating a copy of the separation application, the withdrawal of a separation instead of assignment and the wing commander indorsement will be forwarded to HQ AFPC/DPPRSO)). Plaintiff explains her correspondence with Air Force personnel surrounding her attempts to withdraw her separation requests. Pl.'s MJAR at 25–26. For instance, on 14 November 2016, at 11:03 a.m., a Lieutenant Colonel emailed Dr. Stahl's unit to "'provide the latest on Lt Col Stahl's separation status,'" omitting "the information Dr. Stahl just emailed him that she did not want to separate and stat[ing] he would continue to move forward with the Secretary of the Air Force Personnel Council decision package." Pl.'s MJAR at 25 (citing Transfer AR at 47 (14 November 2016, 11:03 a.m. Email regarding Lt. Col. Stahl's Separation Status)).

On 16 November 2016 at 3:37 p.m., a Lieutenant Colonel emailed Dr. Stahl with information about applying for separation for hardship and withdrawing separation requests but did not include "the portion of the instruction stating wing commander indorsements had to be included in the requests." Pl.'s MJAR at 25–26 (citing Transfer AR at 66 (16 November 2016, 3:37 p.m. Email Documenting AFI 36-3207); AFI 36-3207, paragraph 2.14.2.1 ("Forward a copy of the separation application, the withdrawal request of a separation instead of assignment, and

---

[9] At oral government, the government noted Judge Braden cited AFI 36-2110 § 2.30.1.1 (2009) in her 2018 remand instructions, but the correct regulation is AFI 36-2110 § 2.30.1.5 (2009). Tr. at 156:8.

the wing commander indorsement directly to HQ AFPRC/DPPRSO.")).  Plaintiff asserts she did not receive any responses to her requests and learned from the Inspector General she had to request her wing commander indorse her separation withdrawal request.  Pl.'s MJAR at 26 (citing AR at 119–21 (13 February 2017 Memorandum Seeking Endorsement Separation Withdrawal Request)).  Plaintiff adds:  The government violated its own AFI and could not provide rationale for its decisions.  Pl.'s MJAR at 27.  The AFBCMR Superintendent questioned why the Air Force failed to process Dr. Stahl's requests to withdraw her separation and failed to explain its non-indorsement of her request to withdraw her separation request.  AR at 1511–12 (15 July 2021, 2:43 p.m. AFBCMR Superintendent Email Soliciting AF/A1LO Advisory Request).

Plaintiff presents three adverse results from the Air Force's failure to advise about the separation withdrawal request.  Pl.'s MJAR at 26–27.  First, plaintiff specifies, contrary to AFI 36-3207, the government failed to "provide any reasons for its non-[i]ndorsement of Dr. Stahl's request to withdraw her separation and it effectively blocked Dr. Stahl's requests to withdraw her separation request."  Pl.'s MJAR at 27 (citing AFI 36-3207).  Second, plaintiff contends the government "acted contrary to the best interests of the Air Force by separating Dr. Stahl only to rehire her for the same position in the same office treating the same patients as a civilian" considering "[t]he Air Force 'is in dire need for well-trained active-duty physicians.'"  Pl.'s MJAR at 26–27 (citing AR at 101 (14 February 2017, 7:05 p.m. Email from Assignment Management System to Wing Commander); AR at 119–21 (13 February 2017 Memorandum Seeking Endorsement Separation Withdrawal Request)).  Third, the government also failed to "timely process Dr. Stahl's request to withdraw her separation request, [so] the Secretary of the Air Force approved the separation request without the benefit of knowing that Dr. Stahl requested to withdraw it, and that her unit planned to rehire her in the same position anyway."  Pl.'s MJAR at 26 (citing AR at 1 (Undated "Action of the Secretary of the Air Force – 1113506802")).

The government counters "the Air Force's declination of Lt. Col. Stahl's separation withdrawal requests does not rebut the presumption of voluntariness."  Def.'s MTD and Cross-MJAR at 14.  The government adds:  "While Air Force members may request withdrawal of previously submitted separation requests, these 'are not automatically approved.'"  Def.'s MTD and Cross-MJAR at 14 (citing AFI 36-2110, ¶ 2.30.1.5).  The government highlights "[t]he Air Force alone is the ultimate decision maker regarding whether to approve or decline the request based on manning and the overall best interest of the Air Force."  Def.'s MTD and Cross-MJAR at 14 (citing AFI 36-2110, ¶ 2.30.1.5).  The government concludes "just as matters of duty assignments are normally considered nonjusticiable by Federal courts; it follows that the determination of whether retaining an officer at a particular assignment, or reversing her decision to separate, is within the 'best interests of the Air Force' is similarly nonjusticiable."  Def.'s MTD and Cross-MJAR at 15 (citing *Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953); *see also King v. United States*, 50 Fed. Cl. 701, 710 (2001) ("Assignments . . . are matters wholly internal to the military and inappropriate for judicial review.")).

**D.  The Parties' Arguments Regarding Whether the Board Engaged in *Ex Parte* Communications in Violation of 10 U.S.C. § 1556**

The parties contest whether the Board failed to provide plaintiff with materials associated with plaintiff's application to the Board for corrective action. Plaintiff contends "the AFBCMR and the [government] engaged in *ex parte* prohibited communications in violation of 10 U.S.C. §1556" (Military Law—*Ex parte* communications prohibited), which requires an applicant seeking corrective action before a military board receive copies of all correspondence and communications relating to their case. *See* Pl.'s MJAR at 28 (citing AR at 1508 (28 September 2021, 6:12 p.m. Email with 9 July 2021 AF/A1LO Advisory Opinion Attachment); AR at 1504 (8 December 2021, 11:03 a.m. Email from AF/A1LO to AFBCMR)). Plaintiff specifies "[i]n the process of contacting the Air Force for additional answers, the AFBCMR engaged in *ex parte* prohibited communications under 10 U.S.C. § 1556 because material and relevant information was discussed that was not provided to Dr. Stahl in its entirety," specifically an advisory opinion dated 9 July 2021 and an email from The Colonels Group describing Lt. Col. Stahl's case as a "challenge." *See* Pl.'s MJAR at 31. Plaintiff concludes, "[b]y failing to resolve the errors and injustices, the Board violated its mandate, and its decision is arbitrary and capricious." *Id.*

Regarding plaintiff's allegations of *ex parte* communications, specifically an advisory opinion dated 9 July 2021 and an email from The Colonels Group about plaintiff's case, the government clarifies: (1) there was no advisory opinion dated 9 July 2021—only one dated 8 July 2021; "[t]he email Lt. Col. relies upon for her assertion that there was a July 9, 2021 advisory contained a simple typo wherein the July 8, 2021 advisory was incorrectly labeled as a July 9, 2021 advisory"; and (2) "[T]he Colonels Group communication indicating that Lt. Col. Stahl's case was 'a challenge since it was a while back' falls plainly within an exception to the *ex parte* communication rule in that it was 'purely administrative.'" *See* Def.'s MTD and Cross-MJAR at 25 (citing AR at 974 (8 July 2021 Memorandum for AFBCMR from AF/A1LO); AR at 1504 (8 December 2021, 11:03 a.m. Email from AF/A1LO to AFBCMR); 10 U.S.C. § 1556 (exempting "correspondence that is purely administrative in nature")).

## V.   Legal Standard:  The Air Force Board for Correction of Military Records in the Scope of 10 U.S.C. §§ 1552, 1556

For the motion for judgment on the administrative record, plaintiff bears the burden to prove through the administrative record the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. *See Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). In accord with this standard, the Court does not reweigh the evidence but considers whether the Board's conclusion is supported by substantial evidence. *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). As long as the Board's action comported with the procedural standards mandated by statute or regulation, considered the relevant evidence, and reached a reasonable conclusion, the court will not disturb the Board's decision. *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011).

A court may set aside an agency's decision if the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). When substantial evidence supports the Board's

action, and when that action is reasonable in light of all the evidence presented, the Court will not disturb the result. *Martinez v. United States*, 333 F.3d 1295, 1314 (Fed. Cir. 2003) (en banc) (citing *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir.1998)).

Pursuant to 10 U.S.C. § 1552, the AFBCMR is mandated to correct injustices and errors clearly presented in the record. *See Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004). When the AFBCMR fails to correct an injustice that is clearly presented in the record, it violates 10 U.S.C. § 1552. *Id.* The Secretary of the relevant military department and his or her boards have "an abiding moral sanction to determine insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief.'" *Id.* (citing *Caddington v. United States*, 147 Ct. Cl. 629, 634 (1959)). When the AFBCMR fails to support its decisions with substantial evidence, relief may be appropriate, including setting the AFBCMR's decision aside. *See Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986).

In challenging the determinations of a military corrections board, a plaintiff must demonstrate "by cogent and clearly convincing evidence," *id.* (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)), the military board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Id.* at 1576. It is well settled "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citations omitted). Moreover, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citing *Arens v. United States*, 969 F.2d 1034, 1037 (Fed. Cir. 1992)).

AFI 36-2603, Air Force Board for Correction of Military Records (2012) states the applicant has the burden of providing sufficient evidence of material error or injustice. AFI 36-2603, Section 4. The Board will make determinations regarding whether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and if so, what corrections are needed to provide full and effective relief. AFI 36-2603, Section 4. The Board proceedings record must address documentary evidence, findings, conclusions, and recommendations. AFI 36-2603, Section 4.8.

Pursuant to 10 U.S.C. § 1556:

> [t]he Secretary of each military department shall ensure that an applicant seeking corrective action by . . . the Air Force Review Boards Agency . . . is provided a copy of all correspondence and communications (including summaries of verbal communications) to or from the agency or board, or a member of the staff of the agency or board, with an entity or person outside the agency or board that pertain directly to the applicant's case or have a material effect on the applicant's case.

10 U.S.C. § 1556(a). The Code includes five exceptions to *ex parte* communications rule:

(1) Classified information.
(2) Information the release of which is otherwise prohibited by law or regulation.
(3) Any record previously provided to the applicant or known to be possessed by the applicant.
(4) Any correspondence that is purely administrative in nature.
(5) Any military record that is (or may be) provided to the applicant by the Secretary of the military department or other source.

10 U.S.C. § 1556(b).

## VI.   Analysis Regarding Remand Issue One:  Whether the Air Force Misrepresented or Deceived Plaintiff by Informing Her that She was Required to Accept Reassignment or Separate

The parties disagree as to the adequacy of the Air Force's advice to plaintiff regarding her options after receiving a notice of reassignment from Florida to Texas.  The Air Force provided plaintiff with the "standard email" regarding the seven-day option—where, within seven days from the date of the assignment notification, service members must make an election pursuant to AFI 36-2110, ¶ 2.30—"to accept or reject the assignment, with separation from the Air Force being a required consequence of rejection."  Def.'s MTD or Cross-MJAR at 4–5, 12–13 (citing AFI 36-2110); *see* AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email); Tr. at 122:2–8 ("THE COURT:  [T]here's a standard email given to all Air Force medical officers when receiving reassignment.  There's not a special email that analyzes each person and where they're at and tailors it to their specific condition. [PLAINTIFF]:  Correct, Your Honor, and there's no regulation that requires the Air Force to do that.").  The Court accordingly analyzes the email and subsequent correspondence to determine whether the Board properly concurred with AF/A1LO's opinion, claiming "there is nothing in writing that mandates the Air Force counsel applicants on the various options that they can take, as there is no way to identify the needs of all members."  AR at 1013 (5 August 2022 Board Decision at 4).

On 15 March 2016, the AF/A1LO Director sent Lt. Col. Stahl an email regarding "Round 1 Colonel Gameplan Assignment Notification" to Lackland Air Force Base in Texas.  AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email).  The email read in relevant part:

> In accordance with AFI 36-2110, the 7-day period for declining your assignment commenced with chain of command notification or this email, if not previously notified. You have until COB (local) Tuesday, 22 March 2016, to accept or decline your Gameplan assignment . . . .  If no action is complete within 7 days, the system will automatically update your acceptance . . . .  Officers electing to decline their assignment are required to immediately submit their retirement eligibility check and retirement application . . . with a 1 July 2016 retirement effective date.

AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email). The government maintains all advice is in the initial 15 March 2016 email informing plaintiff of her reassignment, considering "the language is . . . if you intend to decline, then check on the retirement, and it cites the regulation.  So, Dr. Stahl had every opportunity to go to the regulation itself and to research further steps if she was so inclined."  Tr. at 121:7–11.

On 16 March 2016, plaintiff responded to the email regarding her assignment notification.  AR at 68 (16 March 2016, 9:29 a.m. Separation Request Email).  Plaintiff stated:

> Unfortunately, I must request your assistance to decline this promotion/[Permanent Change of Station] move and request assistance in separation from Active Duty at this time.  I have been told I must apply for a waiver since I owe ADSC time due to [M]ISP/MSP bonus through [30 November 2017].

*Id.*  Plaintiff explained her separation was "due to a difficult family situation" regarding her child joint custody agreement.  *Id.*

Plaintiff argues the Air Force—via email and through her chain of command— erroneously advised plaintiff only had two options after receiving her reassignment to Texas:  (1) accept or (2) decline and separate.  Pl.'s MJAR at 3.  Specifically, plaintiff avers the Air Force should have advised plaintiff she could:  (1) request another assignment; (2) decline her promotion; or (3) "submit[] a humanitarian deferment request as a single parent."  *Id.* at 4. Plaintiff contends "[i]t's much more convenient for the Air Force to just send a generic message and say you have those two options, but, in fact, that's not accurate, because each airman has their own specific such situation . . . ."  Tr. at 118:9–12; Tr. at 23:22–24 ("[THE GOVERNMENT]:  [S]he was a very senior officer in the Air Force, and she is clearly familiar with the regulations, as she cites to them in several of her emails, and, again, the regulations are cited here in the assignment notice.").  Plaintiff believes "the Air Force should tailor emails specifically to an understanding of where each medical officer happens to be in rank and location and life situation."  *See* Tr. at 122:9–14.  Finally, plaintiff claims "the minute her commander opens the commander's mouth and started to advise her that she only [had] one option [to avoid a reassignment to Texas], legally, the commander was required to advise her about other options than . . . resign, transfer, and request a waiver . . . ."  Tr. at 140–41:22–2.

The government maintains even if Air Force regulations required the AF/A1LO to analyze individual personnel to tailor emails, plaintiff, in this case, had two available responses to her reassignment detail because the other options plaintiff suggests were not applicable to her situation.  *See* Tr. at 122:1–8; Tr. at 23:10–22 ("[THE GOVERNMENT]:  She did have seven days and moved immediately, but I do want to be clear that the record is pretty clear that her options were what were presented.  Her options were to accept the reassignment and/or to begin the retirement process, and it turns out she didn't have the time for retirement, so that resulted in a separation.  But she could have used more of the seven days to ask for counseling, seek assistance, et cetera.").  The Board specifically asked AF/A1LO if plaintiff had other options that better responded to her desire to serve, including (1) request another assignment; (2) turn down

her promotion; or (3) submit a humanitarian deferment request.  AR at 995–96 (Undated[10] Questions from Board to AF/A1LO).  AF/A1LO responded in turn:

(1) "The assignment selection is based on the needs of the Air Force, and she would not have been granted another assignment by AF/A1LO, due to the needs of the Air Force."
(2) "If the member turned down her promotion, she would still be a Colonel Select and would have to follow O-6 assignment rules."
(3) "At the time of this case, the member's situation did not meet the program eligibility of a humanitarian deferment or reassignment.  The humanitarian request would have been denied."

AR at 995–96 (Undated Questions from Board to AF/A1LO).  Specific to the question of a humanitarian deferment request, the government adds:  "[T]he Air Force regulations make clear that there is an expectation that you be available for worldwide assignment, even the regulation that discusses single parents says single parents must also be available for worldwide assignments."  Tr. at 120:18–23.  Plaintiff acknowledges "[t]here's no specific instruction saying that you have to advise about the humanitarian deferment request," Tr. at 128:20–22, and recognizes all personnel, irrespective of their eligibility to apply for a humanitarian deferment request, receive the same "generic notice," which "does not reference the humanitarian option at all."  Tr. at 131:25–132:1; *see* Tr. at 130:21–31:15.

In an email dated 14 February 2017 from Air Mobility Command personnel to colleagues regarding plaintiff's "Endorsement of Withdrawal of Separation" email chain, Colonel Williford said "Col[onel] Ostrand and Col[onel] Wright [are] aware that Lt Col Stahl is now realizing the ramifications of her decision to 7-day opt and looming separation action."  AR at 101 (14 February 2017, 1:27 p.m. Email from Assignment Management System to Wing Commander).  Plaintiff argues "a fair reading of this email [is] Dr. Stahl's unit is realizing that she didn't have all the information when she was making the decision back in March," Tr. at 111:1–4, whereas the government interprets the email as "[s]he's realized, okay, I really did just have two options here," Tr. at 110:3–4.  Both readings can be true.

In this case, the Board reviewed the AF/A1LO's determination plaintiff was entitled to two options following her receipt of the reassignment email and specifically asked the advisory group about other options, to which the AF/A1LO explained why the options were not viable for plaintiff.  *See* AR at 1013 (5 August 2022 Board Decision).  Moreover, both parties agree "there is nothing in writing that mandates the Air Force counsel applicants on the various options that they can take."  AR at 1013 (5 August 2022 Board Decision); Tr. at 121:2–6 ("[THE GOVERNMENT]:  There is no regulation that requires [more advice than the notification email presents], and, most generally, officers understand and acknowledge that when they receive a reassignment, they are to accept the reassignment."); *see* Tr. at 137:19–25 ("[PLAINTIFF]:  "I'm not aware of any specific Air Force Instruction that says each airman needs to be advised of

---

[10] The Board Analysis Division of the AFBCMR recognizes the Questions from the Board to the AF/A1LO are not dated.  *See* AR at 994 (16 March 2022 Board Analysis Division Letter) ("Since we are required by law to provide an applicant a copy of all communications that could directly or materially affect his or her case, the attached letter, not dated, which will be considered by the Board, is provided for your review and comments.") ("Attachment: AF/A1LO Letter, not dated").

declining a promotion; however, that's one of the options, and if Dr. Stahl . . . received full advice from the chain of command or from . . . someone else, then she would have known that that would be her other option."); Tr. at 128:20–22 ("[PLAINTIFF]:  There's no specific instruction saying that you have to advise about the humanitarian deferment request.").  Indeed, plaintiff states specifically she is "not aware of any specific Air Force Instruction that says each airman needs to be advised of declining a promotion."  Tr. at 137:19–21.

Any conclusion requiring the Air Force to provide counseling on every available option would have implications beyond the Court's purview.  *See Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) (noting the admonition against court interference with military matters).  The scope of review of the decision of a military correction board is a narrow and deferential one.  The Court is "'limited to determining whether a decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.'" *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983)).  Here, the inquiry is whether the AFBCMR, "given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review."  *Williams v. United States*, 116 Fed. Cl. 149, 157 (2014).  In this case, if the Court were to negate the Board's decision as to the Air Force's presented options, it would essentially require the Air Force to tailor each reassignment email to the specific military personnel—a demand the Court is not jurisdictionally able to impose on the agency.  *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010) (recognizing this Court does not serve as a "super correction board" and will not substitute its judgment for that of a military correction board); *Pittman v. United States*, 135 Fed. Cl. 507, 538 (2017) ("Routine military personnel decisions are not justiciable, even if they are collateral consequences from other, challenged proceedings."); *Fisher v. United States*, 402 F.3d 1167, 1176 (Fed. Cir. 2005) ("When issues of Federal military authority are brought to the courts, the constitutional construct may dictate that, in limited circumstances, a particular controversy may be such that a decision maker other than the judiciary should have the final say.").  The Federal Circuit has recognized "there are 'thousands of . . . routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with.'"  *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993) (alteration in original) (quoting *Voge v. United States*, 844 F.2d at 780).  Routine personnel reassignment correspondence is internal to the military.  *See id.*  The Court accordingly finds the Board properly concluded the government did not err in providing plaintiff two standard options available to all Air Force officers.  AFI 36-2110; *Fuentes v. United States*, 157 Fed. Cl. 433, 453 (citing *Heisig*, 719 F.2d at 1156) (To sustain the Board's decision, the Court must be persuaded that the Board "considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it.").

## VII.   Analysis Regarding Remand Issue Two:  Whether Plaintiff Relied on a Misrepresentation or Deceptive Statement by the Air Force to Her Detriment

Regarding Remand Issue Two—where the Board concurred with the AF/A1LO's evaluation "the applicant was aware of her pending separation from active duty in March [20]16 after declining her assignment and submitting for separation" and, thus, did not rely on the

agency's misrepresentation or deception—the Court examines any remaining MJAR claims with the exception of those related to the separation withdrawal process, *see infra* Section VIII.  AR at 1011 (5 August 2022 Board Decision).  Plaintiff contends:

> [T]he Air Force failed to adequately inform the applicant about her legal rights concerning her new assignment and the second and third level effects on her active duty pay and retirement benefits.  She relied on these misrepresentations, just as she relied on the misrepresentations concerning her early promotion to the grade of colonel.

AR at 1012 (5 August 2022 Board Decision).  Specifically, plaintiff argues her chain of command failed to advise her:  (1) "in addition to resigning[,] she had other options that better responded to her desire to serve[, such as] request a hearing to determine whether she would be retained on active duty"; (2) she was effectively forfeiting 50 percent of her military retirement benefits"; (3) "there is no one counseling standard within the Air Force"; and (4) "[h]er unit [could] act[] in bad faith by falsely promoting her to the grade of colonel to prevent her from transferring to a Reserve unit and then converting her military position to a [General Schedule ('GS')] position."  AR at 1012–13, 1017 (5 August 2022 Board Decision).  The Court addresses each argument in turn.

First, plaintiff argues the Air Force's inaction in processing plaintiff's separation requests constitutes a violation of plaintiff's "rights to a hearing, to a board, and to present her case."  Tr. at 124:11–12.  Plaintiff reasons the government's repeated orders for plaintiff to submit separation requests equates to plaintiff "being ordered essentially to forgo her rights to a Board of Inquiry and just submit a request to resign."  Tr. at 124:7–9.  Plaintiff explains, pursuant to DoDI 1332.30 ("Separation of Regular and Reserve Commissioned Officers"), each officer with over six years of service is entitled to an administrative separation board.  *See* Tr. at 124:15–19.  The government clarifies Board of Inquiry hearings "pursuant to DoDI 1332.30 apply to officers being separated 'for cause' who therefore need to 'show cause for retention.'"  Def.'s Reply at 6–7 (citing DoDI 1332.30).  The government explains "[b]y the time her request got up to the Board for the waiver of her active-duty service commitment, it had timed out.  So, she had to resubmit her request."  Tr. at 123:11–14.  Plaintiff is neither able to articulate a violation of an applicable governing Air Force or Department of Defense regulation nor provide an example "of any Air Force officer being issued a new assignment and then being given notice that 'by the way, you can decline it and go to a Board of Inquiry[.]'"  Tr. at 124:23–25:2; Tr. at 125:12–23.  The AFBCMR concurred with AF/A1LO's finding plaintiff "was aware of her pending separation from Active Duty in Mar[ch] 2016 after declining her assignment and submitting for separation."  AR at 1011 (5 August 2022 Board Decision).  Application of the arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence."  *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983).  Given the lack of a codified rule requiring a hearing and the inapplicability of a Board of Inquiry to plaintiff's separation, the Court finds the AFBCMRs decision with regard to an administrative separation hearing was not arbitrary and capricious.  *Id.*

For the second claim of misrepresentation, plaintiff argues the Air Force was offering

"piecemeal advice" in terms of retirement benefits. Tr. at 151:15. Plaintiff notes the misrepresentation is "[n]ot a violation or any incorrect statement of law, just a lack of notification." Tr. at 150–51:25–1. For the same reason *supra* Section VI, the Court agrees with the Board regarding the inability of the Air Force to counsel every officer on "the second and third level effects concerning their military retired pay and benefits." AR at 1014 (5 August 2022 Board Decision). Therefore, as stated *supra* Section VI, the Board's decision was not arbitrary and capricious. *Heisig*, 719 F.2d at 1157.

Plaintiff further argues "[t]he Air Force's failure to develop written guidance for Air Force officers who are selected for promotion . . . suggests that unlike in other personnel actions, there is no one counseling standard within the Air Force." AR at 1013 (5 August 2022 Board Decision). Plaintiff adds "telling officers to separate, join Reserves and then come back to the same position as a GS employee is arbitrary and capricious and improperly circumvents the system of processing Air Force personnel actions." AR at 1013–14 (5 August 2022 Board Decision). The Board determined "nothing in writing . . . mandates the Air Force counsel applicants on the various options that they can take, as there is no way to identify the needs of all members." AR at 1013 (5 August 2022 Board Decision). The AF/A1LO also emphasized plaintiff "knowingly had a minimum of seven[] months to prepare for separation." AR at 210 (13 September 2019 AF/A1LO 2019 Advice Memorandum). The Air Force assigned plaintiff a Lieutenant Colonel to serve as a counselor, and while the government recognizes it is "not aware of her receiving written counseling related to the decision" and is "only familiar with the one email once they were introduced," plaintiff confirmed she is "not aware of any Air Force instruction" dictating the degree of counseling required. Pl.'s Reply at 24; AR at 895 (16 March 2016, 10:25 a.m. Email regarding Counseling); Tr. at 137:19–21; Tr. at 142:17–18; 142:25–43:1; Tr. at 144:22–45:1 ("THE COURT:  [W]hat regulation requires Wisneski, acting in the position that he was, to provide that level of information?  [PLAINTIFF]:  I'm not aware of any Air Force instruction . . . ."); Tr. at 147:8–14 ("THE COURT:  So [was] Lieutenant Colonel Wisneski . . . required to share with her any specific information or opportunity?  [THE GOVERNMENT]: Not that I'm aware of, Your Honor.  There is no document or regulation or instruction that I've seen that required him to provide any specific information."). Notwithstanding the one email from Col. Wisneski introducing himself to Dr. Stahl, the government maintains:

> The contemporaneous record shows that Lt. Col. Stahl received "leadership support and counseling pre & post her decision to 7-day opt in lieu of an assignment," and that the Air Force was "incredibly accommodating" to Lt. Col. Stahl despite the fact that her declination of reassignment was not in the best interest of the Air Force.

Def.'s MTD and Cross-MJAR at 22–23 (citing AR at 101 (14 February 2017, 7:05 p.m. Email from Assignment Management System to Wing Commander)). In the same vein, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citation omitted). The Court holds the Air Force was not arbitrary and capricious in its counseling, considering all Air Force regulations were followed. *Id.*; *see* AFI 36-3207.

Finally, to determine whether the Air Force "acted in bad faith by falsely promoting her

to the grade of colonel to prevent her from transferring to a Reserve unit and then converting her military position to a GS position," AR at 1012–13, 1017 (5 August 2022 Board Decision), the Court makes "factual findings [under RCFC 52.1] from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005). When asked if there was "any written correspondence of Dr. Stahl being told to pin-on the rank of Colonel," plaintiff noted she "do[es]n't think the units put in writing [the] . . . order to . . . get promoted; however, the unit told her verbally, 'You need to "pin on" the rank of . . . Colonel.'" Tr. at 42:11–14. Plaintiff argues the only Administrative Record evidence is: (1) the evaluation Dr. Stahl received for 2 June 2015 to 1 June 2016, noting she was promoted to the rank of Colonel, AR at 147 (9 June 2016 "Officer Performance Report");[11] and (2) an email from "Colonels Group" personnel, AR at 98 (7 July 2016, 1:22 p.m. Email Confirming Lt. Col. Rank), allegedly in response to plaintiff's statement "once the unit learned that Dr. Stahl would be leaving on [1 July 2016], because she had a lieutenant colonel position in the reserve unit, the unit told her 'you need to pin-on the rank of colonel,'" Tr. at 41:14–18.[12] *See* Tr at 41:21–25. The government contends: (1) the record indicating "Colonel" as plaintiff's "rank" is a typographical error—exemplified in the "clear error" that is "the June 2015 date [noted on the record] preced[ing] her . . . promotion as colonel-select, which was December 2015," Tr. at 43:15–18; and (2) plaintiff received a response to her email from The Colonels Group Health Professions Assignments Chief who corrected plaintiff's understanding she was promoted to Colonel, stating "I was able to confirm that you will pin-on 6 yrs from your date of rank to Lt Col: May 2017. You are still a Lt Col." *See* Tr at 41:21–25; AR at 98 (7 July 2016, 1:22 p.m. Email Confirming Lt. Col. Rank). The government concludes its "reading of the record is that the only person who considered Dr. Stahl to promote was Dr. Stahl." Tr. at 58:13–15. "Resolution of a motion respecting the administrative record is akin to an expedited trial on the paper record, and the Court must make fact findings where necessary." *Baird v. United States*, 77 Fed. Cl. 114, 116 (2007). Among a variety of other results of a promotion to be expected, plaintiff did not receive: (1) a change of email address for Lt. Col. to Col.; (2) a new ID card; or (3) a promotion ceremony. *See* Tr. at 46:2–47:9. The Court finds, based on all relevant evidence, plaintiff was not told to "pin on" the rank of Colonel. *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (The Court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."); *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) ("[T]he evaluation and weighing of evidence are factual determinations committed to the discretion of the factfinder.").

Plaintiff distinguishes between "[m]isrepresentation . . . caused by providing misleading information [and misrepresentation caused by] by failing to provide relevant information." *Tippet v. United States*, 185 F.3d 1250, 1255 (Fed. Cir. 1999). She does not argue the Air Force expressly violated a law and, instead, contends the agency presented a lack of evidence. *See* Tr. at 150:22–51:2; Tr. at 119:21–20:2 ("[PLAINTIFF]: I think this is just a generic [reassignment] email that the Air Force sends out, but we are contending that it was incomplete. Then, Dr. Stahl

---

[11] Box 3 in plaintiff's 9 June 2016 "Officer Performance Report" form, which notes "Rank," reads "Col." AR at 147 (9 June 2016 "Officer Performance Report").

[12] On 7 July 2016 at 1:22 p.m., Lt. Col. Jennifer A. Tay, Health Professions Assignments Chief with "The Colonels Group," emailed plaintiff, stating, "[i]t was great speaking with you today! I was able to confirm that you will pin-on 6 y[ea]rs from your date of rank to Lt Col: May 2017. You are still a Lt Col." AR at 98 (7 July 2016, 1:22 p.m. Email Confirming Lt. Col. Rank).

went to her chain of command to ask for more information, and they told her your only option is to resign, transfer, and request a waiver."). In fact, plaintiff agrees there is no record evidence of improper advice, and the incomplete advice claim stems from plaintiff alleging the instructions from the Air Force she only had two options upon receiving her reassignment notification was erroneous. Tr. at 120:4–9 ("THE COURT: . . . [I]s there anywhere in the Administrative Record that plaintiff was advised from her chain of command the only option was to decline the reassignment and resign her commission or transfer to a reserve unit? [PLAINTIFF]: No, Your Honor."). The Court concludes, given the lack of record evidence, the Board correctly concurred with the AF/A1LO there are no AFIs that require advice on every option a military officer has upon reassignment notification. *See* AR at 1013 (5 August 2022 Board Decision) ("[T]here is nothing in writing that mandates the Air Force counsel applicants on the various options that they can take, as there is no way to identify the needs of all members."). By extension, the Court holds the Board's decision as to Remand Issue Two, whether plaintiff relied on misrepresentations or deceptive statements, was neither arbitrary nor capricious. *Boyer v. United States*, 323 F. App'x 917, 920 (Fed. Cir. 2009) (Military corrections boards need not explain their reasoning in great detail.); *Bannum*, 404 F.3d at 1357 (directing the court to make "factual findings from the record evidence as if it were conducting a trial on the record.").

## VIII.   Analysis Regarding Remand Issue Three:  Whether the Failure of the Command to Act on the 16 November 2016 Separation Request or the Wing Commander's Exercise of Discretion in Refusing to Indorse the 13 February 2017 Request was a Violation of AFI 36-2110 § 2.30.1.5 (2009) and AFI 36-3207 § 2.14.4 (2004)

Plaintiff sent five emails—12 September 2016; 14 November 2016; 16 November 2016; 19 January 2017; and 22 January 2017—to different Air Force personnel seeking a separation withdrawal request. Transfer AR at 28–30 (12 September 2016, 9:03 a.m. Email Seeking Separation Withdrawal Request); AR at 113–14 (14 November 2016, 10:49 a.m. Email Seeking Separation Withdrawal Request); AR at 928–29 (16 November 2016, 3:15 p.m. Email Seeking Separation Withdrawal Request); AR at 135 (19 January 2017, 10:26 a.m. Email Seeking Separation Withdrawal Request); Transfer AR at 2–4 (22 January 2017, 5:47 p.m. Email Seeking Separation Withdrawal Request); *see* Tr. at 159:21–25 ("THE COURT: Well . . . communication about [withdrawing her separation] was September 2016, right? [PLAINTIFF]:  Yes, Your Honor, because that's . . . the first time Dr. Stahl was under the impression that she could actually withdraw it herself."). The Air Force did not directly respond to the emails, Tr. at 87:20–23 ("[PLAINTIFF]:  [S]he was following up with her unit, 'What about my withdrawal request?'  And she was just being ignored and not responded to."), and, instead, ordered plaintiff to submit additional separation paperwork because the requests either "timed out" or the Air Force extended plaintiff's separation to account for "transition time." Tr. at 123:10–20; Tr. at 126:22–25. For example, plaintiff argues "[o]n 14 Nov[ember 20]16, she formally submitted a request to the lead assignments officer . . . to withdraw her separation request [in accordance with] AFI 36-3207" (2004), but the officer "ignored her withdrawal of separation statement and responded that she would be separated . . . ." AR at 1022 (3 December 2019 Board Decision). While plaintiff does not allege the changes in her separation date were a violation, Tr. at 126:7–14; Tr. at 126:22–27:3, she contends the Air Force's failure to acknowledge her withdrawal requests disregarded AFI 36-2110 § 2.3.15. Tr. at 146:13–18 ("[PLAINTIFF]:  I think in this case the Air Force knew she didn't want to separate, but it still

- 24 -

kept ordering her to submit another request, and in that instance, they said, 'We don't care what you do, we are not going to process your withdrawal request. We are going to separate you.'"); *see also* Tr. 182:112–16.

On 13 February 2017, Lt. Col. Stahl directly asked her Wing Commander, Col. April Vogel, to indorse her withdrawal of separation. AR at 119–21 (13 February 2017 Memorandum Seeking Endorsement of Separation Withdrawal Request). The next day, Col. Vogel contacted Lt. Col. Stahl's leadership to ask for their opinions. AR at 102 (14 February 2017, 1:27 p.m. Email from Assignment Management System to Wing Commander). The Commander and Deputy Commander of MacDill's medical group opined Lt. Col. Stahl was an excellent physician, but her desire to remain stationed only at MacDill was not in the best interest of the Air Force. AR at 101 (14 February 2017, 7:05 p.m. Email from Assignment Management System to Wing Commander). On February 15, 2017, Dr. Stahl's Wing Commander failed to provide a reason for not indorsing Dr. Stahl's withdrawal request. Pl.'s MJAR at 26. The Court accordingly reviews the Board's assessment of the Air Force's treatment of plaintiff's separation withdrawal requests.

### A. The Board Identified Rule Violations in Air Force Procedures Regarding Separation Withdrawal Requests but Determined "[N]o [R]esponse" from AF/A1LO was Sufficient to Concur with the Advisory Group's Reasoning

For the third remand issue regarding the Air Force's failure to process plaintiff's separation withdrawal requests, the Board: (1) solicited an advisory opinion from AF/A1LO and (2) directed specific questions to the Air Force Colonel Management Office. In its decision, the Board summarized, "[a]fter reviewing the applicant's rebuttal dated 23 Aug[ust 20]21, the Board Staff asked [AF/]A1LO to address questions derived from the applicant's rebuttal[,] such as . . . why the Air Force did not act on her requests to withdraw her separation and why the commander did not list the reason(s) she denied the applicant's request to withdraw her separation[,]" but "A1LO was unable to answer." AR at 1013 (5 August 2022 Board Decision). AF/A1LO specifically failed to address AFI 36-2110 § 2.30.1.5 (2009), which states:

> Airmen who establish a separation or retirement date under [seven]-day option provisions who later decide they do not want to separate or retire may request withdrawal of the approved date through separation or retirement channels. *[The Air Force Personnel Council ("AF/PC")] separation or retirement office will route the request to the assignment [Office of Primary Responsibility ("OPR") (in this case, AF/A1LO)] for consideration.* Requests for withdrawal are not automatically approved. The assignment OPR will make a recommendation of approval or disapproval based on manning and the overall best interests of the [Air Force.]

AFI 36-2110 § 2.30.1.5 (2009) (emphasis added). The Board identified rule violations in Air Force procedures regarding separation withdrawal requests but determined "no response" from AF/A1LO was sufficient to concur with the advisory group's reasoning. AR at 995–96 (Undated Questions from Board to AF/A1LO); AR at 1014 (5 August 2022 Board Decision). The Board should have renewed communication with AF/A1LO regarding its "non-answers." *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993) (citing *Sargisson v. United States*,

913 F.2d 918, 921 (Fed. Cir. 1990)) ("[T]he military . . . is . . . bound to follow its own procedural regulations if it chooses to implement some."). Under the AFBCMR regulation, the Board itself "is not an investigative body" but recommends relief when a preponderance of the evidence substantiates that an error or injustice occurred. AFI 36-2603, ¶¶ 2.3, 4.1. The Board relied on incomplete evidence by accepting AF/A1LO could not provide answers to its questions. Once the Board solicited information from AF/A1LO, the information provided entered the Court's substantial evidence review. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) ("Under the substantial evidence rule, *all* of the competent evidence must be considered."). AF/A1LO could have explained why the Air Force did not act on, and the Wing Commander did not provide reasons for denying, plaintiff's withdrawal request or why such actions are consistent with procedural regulations. AF/A1LO instead did not answer the Board's questions. AR at 1013 (5 August 2022 Board Decision). The Board, however, deemed AF/A1LO's non-answer sufficient without following up regarding previously identified rule violations. AR at 995–96 (Undated Questions from Board to AF/A1LO); AR at 1014 (5 August 2022 Board Decision). The Board's decision is final and conclusive unless "unsupported by substantial evidence." *Rogers v. United States*, 124 Fed. Cl. 757, 766 (2016); *Skinner v. United States*, 594 F.2d 824, 830 (Cl. Ct. 1979); *Heisig*, 719 F.2d at 1156. Without a proper response to the Board's questions by AF/A1LO, the Board's decision *did* lack substantial evidence in concurring with AF/A1LO's assessment of *Board-identified* Air Force rule violations. *Heisig*, 719 F.2d at 1156; *Murphy v. United States*, 993 F.2d at 873. The Board's reliance on AF/A1LO's non-response is arbitrary and capricious. *Heisig*, 719 F.2d at 1156; *Murphy v. United States*, 993 F.2d at 873; *Rogers*, 124 Fed Cl. at 767 ("A court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion.").

**B.  The Board Determined the Wing Commander's Failure to Provide Explanation for Denial of Plaintiff's 13 February 2017 Memorandum Seeking an Endorsement of Her Separation Withdrawal Request was Harmless Notwithstanding AFI 36-3207 § 2.14.4 (2004)**

After reviewing AF/A1LO's advisory opinion and "the applicant's rebuttal dated 23 Aug[ust 20]21, the Board Staff asked A1LO to address questions derived from the applicant's rebuttal such as: . . . why the commander did not list the reason(s) she denied the applicant's request to withdraw her separation" in violation of AFI 36-3207 § 2.14.4 (2004). AR at 1013 (5 August 2022 Board Decision). After AF/A1LO answered, "[u]nfortunately, we cannot answer for the commander[,]" the Board did not contact the commander directly or provide a reason as to why the commander could not be contacted (e.g., the commander retired). AR at 995–96 (Undated Questions from Board to AF/A1LO). AF/A1LO did not cite AFI 36-3207 § 2.14 (2004), which reads, in relevant part:

> Officers may request withdrawal . . . [o]f a pending separation application by giving reasons for the withdrawal . . . . Officers may not submit withdrawal requests within 30 days of their approved [date of separation ('DOS')] unless the request is for hardship. [Military Personnel Flights ('MPFs'), which provides a variety of personnel services to active duty and retired military, reservists, civilian employees,

- 26 -

and families,] [f]orward a copy of the separation application, the withdrawal request of a separation instead of assignment, and the wing commander indorsement directly to [Headquarters Air Force Personnel Center (Randolph Air Force Base, TX) / Retirements and Separation Branch ('HQ AFPC/DPPRSO')]; [f]orward all other withdrawal requests with wing commander indorsements and a copy of the application for separation based on conscientious objector through the same channels that processed the application for separation; and [n]otify the command or headquarters to hold the application for separation until receiving the withdrawal request. *The command or headquarters processes both the application for separation and the withdrawal request. Commanders indorsing withdrawals must include their reason for recommending approval or disapproval.*

AFI 36-3207 §§ 2.14.1-2.14.4 (2004) (emphasis added). According to the Board, AF/A1LO instead stated it, the Secretary of the Air Force Personnel Council ("SAF/PC"), and the Wing Commander "acted in the best interests of the Air Force." AR at 1018 (5 August 2022 Board Decision). The government recognizes the Wing Commander's written indorsement is not evident but argues her "reasoning" is gleaned from emails in the record between the Wing Commander and The Colonels Group. Tr. at 168:6–20 ("[THE GOVERNMENT]: [AFI] Section 2.14.4 does call for an [i]ndorsement with reasoning for approval or disapproval of her withdrawal request by her Wing Commander. And, so, I think that [indorsement], we acknowledge, has been an issue and even was an issue before the board, where The Colonels Group was asked, ['D]o you know why there was no official [i]ndorsement[?]' We have the emails [in the Administrative Record], where her Wing Commander is having discussions with [T]he [C]olonels [G]roup to get opinions on what's in the best interest of the Air Force, so she can make this decision, but we don't have in the record her official written [i]ndorsement. We have the reasoning that's reflected in the emails, but we don't have her written [i]ndorsement.") (citing AR at 101 (14 February 2017, 7:05 p.m. Email from Assignment Management System to Wing Commander); AR at 102 (14 February 2017, 1:27 p.m. Email from Assignment Management System to Wing Commander)); Tr. at 204:7–23 ("[THE GOVERNMENT]: [W]hile her reasoning does not appear here in response to this questioning, her reasoning is reflected in the email traffic . . . between the [W]ing [C]ommander and the medical folks onsite there. I mean, they talk extensively about balancing Dr. Stahl's needs with the best needs of the Air Force, and ultimately come to the conclusion that it is not in the best interest of the Air Force to allow her to withdraw her separation. So, while her written reasons never made it to [s]ort of an [i]ndorsement document pursuant to the regulations, we acknowledge, of course, that that was within the 30-day period before her separation anyway, and we do have a . . . contemporaneous record of the reasonings, from February 2017."). The Board "concur[red] with the rationale . . . of [AF/]A1LO[,]" which was "the Wing Commander[] exercise[d] . . . discretion in refusing to [i]ndorse the 13 February 2017 request, . . . and the Wing Commander acted in the best interests of the Air Force." AR at 1014, 1018 (5 August 2022 Board Decision); AR at 210, ECF No. 59 (13 September 2019 AF/A1lLO 2019 Advice Memorandum).

In its consideration of AFI 36-3207 § 2.14.4 (2004), the Board could have corresponded with the commander directly or articulated why the commander was no longer available to assist in information-gathering. In the absence of evidence to the contrary, the Court presumes the AFBCMR acted fairly and lawfully when it investigated, reviewed, and re-reviewed plaintiff's

case.  *See Grieg v. United States*, 640 F.2d 1262, 1268–69 (Cl. Ct. 1981).  When, however, there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene, though only to ensure the decision is made in the proper manner.  *See Fisher,* 402 F.3d at 1177.  In this case, the Air Force failed to comply with established procedures, specifically AFI 36-3207 § 2.14.4 (2004), and the Board's decision upholding the lack of reasonable process is arbitrary and capricious.  *Id.*; Tr. at 204:17–19 ("[THE GOVERNMENT]: So . . . [the Wing Commander's] written reasons never made it to [s]ort of an [i]ndorsement document pursuant to the regulations . . . .").

### C.  The Board Analyzed Dr. Stahl's 16 November 2016 Email and 13 February 2017 Memorandum as Separation Withdrawal Requests

The Board's review of plaintiff's separation withdrawal requests included plaintiff's 16 November 2016 email to The Colonels Group and plaintiff's 13 February 2017 Memorandum to the Wing Commander seeking an indorsement of her separation withdrawal request.  AR at 928–29 (16 November 2016, 3:15 p.m. Email Seeking Separation Withdrawal Request); AR at 119–21 (13 February 2017 Memorandum Seeking Endorsement of Separation Withdrawal Request).  The Board did not account for plaintiff's:  (1) 12 September 2016 email; (2) 14 November 2016 email; (3) 19 January 2017 email; or (4) 22 January 2017 email seeking separation withdrawals.  Transfer AR at 28–30 (12 September 2016, 9:03 a.m. Email Seeking Separation Withdrawal Request); AR at 114 (14 November 2016, 10:49 a.m. Email Seeking Separation Withdrawal Request); AR at 135 (19 January 2017, 10:26 a.m. Email Seeking Separation Withdrawal Request); Transfer AR at 2–4 (22 January 2017, 5:47 p.m. Email Seeking Separation Withdrawal Request).

The government presents two arguments in regard to plaintiff's initial withdrawal requests:  (1) not proper procedure; and (2) not proper form.  *See* Def.'s MTD and Cross-MJAR at 6 n.2 ("Lt. Col. Stahl did not actually attempt to withdraw her separation request until November, 2016."), 7; Tr. at 179:23–80:1 ("THE COURT:  So what is the argument, though?  What is the government's position?  It was not proper person,[] and it was not proper form?  [THE GOVERNMENT]: Correct.").  The government first contends plaintiff's emails were not to the correct recipients; plaintiff should have sent her separation withdrawal requests to her chain of command—not The Colonels Group.  Tr. at 163:11–14 ("[THE GOVERNMENT]:  Her wing commander at MacDill is her chain of command, not [T]he [C]olonels [G]roup.  So, I believe most of her emails here were to [T]he [C]olonels [G]roup and not to her direct wing commander."); Tr. At 195:3–11 ("[THE GOVERNMENT]:  [P]roper staff work . . . [includes a completed request] to go to (1) [the] immediate supervisor to go to (2) the Group Commander to go to (3) the Wing Commander, so to go step by step, not missing anyone in the chain of command.  She skipped echelon by going directly to the wing commander—unusual, but not wrong."); Tr. at 195:12–19 ("THE COURT:  [In] the chain of command that you just described, where does that fit in relation to who she did send it to in November, [T]he [C]olonels [G]roup?  [THE GOVERNMENT]:  Oh, well, The Colonels Group is the force managers to the Pentagon.  They are not in her team, not directly, but they are managing the assignments."); Tr. at 196:22–97:2 ("THE COURT: The point of this is that [T]he [C]olonels [G]roup is outside of her reporting structure?  [THE GOVERNMENT]:  Correct.").  Plaintiff learned through the Inspector General an indorsement from an Air Force officer's Wing Commander was required to

request a separation withdrawal.  *See* Pl.'s MJAR at 26.  The government does not articulate an AFI that disallows directing separation withdrawal requests to The Colonels Group but contends not going through the chain of command is "improper or unusual."  Tr. at 193:25–94:1.  Plaintiff adds, even if the regulation was clear as to the necessary recipient of a request, The Colonels Group should have either responded to plaintiff identifying the correct email or forwarded her request to the correct personnel.  Tr. at 189:15–25 ("THE COURT:  Well, [plaintiff] agree[s] that the regulation, amongst other vague notes, seems to imply that the request should be going to the command and to the [W]ing [C]ommander, not to [T]he [C]olonels [G]roup.  [PLAINTIFF]: Yes.  Yes, Your Honor, but I think I would also say that, as a matter of good faith processing of any administrative action, . . . [T]he [C]olonels [G]roup should have forwarded any emails . . . to the command, because this is not a cat-and-mouse game:  'Oh, you sent it to the wrong email address, so we are going to completely ignore it.'").  The government concedes, "due diligence would require . . . any chain of command to properly advise any airmen how to submit a request, what's wrong with the request, so that way it's not cat-and-mouse game where she has to go through the Inspector General to learn . . . , '[o]h, no, there's another requirement where now I need to submit this to someone else, and I need to get an [i]ndorsement.'"  Tr. at 200:5–11.

The government and plaintiff also disagree on the formal requirements for requesting a separation withdrawal request.  The government argues personnel must submit a formal memorandum in writing to their chain of command, whereas plaintiff notes a written email to a commanding officer is sufficient.  *See* Def.'s MTD and Cross-MJAR at 7 ("[O]n February 13, 2017, Lt. Col. Stahl asked her Wing Commander, Col. April Vogel, to indorse Lt. Col. Stahl's withdrawal of separation as required by Air Force regulations."); *Id.* at 7 n.5; Pl.'s MJAR at 25–26; Tr. at 148:3–8 ("[THE GOVERNMENT]:  It is not until late November that we start to see her Indicating that she wants to stay, and even at that time she doesn't put in a formal request withdraw her separation.  She sends a bunch of emails.  She doesn't put in a formal memorandum request until February 2017, right before her separation."); Tr. at 163:23–64:2 ("THE COURT: So, [plaintiff], do you allege that the previous emails dating back to September of 2016 were effective requests to withdraw separation?  [PLAINTIFF]:  Yes, Your Honor.  We would contend that these [provided] sufficient information to put the Air Force on notice that she wanted to separate."); Tr. at 158:23–25 ("THE COURT:  So a written email to some commanding officer is sufficient?  [PLAINTIFF]:  Yes, Your Honor. . . .").

When asked to explicate the process according to AFI 36-2110 § 2.3.15, the government responded, "[i]t simply says that she submits a request to withdraw the separation and that it should be routed to the assignment [Office of Primary Responsibility] for consideration."  Tr. at 157:5–7.  The government adds AFI 36.3207 requires a written reason from the Wing Commander for recommending approval or disapproval of a separation withdrawal request.  Tr. at 160:8–18; Tr. at 185:21–24 ("[THE GOVERNMENT]:  It would require a written reason by her commander, but we don't have anything in the record to suggest that her commander was aware in November of 2016.").  The government could not specifically reference an AFI mandating a written memorandum to the Wing Commander through the chain of command.  Tr. at 162:19–23 ("[THE GOVERNMENT]:  I don't specifically see where it says it has to be via memorandum . . . ."); Tr. at 157:22–58:7 ("THE COURT:  [W]hat is the process to [submit a separation withdrawal request] properly?  [THE GOVERNMENT]:  [T]he separation or retirement channels . . . will route the request to the assignment [Office of Primary

Responsibility] for consideration.").

On 13 February 2017, plaintiff sent a formal memorandum to her Wing Commander.  AR at 119–21 (13 February 2017 Memorandum Seeking Endorsement of Separation Withdrawal Request).  The government highlights plaintiff should not have sent her request directly to the Wing Commander but, once again, fails to cite an AFI; instead, the government states:

> If I were a squadron member, and I wanted to send this up to my [W]ing [C]ommander, I would assemble a package and have it go to my immediate supervisor to go to the Group Commander to go to the Wing Commander, so to go step by step, not missing anyone in the chain of command . . . . She skipped echelon by going directly to the Wing Commander—unusual, but not wrong.

Tr. at 195:3–11.  The government adds:  "[I]t certainly looks funny that she went directly to the [W]ing [C]ommander.  I wouldn't call it illegal or improper.  I might call it improper or unusual.  I wouldn't call it illegal."  Tr. at 193:23–94:1.  Plaintiff opens her memorandum to the Wing Commander by stating she "would like to officially request withdrawal of separation initially requested 16 Mar[ch 20]16" as she has "just learned . . . that [her] withdrawal[s] for separation . . . [were] considered invalid."  AR at 119–21 (13 February 2017 Memorandum Seeking Endorsement of Separation Withdrawal Request).  The government agrees this "highlights she thought her 2016 requests were also official."  Tr. at 165:22–66:2.

The Board does not identify why plaintiff's:  (1) 12 September 2016 email; (2) 14 November 2016; (3) 19 January 2017 email; or (4) 22 January 2017 email seeking separation withdrawals were not reviewed by the Air Force pursuant to AFI 36-2110 § 2.30.1.5 (2009).  *See* AR at 1009–20 (5 August 2022 Board Decision); Transfer AR at 28–30 (12 September 2016, 9:03 a.m. Email Seeking Separation Withdrawal Request); AR at 114 (14 November 2016, 10:49 a.m. Email Seeking Separation Withdrawal Request); AR at 135 (19 January 2017, 10:26 a.m. Email Seeking Separation Withdrawal Request); Transfer AR at 2–4 (22 January 2017, 5:47 p.m. Email Seeking Separation Withdrawal Request).  The government presents additional procedural requirements for a separation withdrawal request at oral argument (i.e., a formal memorandum to immediate command supervisor) but is unable to locate a regulation for the requirements.  *See* Tr. at 162:19–21 ("[THE GOVERNMENT]:  I don't specifically see where it says it has to be via memorandum.").  Considering the Board analyzed one email and one memorandum, the Board could engage with all separation withdrawal requests alleged by plaintiff, yet, without citing a regulation, the Air Force claims only the memorandum was "proper."  *Heisig*, 719 F.2d at 1156 ("[R]eview of the administrative decision is [meant to determine] whether the . . . action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence . . . ."); *see Huntington Hosp. v. Thompson*, 319 F.3d 74, 79 (2d Cir. 2003) (internal quotations omitted) ("[An agency] cannot simply adopt inconsistent positions without presenting some reasoned analysis.") (citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983)).  The Board's failure to provide reasoning regarding the Air Force's violation of AFI 36-2110 § 2.30.1.5 (2009) is arbitrary and capricious given the evidence plaintiff and agency personnel characterized plaintiff's emails seeking separation withdrawals as proper.  *See Chisolm v. United States*, 41 F. App'x 394, 395 (Fed. Cir. 2022) ("[T]he Corrections Board acted in an arbitrary and capricious manner in disregarding contrary evidence without

analysis"). To sustain the Board's decision, the Court must be persuaded that the correction board considered all relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it —in this case, the Court is not persuaded. *See Heisig*, 719 F.2d at 1157.

### D. The Board Accepted AF/A1LO's Conclusion the Air Force Acted in its "[B]est [I]nterests" Without any Detail

The Board accepted AF/A1LO's conclusion the Air Force acted in its "best interests" without any detail. *See* AR at 1012 (5 August 2022 Board Decision); Tr. at 167:12–19 ("[THE GOVERNMENT]:  [E]ven the requested withdrawal said, 'It's not automatically granted. It is based on the manning and best interest of the Air Force.'").  The Board did not ask what "best interests" meant in accordance with AFI 36-2110 § 2.30.1.5 (2009), where the AF/A1LO "make[s] a recommendation of approval or disapproval [of the separation withdrawal request] based on the manning and best interests of the [Air Force]."  AFI 36-2110 § 2.30.1.5 (2009); *see Heisig*, 719 F.2d  at 1157 (instructing the Court to determine "whether *the conclusion being reviewed* is supported by substantial evidence").  In its review, the Board could have further inquired with AF/A1LO regarding:  (1) why plaintiff's emails transmitted to command were not reviewed; and (2) its conclusory statement the procedural failures were in the agency's best interests.  *See* AR at 1012 (5 August 2022 Board Decision) ("To the third question, the failure of the lead assignments officer to act on the [14] Nov[ember 20]16 separation request or the [W]ing [C]ommander's exercise of discretion in refusing to [i]ndorse the 13 Feb[ruary 20]17 request, A1LO, SAFPC, and the [W]ing [C]ommander acted in the best interests of the Air Force.").  *Prestonback v. United States*, 965 F.3d 1363, 1368 (Fed. Cir. 2020) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)) ("[W]e will not disturb the decision of the Board unless it is . . . unsupported by substantial evidence.")).  As noted *supra* Section VIII.C, the Board failed to identify why plaintiff's (1) 12 September 2016; (2) 19 January 2017; and (3) 22 January 2017 emails seeking separation withdrawals were not reviewed by the Air Force pursuant to AFI 36-2110 § 2.30.1.5 (2009).  *See* AR at 1009–20 (5 August 2022 Board Decision); Transfer AR at 28–30 (12 September 2016, 9:03 a.m. Email Seeking Separation Withdrawal Request); AR at 135 (19 January 2017, 10:26 a.m. Email Seeking Separation Withdrawal Request); Transfer AR at 2–4 (22 January 2017, 5:47 p.m. Email Seeking Separation Withdrawal Request).  The Board also "concur[red] with the rationale . . . of the [AF/]A1LO" with respect to the Wing Commander acting in the Air Force's best interests in denying plaintiff's separation withdrawal request, AR at 1014 (5 August 2022 Board Decision), without contacting the commander or explaining why the commander could not be contacted as part of its consideration of AFI 36-3201 § 2.14 (2004).  The Board accepted AF/A1LO's rationale without sufficient review of the relevant evidence and adequate understanding of AF/A1LO's "best interest' determination.  AR at 1014 (5 August 2022 Board Decision); *see Heisig*, 719 F.2d at 1157 ("Under the substantial evidence rule, *all* of the competent evidence must be considered.").  The Board therefore arbitrarily and capriciously concurred with AF/A1LO's opinion the Air Force's failure to abide by procedure was in the best interests of the agency notwithstanding the lack of substantial evidence.  *See* AR at 1014 (5 August 2022 Board Decision); *Heisig*, 719 F.2d at 1156–57.

### E. The Board Did Not Examine Plaintiff's Sustained Correspondence with The

**Colonels Group**

The Board failed to consider if the correspondence between The Colonels Group and plaintiff had a flavoring of bad faith rising to the level of "[m]isrepresentation[, which is] caused by providing misleading information or by failing to provide relevant information." *Tippet v. United States*, 185 F.3d 1250, 1255 (Fed. Cir. 1999). Upon full consideration of the issues, the Board's decision does not include an inquiry into why The Colonels Group: (1) failed to provide full instruction ("cut off the portion of the instruction stating that [W]ing [C]ommander indorsements had to be included in the requests," Pl.'s MJAR at 25–26); (2) did not properly process plaintiff's separation request, *supra* Section VIII.C; and (3) did not forward the emails seeking separation withdrawal requests to the Wing Commander, Tr. at 187:9–12 ("THE COURT: So prior to February 2017, her Wing Commander did not know? [THE GOVERNMENT]: Yes. That is our position based on the Administrative Record."). Both parties agree the record suggests prior to 13 February 2017, plaintiff's Wing Commander did not know of plaintiff's withdrawal request. *See* AR at 102 (14 February 2017, 1:27 p.m. Email from Assignment Management System to Wing Commander). Plaintiff cannot find any emails showing her Wing Commander knew of plaintiff's situation before 13 February 2017, when plaintiff contacted the Wing Commander directly. Tr. at 190:1–11 ("THE COURT: But based on the record, you would agree that 13 February 2017 was the first time the [W]ing [C]ommander appears to be aware. [PLAINTIFF]: Honestly, I cannot find any other email otherwise, but I understand this was the first time where Dr. Stahl actually provided . . . another official request, because this time she was told that she needs specifically the [i]ndorsement, and then she also emphasized to her [W]ing [C]ommander that you have to indicate, [i]ndorse it, and provide justification why, and her [W]ing [C]ommander never did that."); Tr. at 186:14–17 ("THE COURT: But is there anything from 2016 that shows the Wing Commander was aware of her request? [PLAINTIFF]: So far, I haven't come across anything, Your Honor . . . ."). The government suggests there is not "anything in the record to suggest that her commander was aware in November of 2016," meaning the communications circumvented the procedure the government contends is required. *See* Tr. at 185:22–24; Tr. at 163:11–22 ("THE COURT: So the first time her wing commander was sent the request was February 2017? [THE GOVERNMENT]: Yes. Her [W]ing [C]ommander seems to not get involved until February 2017, and so the emails . . . appear to be her [W]ing [C]ommander . . . really trying to get caught up and touching base with [T]he [C]olonels [G]roup to say, 'Here's the situation.'") (citing AR at 100 (15 February 2017, 5:25 p.m. Email from Wing Commander to Assignment Management System); AR at 101 (14 February 2017, 7:05 p.m. Email from Assignment Management System to Wing Commander); AR at 102 (14 February 2017, 1:27 p.m. Email from Assignment Management System to Wing Commander)). In fact, the government suggests it is not aware of even plaintiff's Medical Command knowing of her 2016 separation withdrawal request. Tr. at 198:22–24 ("THE COURT: So, was the group commander aware of the withdrawal request prior to February? [THE GOVERNMENT]: It appears not."); Tr. at 199:18–22 ("THE COURT: [T]here's nothing in the Administrative Record that . . . notes that the local medical command was aware of the withdrawal request within the 2016 time frame. [THE GOVERNMENT]: I didn't see anything, Your Honor . . ."). The Board arbitrarily and capriciously failed to review evidence the Air Force disregarded procedural regulations, specifically AFI 36-3207 § 2.14.4 (2004) and AFI 36-2110 § 2.30.1.5 (2009). *See Heisig*, 719 F.2d at 1157. Specifically, the Board could have inquired to The Colonel's Group regarding: (1) their communications with

plaintiff, including their provision of incomplete instructions regarding the requirement to have a Wing Commander indorse withdrawal requests; (2) their failure to properly process plaintiff's 2016 separation requests; and (3) their decision not to forward plaintiff's withdrawal request. *See Tippet*, 185 F.3d at 1255.

**F. Conclusion Regarding Whether the Board Examined Relevant Data and Articulated a Satisfactory Explanation for Their Decisions**

In sum, the Court, accounting for the Board's review of the administrative record and Air Force Instructions, finds the Board's conclusion "the applicant [was] not the victim of an error or injustice" is not supported by substantial evidence. AR at 1026 (3 December 2019 Board Decision); *see Heisig*, 719 F.2d at 1157; *Strand v. United States*, 951 F.3d 1347, 1351 (Fed. Cir. 2020) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). While the Court can "uphold a decision of less-than-ideal clarity if the agency's path may reasonably be discerned," it "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974). The government confirmed at oral argument: (1) plaintiff's 2016 withdrawal requests were not acted upon; and (2) the Air Force erred in not reviewing plaintiff's withdrawal requests under AFI 36-3207 § 2.14.4 (2004). Tr. at 166–167:18–3 ("THE COURT: [I]t appears . . . throughout the time in 2016, she's been given a bit of a silent treatment in response to a request to withdraw the formal separation. [THE GOVERNMENT]: I agree . . . we don't have a record that shows that there were responses."); Tr. at 185:19–24 ("THE COURT: Well, yeah, a written reason for recommending approval or disapproval? [THE GOVERNMENT]: It would require a written reason by her commander, but we don't have anything in the record to suggest that her commander was aware in November of 2016."); Tr. at 203:4–9 ("[THE GOVERNMENT]: And I think we've been consistent that, while we have a voluminous record, it's not . . . clear if everything is here, and one of those items that may not be here that we've talked about is whether or not the [W]ing [C]ommander provided a written [i]ndorsement. We haven't been able to locate that in the record."); Tr. at 167:25–68:4 ("[THE GOVERNMENT]: I have not seen anything that suggests she had to receive a written response. I understand the issue of an [i]ndorsement, and that's a separate issue, and the [i]ndorsement is 2.14.4 . . . ."). The Board: (1) failed to abide by AFI 36-2110 § 2.30.1.5 (2009) by accepting AF/A1LO's non-response regarding Air Force procedural violations concerning plaintiff's withdrawal requests, *supra* Section VIII.A; (2) acted arbitrarily and capriciously in accepting AF/A1LO's "best interests" determination upholding the Wing Commander's denial of plaintiff's withdrawal request without sufficient explanation in violation of AFI 36-3207 § 2.14.4 (2004), *supra* Section VIII(B); (3) failed to explain its non-review of plaintiff's 12 September 2016, 14 November 2016, 19 January 2017, and 22 January 2017 emails seeking separation withdrawals, *supra* Section VIII.C; (4) accepted AF/A1LO's "best interests" conclusion with respect to the Air Force's failure to follow procedure without additional explanation, *supra* Section VIII.D; and (5) did not consider evidence the Air Force disregarded procedural regulations concerning the correspondence between The Colonels Group and plaintiff, *supra* Section VIII.E. The Court accordingly remands the issue of whether the Wing Commander's exercise of discretion in refusing to indorse the 13 February 2017 request was a violation of AFI 36-2110 § 2.30.1.5 (2009) and AFI 36-3207 § 2.14.4 (2004) to the AFBCMR to review plaintiff's 12 September 2016 and subsequent separation withdrawal requests. *See*

Transfer AR at 28–30 (12 September 2016, 9:03 a.m. Email Seeking Separation Withdrawal Request); AR at 114 (14 November 2016, 10:49 a.m. Email Seeking Separation Withdrawal Request); AR at 928–29 (16 November 2016, 3:15 p.m. Email Seeking Separation Withdrawal Request); AR at 135 (19 January 2017, 10:26 a.m. Email Seeking Separation Withdrawal Request); Transfer AR at 2–4 (22 January 2017, 5:47 p.m. Email Seeking Separation Withdrawal Request).  Where, as here, a correction board, "fails to support its decision with a reasoned explanation of an important issue, a remand is appropriate."  *Rominger v. United States*, 72 Fed. Cl. 268, 273 (2006); *see Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *Heisig*, 719 F.2d at 1157.

## IX.   Analysis Regarding Whether the Board Engaged in *Ex Parte* Communications in Violation of 10 U.S.C. § 1556

Outside the scope of Judge Braden's remand instructions, plaintiff claims the Board engaged in *ex parte* communications, *see supra* Section V, with the Air Force when the administrative record revealed she did not receive an email attachment of an advisory opinion from AF/A1LO to the Board dated 9 July 2021.[13]  Pl.'s MJAR at 31; *see* AR at 1508 (28 September 2021, 6:12 p.m. Email with 9 July 2021 AF/A1LO Advisory Opinion Attachment); Tr. at 228:16–20 ("[PLAINTIFF:  [O]n September 28, 2021, the Air Force is referring to a 9 July 2021 decision, and then on 8 August 2022, . . . the Air Force Board for Correction of Military Records references the 9 July 2021 decision.").  At oral argument, plaintiff confirmed she received an advisory opinion dated 8 July 2021.  Tr. at 229:5–6.  The government explains the date is a typographical error, considering:  (1) "it's just off by a day" and (2) the government is "not aware of any additional advisory that the [p]laintiff did not receive."  Tr. at 229:21–30:1; *see also* Tr. at 55:8–9 ("[THE GOVERNMENT]:  I found a lot of typos in these records, so the typos do not surprise me, months, dates, et cetera.").  Based on the record, the Court has no reason to disagree with the Air Force's characterization of the 9 July 2019 attachment as a typographical error; the Court, thus, holds the Air Force did not violate 10 U.S.C. § 1556.  *Motor Vehicle Mfrs. Ass'n. of U.S., Inc. v. United States*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (holding the Court may not "substitute its judgment for that of the agency"); *see also Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085–86 (Fed. Cir. 2001).

## X.   Relief

### A.  The Parties' Arguments Regarding Plaintiff's Requested Relief

Plaintiff requests relief in the form of, *inter alia*, her constructive restoration to service in the Air Force.  *See* Second Am. Compl. at 24, Requested Relief ¶ 2 (requesting "Dr. Stahl's military records be corrected to show that she was not discharged on March 1, 2017 but continued to serve without interruption on active duty in the rank of Colonel once her promotion took legal effect").  She also asks:  (1) to "receive[] constructive service credit toward her active

---

[13] In her MJAR briefing, plaintiff also alleged The Colonels Group withheld inter-Group email correspondence in violation of 10 U.S.C. § 1556.  Pl.'s MJAR at 28 (citing AR at 1504 (8 December 2021, 11:03 a.m. Email from AF/A1LO to AFBCMR)).  At oral argument, however, plaintiff withdrew her second count of *ex parte* communication.  Tr. at 230:11-13 ("THE COURT:  "So plaintiff withdraws the second *ex parte* issue?" [PLAINTIF]:  "Yes, Your Honor.").

duty retirement from the Air Force"; (2) to acquire "all back pay and benefits that she is entitled to"; and (3) "all records inconsistent with the requested relief be destroyed."  Second Am. Compl. at 24, Requested Relief ¶¶ 3–5.

The government highlights "an additional complication" with plaintiff's requested relief. Def.'s MTD and Cross-MJAR at 25.  The "novel issue," according to the government, is plaintiff "has self-remediated much[, but not all,] of her requested relief."  *Id.*  Specifically, the government suggests plaintiff's request for her constructive restoration to service in the Air Force "appears to have been rendered a legal impossibility to the extent that Stahl joined the United States Army Reserve on or about 26 October 2017."  *Id.* 26 (citing Second Am. Compl. at ¶ 25).  The government reasons, "[t]hus, her prospective remedies are limited to constructive service from March 2, 2017 through October 25, 2017, assuming reinstatement is even proper." *Id.*  The government explains:

> In joining the Army Reserve, Lt. Col. Stahl necessarily put herself under the command and control of the Secretary of the Army.  We are aware of no mechanism that allows Stahl to serve separately under two separate branches of the armed forces at the same time, and doing so would necessarily create a contradiction where she is subject to the equal control of two separate service secretaries.  And she cannot receive pay from two separate branches simultaneously.  She cannot be subject to the command and control of two separate chains of command, particularly if both wanted to activate her for separate purposes at the same time.

*Id.* at 25.  Additionally, as the government details, the corrections board statute itself limits Boards to correcting records of their own department.  *Id.* (citing 10 U.S.C. 1552(a)(1) ("The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.")).  The government surmises:

> This necessarily means that the Secretary of the Air Force cannot amend legal records of the Department of Defense or Department of the Army reflecting Lt. Col. Stahl's ongoing service in that branch.  Although a correction might be theoretically allowed to reflect her continued service after March 1, 2017, there is a manifest problem in restoring her to a double-military status any time after October 25, 2017.  Lt. Col. Stahl has, in effect, self-remediated the issue of continuing her military service, albeit in a different branch.

Def.'s MTD and Cross-MJAR at 26; *see* Tr. at 245:6–10 ("[THE GOVERNMENT]:  The back pay is a . . . a Military Pay Act entitlement based on the rankings and appointments, so I could envision constructive service up until October 26, 2017, I believe, is when she joined the Army.  [On] December 8, 2017, . . . she picked up a new Presidential-level appointment into the Army Reserve."); *see also* Tr. at 250:11–16 ("[PLAINTIFF]:  [T]he Army would typically recognize any Air Force records.  So if there's an Air Force decision, then the Army would comply with it, just like the Army complied with all the records that Dr. Stahl had when she joined the reserve unit.").  In sum, while plaintiff's constructive restoration to service and rank in the Air Force after she joined the Army Reserve on 26 October 2017 is a legal impossibility,

constructive restoration to service, rank, and pay is viable between 1 March 2017 and 25 October 2017.

## B. Legal Standard: The Tucker Act, 28 U.S.C.A. § 1491.

To provide an entire remedy and to complete the relief afforded by the judgment, the [Court of Federal Claims] may, as an incident of and collateral to, any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

28 U.S.C.A. § 1491(a)(2). Accordingly, in a suit for recovery of military pay, the Court of Federal Claims has the authority to order reinstatement as well as payment of back pay. *See Cruz Casado v. United States*, 553 F.2d 672 (Ct. Cl. 1977). The Court of Federal Claims may not, however, correct the record except as an incident to a pecuniary remedy. *Michienzi v. United States*, 207 Ct. Cl. 484, (1975). The Military Pay Act "provides that a member of a uniformed service who is on active duty is 'entitled to the basic pay of the pay grade to which [they are] assigned.'" *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006) (quoting 37 U.S.C. § 204(a)). Pursuant to 18 U.S.C. § 1491(a)(1), the Court of Federal Claims also has the power to correct military records as a collateral matter to any monetary relief. *Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir 1988). Tucker Act cases may entertain issues of offset and remediation of damages. *See* 28 U.S.C. § 1503 (allowing the Court of Federal Claims to entertain set-off and counterclaims in cases arising under the Tucker Act); *Larsen v. Hoffman*, 444 F. Supp. 245 (D.D.C. 1977) (entertaining the jurisdictional impact of plaintiff's identification of damages remediation under the Little Tucker Act).

Plaintiff argues the constructive service doctrine entitles her to relief pursuant to the Military Pay Act. *See* Second Am. Compl. at 24. The constructive service doctrine embodies the concept, "members of the military who have been improperly discharged are treated as having continued to serve until they are properly discharged; they are therefore entitled to back pay and allowances for that period of constructive service." *Christian v. United States*, 337 F.3d 1338, 1341–42 (Fed. Cir. 2003). In order to recover under the constructive service doctrine, plaintiff must prove she was "improperly separated from service." *Id.* at 1347. A servicemember cannot invoke the constructive service doctrine if they voluntarily retire from the military. *See Smith v. Sec'y of Army*, 384 F.3d 1288, 1295 (Fed. Cir. 2004) ("[I]f the service member's separation from the service is voluntary, such as pursuant to a voluntary retirement, the Military Pay Act does not impose on the government any continuing obligation to pay the service member."). Furthermore, a decision to retire is not rendered involuntary merely because the servicemember is faced with an undesirable choice. *Cruz v. Dep't of Navy*, 934 F.2d 1240, 1245 (Fed. Cir. 1991) ("This court has repeatedly held that the imminence of a less desirable alternative does not render involuntary the choice made.").

## C. Analysis Regarding Plaintiff's Requested Relief

Both parties highlight this case—where plaintiff joined a different branch of the Armed Forces—presents an issue of first impression. Tr. at 241:22–25 ("[THE GOVERNMENT]:

[W]e think that this is an issue of first impression, or at least one that we have not encountered before, and one that I have not been able to find much case law on at all.); Tr. at 250:2–3 ("[PLAINTIFF]:  [T]his is not typical.").  The government maintains the Air Force can extend plaintiff's pay and services up to October 2017 when she joined the Army, but it cannot extend beyond that month, considering plaintiff cannot be in two branches at once.  Tr. at 252:5–10 ("[THE GOVERNMENT]:  [T]he board will absolutely have to have some contact with the Army, because they couldn't magically raise her documents and give her constructive service back . . . before October 2017, and then have her on paper serving in both branches starting on October 2017.").  Plaintiff contends "Section 1552 of Title 10 is not limited by Congress, and any service can correct their own records."  Tr. at 246:15–17.  Her requested relief is two-prong: either (1) "receive protracted service credits so she can retire" or (2) "be brought back on active-duty in the Air Force."  Tr. at 247:20–23.

As determined *supra* Section VIII, the Board's failure to acknowledge plaintiff's separation withdrawal requests was arbitrary and capricious.  *See, e.g., Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009).  Plaintiff's harm stemming from this failure is referenced in the AF/A1LO's "Proposed Directive Language":

> Should the board elect to grant the request with respect to claims that she was not discharged on March 1, 2017, *the [B]oard should consider if, given the nature of her hardship, they would have approved a hardship exception and permitted her to remain at MacDill AFB and serve in her position until the completion of her ADSCs in November 2017.  Had the [B]oard approved this request, the Applicant would have retained the portions of her bonuses repaid to the government in the amount of $15,122.08, and her honorable separation date would be November 1, 2017.*

> Similarly, should the board elect to grant the request with respect to AF/A1LO, SAF/PC, or her Wing Commander not acting in the best interest of the Air Force, *the Applicant may have continued to serve at MacDill AFB as Internal Medicine Director until some future date as determined by AF/A1LO in coordination with her leadership*.  Based on her status as a colonel-select and unwillingness to accept reassignment, *this would have most likely aligned with the completion of her ADSCs*; therefore, her record would show an honorable separation date of November 1, 2017, and *she would have retained the $15,122.08*.

AR at 976 (8 July 2021 AF/A1LO Advisory Opinion) (emphasis added).  The alternative holding suggests the Air Force agrees plaintiff may receive remedy irrespective of her current reserve commission in the Army.  *See supra* Section X.A.

Both parties agree the Defense Finance and Accounting Service ("DFAS") would ultimately determine the exact amount of back pay owed (and ask for tax returns), Tr. at 242:10–15; Tr. at 246:24–47:6, but plaintiff's estimate of her back-pay and benefits and retirement losses is $719,000.  Tr. at 237:20–22; Tr. at 241:11–13; Tr. at 247:18–20 ("[PLAINTIFF]:  [C]urrently, Dr. Stahl calculates her back pay, minus any offset by her civilian income or reserve service would be approximately . . . $719,000.").  She explains the estimated amount includes plaintiff's: (1) bonus recoupment, $15,000; (2) unused leave, $14,000; (3) medical insurance between

March 2017 and May 2023, $30,000; and (4) the "estimated back-pay between the time when she was discharged and now, which would typically be offset by any earnings that DFAS subtracts from the amount owed." Tr. at 238:9–18. Plaintiff caveats "the amount calculated by [DFAS] would be significantly different because they would have all the information to calculate all the benefits [and] allowances." Tr. at 238:19–22; Tr. at 246:24–47:2 ("[PLAINTIFF]: [U]nder the Tucker Act, any pay that she earned in the Army would have to be offset by the back-pay from the Air Force, but that would be a calculation for DFAS."). In the alternative, plaintiff "is requesting immediate full active-duty retirement benefits, with credit for a minimum of 24 years of military service" because "she has attended the Uniformed Services Health Services University for four years, which does not count towards retirement." Tr. at 239:3–12. Both parties agree "the Defense Finance and Accounting Service is dependent on the Air Force Board for Correction of Military Records to first correct the records so they can make their own calculations." Tr. at 241:5–8; Tr. at 242:12–14 ("[I]f the Court issues some type of remand and the [B]oard goes back and makes a correction, then DFAS will do the calculation.").

The unresolved variable of plaintiff's separation request on her relief further necessitates a remand. *See infra* Section X.D; *Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) (The Court "may not supply a reasoned basis for the agency's action that the agency itself has not given."). When the Court opined "the only option now is some element of a remand to the Air Force Board," the government responded, "that was always the only option." Tr. at 252:11–14. To sustain the Board's decision, the Court must be persuaded the Board "considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it." *Fuentes v. United States*, 157 Fed. Cl. 433, 453 (2021). The Board should consider, even if plaintiff's 2016 separation withdrawal requests for hardship were routed to the Wing Commander earlier than February 2017, the withdrawal request: (1) could have been denied; or (2) if approved, would have resulted in plaintiff submitting a humanitarian deferment request, which also could have been denied. The Board should also consider whether: (1) plaintiff's request to withdraw her separation had been proper; or (2) further delay in separation as a result of reviewing plaintiff's humanitarian request would necessitate months of back pay during that extended time. Where, as here, a correction board, "fails to support its decision with a reasoned explanation of an important issue, a remand is appropriate." *Rominger v. United States*, 72 Fed. Cl. 268, 273 (2006). The Court, therefore, remands this case to the AFBCMR for it to evaluate plaintiff's record and consider how the separation withdrawal requests may affect her back pay and bonus payment. *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983).

**D. Conclusion Regarding Plaintiff's Requested Relief**

With respect to relief, the Tucker Act states, "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing . . . placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2). The Court also has the authority "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." *Id.*

Consistent with this authority, the Court **REMANDS** the case to the AFBCMR for reconsideration of Dr. Stahl's claim "her multiple requests to withdraw her separation were ignored[, and h]er commander failed to explain her non-indorsement of her separation withdrawal request" in accordance with this Opinion.  AR at 837–39 (12 September 2020 DD Form 149).

In conducting its review, the Board shall, consistent with this opinion:

1. Compile satisfactory explanations as to:  (1) why the Air Force did not act on plaintiff's 12 September 2016 and 16 November 2016 requests to withdraw her separation according to AFI 36-2110, § 2.30.1.5 (2009); or (2) why the commander did not list the reason(s) the applicant's request to withdraw her separation were denied in accordance with AFI 36-3207 § 2.14.4 (2004), *see supra* Section VIII.B, C;

2. Review and consider all relevant evidence on record regarding the impact of the Air Force's failure to follow separation withdrawal procedures pursuant to AFI 36-2110 (2009) and AFI 36-3207 (2004) on plaintiff's separation date, including but not limited to the evidence the Court has found the Board decision under review did not address, *see supra* Section VIII.A, C, D, E;

3. Identify the Wing Commander's rationale for failing to provide reasons under AFI 36-3207 § 2.14.4 (2004) or articulate the reason the Wing Commander cannot be contacted, *see supra* Section VIII.B; and

4. Provide a complete explanation of the Board's determinations surrounding plaintiff's separation withdrawal requests, *see supra* VIII.

The remand proceedings must be completed within six months of the date of this decision.  The parties shall file a joint report every sixty days advising the Court of the status of the proceedings on remand.

The Court will retain jurisdiction over the case during the course of the proceedings on remand.  The Court **STAYS** proceedings in the instant case during that time.

Pursuant to RCFC 52.2(e), the parties shall file notice with the Court within thirty days of the Board's decision on remand stating whether that decision affords a satisfactory basis for the disposition of the case and whether the parties require further proceedings before the Court.

## XI.    Conclusion

For the foregoing reasons, the Court:  (1) **DENIES** the government's Motion to Dismiss, ECF No. 64; (2) **GRANTS in part and DENIES in part** plaintiff's Motion for Judgment on the Administrative Record, ECF No. 63; (3) **GRANTS in part and DENIES in part** the government's Cross-Motion for Judgment on the Administrative Record, ECF No. 64.

The Clerk is directed to serve a copy of this Opinion and Order upon the Board at the

following address:

Nicole D. Jackson, Executive Director
Air Force Board for Correction of Military Records
SAF/MRBC
3351 Celmers Lane
Joint Base Andrews NAF
Washington, MD 20762-6435

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge
