# In the United States Court of Federal Claims

No. 18-496
(Filed: 30 October 2025)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CHRISTINE E. STAHL, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Wojciech Z. Kornacki*, Pentagon Law Office, of Washington, DC, for plaintiff.

*Robert R. Kiepura*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *James W. Poirier*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Patricia G. McCarthy*, Director, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, all of Washington, DC, and *Adam Frey*, Air Force, Judge Advocate General Corps, Department of Litigation, United States Air Force, of Joint Base Andrews, MD, for defendant.

## OPINION AND ORDER

**HOLTE, Judge.**

A remand order and one year later, plaintiff Christine E. Stahl (a former Air Force medical officer in the rank of Lieutenant Colonel) and the Air Force Board for Correction of Military Records ("AFBCMR" or "Board") ask the Court to review the same two issues it adjudicated in its October 2023 Order: (1) whether plaintiff's separation from the Air Force was involuntary; and (2) whether the Air Force and its correction board violated their mandates by separating plaintiff despite her attempts to remain on active duty. In its 2023 Order, the Court remanded the case to the AFBCMR to review all evidence and follow the Court's remand instructions. The Court found the Board improperly elevated the standard for withdrawal requests by requiring a memorandum or other formal request and improperly dismissed plaintiff's emails as falling short of official requests to withdraw her separation. The Court also found the Wing Commander failed to provide a written indorsement[1] required by regulation and

---

[1] There are varying spelling conventions for "indorsement" (e.g., "endorsement") in the administrative record. The Court adopts "indorsement," but retains original spellings in quoted material. *See Indorsement*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("indorsement n. . . . 1. The placing of a signature, sometimes with an additional

ordered the Wing Commander to explain her rationale for denying plaintiff's request.

Now before the Court are the parties' cross-motions for judgment on the administrative record following remand. After reviewing the Administrative Record, the parties' arguments, and the Court's 2023 Order, the Court finds the Board did not properly review all evidence and did not follow the Court's remand instructions. The Board instead concluded plaintiff's email was not a withdrawal request and failed to explain why the Wing Commander did not provide a written indorsement denying plaintiff's request. For the following reasons, the Court **GRANTS** plaintiff's Motion for Judgment on the Administrative Record, **DENIES** the government's Cross-Motion for Judgment on the Administrative Record, and **REMANDS** the case to the AFBCMR for reconsideration of plaintiff's email withdrawal requests and the Wing Commander's failure to explain the non-indorsement of plaintiff's separation withdrawal request in accordance with this Opinion.

## I.    Factual Background

The factual background of this case is extensive and was previously outlined in the Court's 10 October 2023 Order and Opinion, *Stahl v. United States*, 167 Fed. Cl. 657, 662–64 (2023) (Holte, J.):

> Plaintiff Christine E. Stahl is a former lieutenant colonel in the United States Air Force. 2020 Admin. R. ("[2020] AR") at 001 (Undated "Action of the Secretary of the Air Force – 1113506802"), ECF No. 59. Lt. Col. Stahl served on active duty for approximately seventeen years before separating from the Air Force in March 2017. [2020] AR at 145 (13 January 2017[2] "Memorandum for Force Support Squadron/Commander").
>
> Before her separation, Lt. Col. Stahl served as the Medical Director of the Internal Medicine Clinic of the 6th Medical Operations Squadron at MacDill Air Force Base ("AFB") in Tampa, Florida. [2020] AR at 163 (28 June 2016 "Officer Performance Report"). She was stationed at MacDill from 2009 through her separation, with the exception of a one-year deployment to Afghanistan. [2020] AR at 42–61 (1 July 1999–28 February 2017 Service Record).
>
> Dr. Stahl was promoted to Lt. Col. on 15 May 2011. *Id.* On 25 October 2013, Lt. Col. Stahl entered into an agreement with the Air Force to accept a dual contract for Multi-Year Incentive Special Pay ("MISP") and Multi-Year Special Pay ("MSP") for $20,000 and $35,000, respectively. [2020] AR at 062–065 (23 October 2013–30 October 2013 MISP/MSP Form). The dual contract required Lt. Col. Stahl to accept a four-year active-duty service commitment ("ADSC"), which mandated she serve in the Air Force until 30 November 2017 and subjected her to a pro rata recoupment of the MISP and MSP if she failed to serve the entirety of

_____

notation, on the back of an instrument to transfer or guarantee the instrument or to acknowledge payment. 2. The signature or notation itself. — Also spelled endorsement. — indorse, vb.") (emphasis omitted).

[2] The date on the "Memorandum for Force Support Squadron/Commander," 2020 AR at 145, incorrectly states "13 January 2016" as opposed to "2017." *See* 2020 AR at 32.

her committed term. *Id.*

On 10 December 2015, Lt. Col. Stahl was selected for promotion to full colonel and was expected to be promoted in May 2017. [2020] AR at 40–41 (10 December 2015 Colonel Promotion Letters). In connection with her promotion, Air Force Colonel Management ("AF/A1LO"[ or "Colonels Group"]) determined Lt. Col. Stahl should be reassigned to Lackland Air Force Base in Texas. [2020] AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email). Lt. Col. Stahl was notified of the reassignment via email on 15 March 2016. [2020] AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email). In accordance with Air Force policy, Lt. Col. Stahl was given seven days to accept or reject the assignment, with separation from the Air Force being a required consequence of rejection. [2020] AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email). The email provided advice plaintiff's only alternative to accepting her new assignment was to request to separate under Air Force Instruction ("AFI") 36-2110 Assignments (2009). [2020] AR at 66–67 (15 March 2016, 3:26 p.m. Air Force Standard Reassignment Notification Email).

According to plaintiff, on the morning of 16 March 2016, plaintiff's chain of command advised plaintiff her only path after declining the reassignment was to resign her commission, transfer to a Reserve unit, and then reapply for the same Air Force position as a civilian. [2023] Pl.'s Resp. and Reply at 4, ECF No. 66. In 2016, Dr. Stahl was divorced and shared child custody of her two children with her ex-husband in Florida. [2023] Pl.'s Resp. and Reply at 3. According to plaintiff, she was not advised she could request a humanitarian deferment that would be consistent with Air Force Instruction 36-2110, paragraph A24.9, and Department of Defense Instruction ("DODI") 1315.18 that allow single parents to apply for hardship deferments. [2023] Pl.'s Resp. and Reply at 16, 18 (citing AFI 36-2110, Assignments (2005), Paragraph A24.3 ("A member desiring humanitarian deferment must formally submit his or her request to the Air Force Contact Center.")). Plaintiff adds her chain of command did not explain she could defer her promotion or request another assignment, or that she would need the Air Force to indorse her withdrawal request. [2023] Pl.'s Resp. and Reply at 5. Plaintiff also alleges her chain of command failed to advise her she would lose about $2,000,000 of her military retired benefits, once vested, by transferring to a Reserve unit and that these benefits would only become available once she turned 60 years of age. [2023] Pl.'s Resp. and Reply at 14.

On 16 March 2016 at 9:29 a.m., Lt. Col. Stahl rejected the reassignment and elected instead to separate from the Air Force. [2020] AR at 68 (16 March 2016, 9:29 a.m. Separation Request Email); [2020] AR at 69 (16 March 2016 "Memorandum for Secretary of the Air Force Personnel Council ("SAF/PC")"). Lt. Col. Stahl indicated her decision was "due to a difficult family situation," as she was "recently divorced . . . and [has] a 10-year-old son" with whom she shares custody with her ex-husband. [2020] AR at 68 (16 March 2016, 9:29 a.m. Separation Request

Email).  She noted "there [was] no guarantee that [she] would be able to bring [her] child with [her] to Texas due to these circumstances," and "[t]hree years is too long for [her] to be separated from [her] precious loved one."  [2020] AR at 68 (16 March 2016, 9:29 a.m. Separation Request Email).  She also acknowledged her commitment to serve through November 2017 and that she would "owe" because of the conditions of her receipt of the MISP and MSP bonuses.  [2020] AR at 68 (16 March 2016, 9:29 a.m. Separation Request Email).

On 17 March 2016, Lt. Col. Stahl completed the paperwork necessary to initiate her separation from the Air Force, including a personally drafted memorandum where she reiterated her reasons for separating:  her divorce and the need to be near her ten-year-old son.  [2020] AR at 72 (17 March 2016, 3:14 p.m. Separation Paperwork Email); [2020] AR at 069 (16 March 2016 "Memorandum for SAF/PC").  Lt. Col. Stahl also indicated she planned to serve as an Air Force Reserve flight surgeon and intended to apply for her same position at the internal medicine clinic at MacDill.  [2020] AR at 69 (16 March 2016 "Memorandum for SAF/PC").

On 21 May 2016, Lt. Col. Stahl claims she was informed she had been promoted to Colonel and was directed to wear the rank of Colonel—exemplified in a single 1 June 2016 Officer Performance Report ("OPR") listing her rank as "Col" on the form.  [2023] Pl.'s Resp. and Reply. at 4; [2020] AR at 147 (9 June 2016 "Officer Performance Report").  Plaintiff originally requested 1 July 2016 as her separation date, but plaintiff reasons her promotion prevented her from separating on that day, considering the 927th Air Refueling Wing had a *Lieutenant* Colonel vacancy, although no documentation supports her allegation.  *See* [2022] Pl.'s MJAR at 2; [2020] AR at 099 (4 June 2016, 7:43 p.m. Email regarding Air Force Reserve Positions).  Lt. Col. Stahl was not scheduled to promote until May 2017, so the Air Force explains the information must have been relayed to Dr. Stahl in error.  *See* [2023] Pl.'s Resp. and Reply at 3; [2020] AR at 098 (7 July 2016, 1:22 p.m. Email Confirming Lt. Col. Rank).

Over the next several months, Lt. Col. Stahl appeared to work on applying to a Reserve component of the Air Force.  [2020] AR at 99 (4 June 2016, 7:43 p.m. Email regarding Air Force Reserve Positions).  It appears she ultimately stopped her pursuit of a Reserve commission because the available assignments and positions were geographically too far away for her personal preference.  [2020] AR at 974 (8 July 2021 Memorandum for [the Air Force Board for Correction of Military Records] from AF/A1LO); [2020] AR at 1390 (2 February 2017, 3:14 p.m. Email to Air Force District of Washington of Timeline for Lt. Col. Stahl).  Lt. Col. Stahl was then asked to select a date by which she wished to separate from the regular Air Force, to which she replied AFI 36-3207 allowed her to request withdrawal of separation orders.  [2020] AR at 1390–91 (2 February 2017, 3:14 p.m. Email to Air Force District of Washington of Timeline for Lt. Col. Stahl).  She later argued her circumstances should permit her to be retained at MacDill.  [2020] AR at 114 (14 November 2016, 10:49 a.m. Email Seeking Separation Withdrawal

Request).

On 16 November 2016, AF/A1LO informed Lt. Col. Stahl pursuant to AFI 36-3207, she was obligated to separate from active duty because she turned down her assignment. [2020] AR at 928–29 (16 November 2016, 3:37 p.m. Separation Notification Email). AF/A1LO then notified the Secretary of the Air Force Personnel Council of Lt. Col. Stahl's decision to turn down an opportunity with the Reserve or Air National Guard; Lt. Col. Stahl requested a separation date of 1 February 2017. [2020] AR at 928 (16 November 2016, 3:42 p.m. Separation Notification Email).

Between September 2016 and February 2017, Dr. Stahl emailed numerous Air Force personnel requesting to stop her separation, but her unit failed to process her email requests. Admin. R. ("Transfer AR") at 28–30, ECF No. 10 (12 September 2016, 9:03 a.m. Email Seeking Separation Withdrawal Request); [2020] AR at 114 (14 November 2016, 10:49 a.m. Email Seeking Separation Withdrawal Request); [2020] AR at 928–29 (16 November 2016, 3:15 p.m. Email Seeking Separation Withdrawal Request); [2020] AR at 135 (19 January 2017, 10:26 a.m. Email Seeking Separation Withdrawal Request); Transfer AR at 2–4 (22 January 2017, 5:47 p.m. Email Seeking Separation Withdrawal Request). Dr. Stahl also filed an Inspector General complaint; a Congressional inquiry; an amicable resolution request; and a lawsuit in the United States District Court for the Middle District of Florida to stop her separation. [2020] AR at 105–07 (20 January 2017 Inspector General Complaint); [2020] AR at 115–16 (24 January 2017 Congressional Inquiry); [2020] AR at 117–18 (8 February 2017 "Amicable Resolution of Petition to United States Court of Appeals for Armed Forces for Extraordinary Relief"); Transfer Order at 1, ECF No. 1.

On 5 January 2017, the SAF/PC approved Lt. Col. Stahl's separation from the Air Force with an effective date of 1 February 2017. *See* [2020] AR at 1 (Undated "Action of the Secretary of the Air Force – 1113506802"). SAF/PC declined to waive the ADSC, which resulted in Lt. Col. Stahl owing recoupment of the pro-rated MISP and MSP bonuses. *Id*. Lt. Col. Stahl's orders indicated she was considered a voluntary honorable discharge. [2020] AR at 180 (30 January 2017 Request and Authorization for Separation Form).

Lt. Col. Stahl emailed her commander on 19 January 2017 to indicate she did not receive a response to her request to withdraw her separation, and she had not taken any positive steps to out-process from the Air Force. [2020] AR at 135 (19 January 2017, 10:26 a.m. Email Seeking Separation Withdrawal Request). Lt. Col. Stahl was ultimately given a one-month extension, moving her separation date to 1 March 2017. [2023] Def.'s MTD and Cross-MJAR at 7, ECF No. 64; *see* [2023] Pl.'s Resp. and Reply at 19.

On 13 February 2017, Lt. Col. Stahl asked her Wing Commander, Col. April Vogel, [("Wing Commander," "Col. Vogel," or "Maj. Gen. Vogel")] to indorse Lt. Col.

Stahl's withdrawal of separation as required by Air Force regulations. [2020] AR at 119–21 (13 February 2017 Memorandum Seeking Endorsement of Separation Withdrawal Request). In her withdrawal letter, Lt. Col. Stahl indicated she was a skilled physician, and the Air Force needed people with her talents. [2020] AR at 119–21 (13 February 2017 Memorandum Seeking Endorsement of Separation Withdrawal Request). Lt. Col. Stahl did not identify any hardships requiring she remain at MacDill. *Id.* On 14 February 2017, Col. Vogel contacted Lt. Col. Stahl's leadership to ask for their opinions. *See* [2020] AR at 102 (14 February 2017, 1:27 p.m. Email from Assignment Management System to Wing Commander). The Commander and Deputy Commander of MacDill's medical group opined Lt. Col. Stahl was an excellent physician, but her desire to remain stationed only at MacDill was not in the best interest of the Air Force. [2020] AR at 101–02 (14 February 2017, 7:05 p.m. Email from Assignment Management System to Wing Commander). Col. Vogel declined to indorse Lt. Col. Stahl's withdrawal request on 16 February 2017 without providing any reasons. [2023] Def.'s MTD and Cross-MJAR at 7.

Lt. Col. Stahl separated from the Air Force on 1 March 2017. *Id.* She paid back the unearned portion of her MISP and MSP bonuses and began working at MacDill AFB Internal Medicine Clinic as a civilian on 26 June 2017. *Id.* Lt. Col. Stahl joined the U.S. Army Reserve on 26 October 2017. *Id.* at 8.

## II.    Procedural History

The Court, in its 10 October 2023 Order and Opinion, also detailed the procedural history of this case, *Stahl v. United States*, 167 Fed. Cl. 657, 664–66 (2023) (Holte, J.):

In February 2017, plaintiff, originally *pro se*, filed a complaint and request for an injunction with the United States District Court for the Middle District of Florida, Tampa Division. *See* Transfer Compl., ECF No. 4-1. Plaintiff sought an injunction preventing the Air Force from separating her, or if she was separated, an immediate reinstatement. *Id.* After briefing from both plaintiff and the government, the case was transferred to this court without reaching the merits. Transfer Order at 8–9.

On 4 April 2018, plaintiff filed her [transfer C]omplaint with this court. *Id.* at 4. She asserted claims for violation of her Fifth Amendment due process rights, promissory estoppel, involuntary discharge, and violation of Congressional mandate and Air Force regulations. *Id.* at 1, 8. Plaintiff sought back pay, reimbursement for medical insurance and unused leave, pro-rated recoupment of the medical specialty bonuses she received and was required to remit, and reinstatement with a promotion to Colonel. Transfer Compl. at 9. Alternatively, she sought "immediate full active-duty retirement benefits (with credit for a minimum of 24 years of military service)." *Id.* After briefing, on 27 December 2018, the previous judge issued an opinion and order dismissing plaintiff's due process, promissory estoppel, and tort claims for lack of subject-matter jurisdiction. *See Stahl v. United States*, 141 Fed. Cl. 396, 404–5 (2018) (Braden, J.)

. . .

On 29 July 2019, the case was reassigned to the undersigned. [*See* Order Reassigning Case to Judge Ryan T. Holte, ECF No. 30.] On 10 February 2020, plaintiff obtained counsel[. *See* Consented Mot. to Substitute Attorney, ECF No. 38. On 3 December 2019, the AFBCMR rendered its decision finding "there is no evidence of an error or injustice" regarding involuntary separation. [2020] AR at 1021–27 (3 December 2019 Board Decision). On 21 May 2020, after the remand period concluded, plaintiff amended her complaint ("First Am. Compl."), ECF No. 44. On 14 July 2020, she moved to stay the proceedings and filed a petition for reconsideration with the AFBCMR. *See* Motion to Stay Proceedings, ECF No. 47; [2020] AR at 837–39 (12 September 2020 DD Form 149). The AFBCMR rendered its decision on plaintiff's reconsideration petition on 5 August 2022, finding insufficient evidence to overturn the AFBCMR's previous decision. [2020] AR at 1009–15 (5 August 2022 Board Decision).

After the Board's 5 August decision, plaintiff filed her Second Amended Complaint on 5 December 2022. *See* Second Am. Compl., ECF No. 62. The same day, she also filed a motion for judgment on the administrative record ("MJAR"), *see* Pl.'s 2022 MJAR, ECF No. 63, and on 9 January 2023, the government filed a motion to dismiss ("MTD") or, in the alternative, a cross-MJAR, *see* Gov't's 2023 MTD and 2023 Cross-MJAR, ECF No. 64. Briefing concluded on 2 April 2023, and the Court held oral argument on 26 May 2023. *See* Pl.'s 2023 Reply, ECF No. 69; 6 Apr. 2023 Order, ECF No. 70; 26 May 2023 Oral Argument Tr., ECF No. 72. On 10 October 2023, the Court denied the government's Motion to Dismiss, granted-in-part and denied-in-part plaintiff's 2022 MJAR, and granted-in-part and denied-in-part the government's 2023 Cross-MJAR. *See Stahl*, 167 Fed. Cl. at 693. The Court remanded the case to the AFBCMR to reconsider Dr. Stahl's claim (i) regarding her multiple requests to withdraw her separation, and (ii) her commander's failure to explain her non-indorsement of her separation withdrawal request, stating:

In conducting its review, the Board *shall*, consistent with this opinion:

1.    Compile satisfactory explanations as to: (1) why the Air Force did not act on plaintiff's 12 September 2016 and 16 November 2016 requests to withdraw her separation according to AFI 36-2110, § 2.30.1.5 (2009); or (2) why the commander did not list the reason(s) the applicant's request to withdraw her separation were denied in accordance with AFI 36-3207 § 2.14.4 (2004), *see supra* Section VIII.B, C;

2.    Review and consider all relevant evidence on record regarding the impact of the Air Force's failure to follow separation withdrawal procedures pursuant to AFI 36-2110 (2009) and AFI 36-3207 (2004) on plaintiff's separation date, including but not limited to the evidence the Court has found the Board decision under review did not address, *see supra* Section VIII.A, C, D, E;

3.      Identify the Wing Commander's rationale for failing to provide reasons under AFI 36-3207 § 2.14.4 (2004) or articulate the reason the Wing Commander cannot be contacted, *see supra* Section VIII.B; and

4.      Provide a complete explanation of the Board's determinations surrounding plaintiff's separation withdrawal requests, *see supra* VIII.

*Id.* (emphasis added).

After receiving the Court's 10 October 2023 Order, the AFBCMR reopened Dr. Stahl's case and requested advisory opinions from relevant Air Force offices.  8 December 2023 Joint Status Report ("JSR"), ECF No. 74.  The AFBCMR received an advisory opinion from the former Wing Commander, and on 8 March 2024, the AF/A1LO provided an advisory opinion. *See* AR at 539–41, ECF No. 84.  That same day, the government filed a motion for extension, "request[ing] an enlargement of time of ninety days"—from 10 April 2024 to 10 July 2024—for the AFBCMR "to complete remand proceedings mandated by the Court" after receiving the advisory opinion from the AF/A1LO.  *See* Gov't's Mot. for an Enlargement of Time for the AFBCMR to Complete Remand Proceedings at 1, ECF No. 77.  Plaintiff opposed the government's requested extension.  *See* Pl.'s Resp. to Gov't's Mot for an Enlargement of Time at 1, ECF No. 78.  While recognizing "the great length of time this case has already been pending," the Court granted the requested 90-day extension to complete remand proceedings for good cause shown given "the government would not ask for an extension unless it was absolutely necessary."  19 Mar. 2024 Order at 1–2, ECF No. 79.

On 10 July 2024, the parties filed a JSR informing the Court the AFBCMR "recommended to deny relief to [p]laintiff because the AFBCMR concluded that the evidence did not demonstrate a material error or injustice" and proposing a schedule for filing of administrative records and related motions in this proceeding.  *See* 10 July 2024 JSR at 1, ECF No. 81.  After the Court adopted the parties' proposed schedule, *see* 11 July 2024 Scheduling Order at 1–2, ECF No. 82, on 9 October 2024, plaintiff filed an amended complaint and a motion on the administrative record ("Pl.'s MJAR"), *see* Pl.'s Am. Compl., ECF No. 85; Pl.'s MJAR, ECF No. 86.  On 15 November 2024, the government responded and filed a cross-motion on the administrative record ("Gov't's Cross-MJAR").  *See* Gov't's Cross-MJAR and Resp. to Pl.'s MJAR, ECF No. 88.  On 9 December 2024, plaintiff replied in support of its MJAR and responded to the government's Cross-MJAR ("Pl.'s Resp.").  *See* Pl.'s Reply and Resp. to Gov't's Cross-MJAR, ECF No. 89.  On 10 January 2025, the government replied in support of its Cross-MJAR.  *See* Gov't's Reply in Supp. of its Cross-MJAR, ECF No. 90.  The Court then held oral argument on the parties' Cross-MJARs on 20 May 2025.  *See* 27 February 2025 Scheduling Order, ECF No. 91; *see also* 20 May 2025 Oral Argument Transcript ("Tr."), ECF No. 94.

## III.    New Evidence in the Record

Since the Court's 2023 Order, the parties agree six documents were added to the record. *See* Tr. at 14:13–15:15; *see also* AR at 539 (Maj. Gen. Vogel's 22 December 2023

Memorandum); AR at 544–46 (Bullet Background Paper on Separation Withdrawal Request and Memo for SAF/MRBC); AR at 567–77 (Pl.'s 10 April 2024 Declaration); AR at 547–48 (AF/A1LO's 8 March 2024 Memorandum for AFBCMR); AR at 549–66 (Pl.'s 10 April 2024 Resp. to Advisory Op.); AR at 1–11 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings).

First, on 22 December 2023, Major General Vogel composed a memorandum titled "MEMORANDUM FOR SAF/MRBC" and with a subject line of "Withdrawal of Separation Application Indorsement, Lt Col Christine Stahl."  AR at 539 (Maj. Gen. April Vogel's 22 December 2023 Memorandum).  The memorandum consists entirely of three numbered paragraphs.  *See id*.  The first paragraph states the information written in paragraph two was "provided in response to the United States Court of Federal Claims remand order directing the Air Force Board for Correction of Military Records to *identify my rationale* for denying Lt Col Stahl's [Applicant] withdrawal of separation request while I served in the position of Commander, 6th Air Mobility Wing."  *Id.* (emphasis added).  The entirety of paragraph two, intended to "identify [her] rationale for denying [plaintiff's] withdrawal of separation request," is reproduced below:

> The applicant's memorandum requesting withdrawal of her application for voluntary separation was presented for indorsement to me in Feb 2017, almost 7 years ago.  While I do not recall the disposition of the indorsement of Lt Col Stahl's request, nor do I have in my possession documentation of my response, I vaguely recall this matter.  After reviewing the supporting materials provided by the applicant, I remember discussing the situation with the Colonel Force Management & Policy Division (The Colonels' Group) and the applicant's leadership in the Medical Group.  My actions in this case appear to have been consistent with the process I customarily use for the many personnel actions I have taken over the course of my career.  To the best of my recollection, I considered Lt Col Stahl's request, along with the needs of the Air Force, guiding regulations and recommendations from subordinate commanders and I did not find it appropriate to approve the request.

*Id*.  The last paragraph includes Maj. Gen. Vogel's email and phone number if additional information was required from her, along with her electronic signature and the date near the bottom of the page.  *See id.*

Second, the parties agreed new documents titled "Bullet Background Paper on Separation Withdrawal Request" and "Memorandum for SAF/MRBC" were added to the record.[3]  *See* Tr. at 14:13–15:16; AR at 544–45 (Bullet Background Paper on Separation Withdrawal Request), 546 (Memorandum for SAF/MRBC re Plaintiff's Withdrawal of Separation Application Indorsement).  According to the government, these documents are "a memo sort of summarizing the case . . . [and were] sent to the AF/A1LO" before they issued their advisory opinion.  *See* Tr. at 15:16–16:10.  The Bullet Background Paper provides a "chronology of events" describing,

---

[3] Both documents are not dated, and their origin is unclear.  *See* Tr. at 15:16–17:5.  The parties also dispute the relevance and applicability of these two memoranda.  *See also infra* Section VI.A.3 n.4 (discussing the government's position at oral argument regarding these two memoranda).

*inter alia*, plaintiff's emails "stating she does not want to be separated from the Air Force," Lt. Col. Somers "asking that she send the memorandum to him for processing. . . [and] notif[ying] her that he is processing her separation request and ADSC waiver to SAFPC. AR at 544–45 (Bullet Background Paper on Separation Withdrawal Request). The Paper also notes on "13 Feb 17[, p]laintiff draft[ed a] memorandum [titled] Request for Wing/CC Endorsement of Withdrawal for Separation" but "there is no evidence of a written indorsement to this memorandum denying the Plaintiff's request." AR at 544–45 (Bullet Background Paper on Separation Withdrawal Request). In providing additional "observations" and a "potential rationale for denying withdrawal of separation," the Bullet Background Paper highlights "[p]laintiff first request[ed] consideration for withdrawal of separation, via email, on 14 Nov 16 . . . [and p]laintiff's written memorandums to FSS/CC, dated 13 Jan [17], and 6 AMW/CC, dated 13 Feb 17, requesting withdrawal of separation were again within 30 days of DOS 1 Feb 17 and 1 Mar 17, respectively, without the exception of hardship IAW AFI 36-3207." AR at 545 (Bullet Background Paper on Separation Withdrawal Request). The Paper "also notes an attempt to schedule discussion of the withdrawal request" was made, but "it is unknown if that discussion took place." *Id.* Likewise, the Memorandum for SAF/MRBC provides additional summary and impressions of the events surrounding plaintiff's separation and attempts to withdraw her separation. *See* AR at 546 (Memorandum for SAF/MRBC re Plaintiff's Withdrawal of Separation Application Indorsement).

In addition to the first two documents, the parties agreed four other documents related to Air Force advisory opinions were entered into the record. *See* Tr. at 14:13–15:15. On 8 March 2024, the Colonels Group provided an advisory opinion, recommending denial of plaintiff's application. *See* AR at 540–41 (AF/A1LO's 8 March 2024 Memorandum for AFBCMR). Then, on 10 April 2024, plaintiff provided a declaration recounting her perspective of her separation from the Air Force, where she stated, *inter alia*, "[i]t was nearly impossible to schedule an appointment with Col Vogel in early February 2017" as it seemed "Col Vogel was simply avoiding [her] and ignoring [her] requests for an appointment" given Col Vogel's "secretary kept telling [her] that Col Vogel was always out and not available." AR at 567 (Plaintiff's 10 April 2024 Declaration). According to plaintiff, after multiple requests, Col. Vogel met with plaintiff and told her: (1) "anyone who declined an Air Force assignment should not be allowed to remain on active duty;" (2) Col. Vogel "had complete discretion regarding her endorsement/nonendorsement;" and (3) Col. Vogel "would not consider any hardships." AR 569 (Plaintiff's 10 April 2024 Declaration). Plaintiff responded to the advisory opinion on 10 April 2024. *See* AR at 549–66 (Plaintiff's 10 April 2024 Resp. to AF/A1LO Memorandum). The AFBCMR then issued its written decision denying plaintiff's application on 3 July 2024. *See* AR at 1–11 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings).

## IV. Parties' Arguments

Plaintiff argues the Air Force wrongfully separated her from active duty.[4]  *See* Pl.'s

---

[4] In her MJAR brief, plaintiff also alleges the Air Force violated her due process rights, but at oral argument, plaintiff clarified the due process claims are no longer at issue and were previously dismissed by the Court. *Compare* Pl.'s MJAR at 4 (citing AFI 36-3207 § 2.14.4) ("[T]his in turn resulted in discharging Dr. Stahl from active duty in violation of her due process rights") *with* Tr. at 6:19–7:6 ("[THE COURT:] Just to confirm, you're not bringing a claim under violation of due process? [PLAINTIFF]: No, Your Honor. It was primarily referring to

MJAR at 2. Plaintiff contends the Air Force violated AFIs by failing to process her withdrawal of her separation request and by failing to prepare an indorsement memorandum. *See id.* Specifically, plaintiff argues, *inter alia*, (1) the AFBCMR did not properly construe plaintiff's email as a withdrawal of her request to separate, given plaintiff's multiple emails asking to withdraw her separation request, the Air Force's internal memorandum noting plaintiff's emails were withdrawal requests, and the Colonels Group's acknowledgement and understanding of plaintiff's email; and (2) the Wing Commander's failure under AFI 36-2110 to prepare an indorsement memorandum explaining the rejection of plaintiff's withdrawal request resulted in her involuntary separation from the Air Force. *See id.* at 3–4, 6–8. Plaintiff contends the government's counterargument, which cites to a document purportedly "show[ing] . . . the wing commander complied with [] AFI [36-2110,]" actually cites to a document not prepared by the Wing Commander. Pl.'s Resp. at 20. Plaintiff maintains the "wing commander's December 22, 2023 memorandum does not even reference AFI 36-2110, nor does it explain why the commander failed to prepare the indorsement memorandum." *Id.*

The government asserts "the AFBCMR carefully considered all of the evidence and properly concluded no error or injustice requiring correction exists." Gov't's Reply in Supp. of its Cross-MJAR at 1–2. The government argues the Administrative Record ("AR") reveals plaintiff "sent a series of emails to various Air Force officials[] but neglected to follow the very specific instructions provided to her, including to submit a memorandum." Gov't's Cross-MJAR at 9. The government contends none of plaintiff's emails qualified as a withdrawal request, and by the time plaintiff submitted the required memorandum, "she was within thirty days of her approved separation date, which then was too late for her to withdraw her resignation." *See id.* at 9, 12–17. The government also claims the Wing Commander had the "discretion" to deny plaintiff's withdrawal request, and accordingly, the Wing Commander used her discretion, "complied with established procedures," "declined to indorse [plaintiff]'s withdrawal[,]" and communicated her reasons for not indorsing [plaintiff]'s request directly to [her] in person." *See id.* at 22–23.

## V.    Applicable Law

### A.    Motions for Judgment on the Administrative Record

For a motion for judgment on the administrative record, plaintiff bears the burden to prove through the administrative record the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. *See Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). Application of the arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) (emphasis omitted); *see also Calloway v. Brownlee*, 366 F. Supp. 2d 43, 53 (D.D.C. 2005) ("[A]n agency action is arbitrary and capricious if the agency . . . has entirely

---

the due process in the Air Force Instructions. [THE COURT]: So just a violation of instructions? [PLAINTIFF]: Correct."); *see also* Gov't's Cross-MJAR at 2, n.2, ECF No. 88 ("[Plaintiff's due process claims were dismissed for lack of subject-matter jurisdiction in 2018, and are no longer at issue.") (citations omitted); *Stahl v. United States*, 141 Fed. Cl. 396, 404 (2018) (Braden, J.) (holding the Court "does not have jurisdiction to adjudicate the due process claim alleged in the April 4, 2018 Transfer Complaint.").

failed to consider an important aspect of the case presented."). As long as the Board followed applicable statutes or regulations, considered the relevant evidence, and reached a reasonable conclusion, a court will not disturb the Board's decision. *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011). A court may set aside an agency's decision if the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (cleaned up).

### B.    Mandates for the Air Force Board of Correction of Military Records

Pursuant to 10 U.S.C. § 1552, the AFBCMR is mandated to correct injustices and errors clearly presented in the record. *See Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004). When the AFBCMR fails to correct an injustice that is clearly presented in the record, it violates 10 U.S.C. § 1552. *Id.*; *see also Yee v. United States*, 206 Ct. Cl. 388, 512 F.2d 1383, 1387 (1975) ("[W]hen a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate."). The Secretary of the Air Force and the AFBCMR have "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief.'" *Id.* (quoting *Caddington v. United States*, 147 Ct. Cl. 629, 634 (1959)). When the AFBCMR fails to support its decisions with substantial evidence, relief may be appropriate, including setting the AFBCMR's decision aside. *See Martinez v. United States*, 333 F.3d 1295, 1314 (Fed. Cir. 2003) (citing *Chappell v. Wallace,* 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence.") (citing Court of Claims cases)). In challenging the determinations of a military corrections board, a plaintiff must demonstrate "by 'cogent and clearly convincing evidence,'" the military board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)).

In addition to the Board's statutory mandate to correct injustices and errors, "the trial tribunal, in this case [an Armed Services Board], 'has no power or authority to deviate from the mandate issued by an appellate court.'" *Aydin Corp. (W.) v. Widnall*, No. 96-1267, 1997 WL 413329, at *3 (Fed. Cir. July 24, 1997) (quoting *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948)). "It is 'familiar doctrine that a lower court is bound to respect the mandate of an appellate tribunal and cannot reconsider questions which the mandate has laid to rest.'" *N. Helex Co. v. United States*, 634 F.2d at 557, 560 (Ct. Cl. 1980) (quoting *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 140 (1940)).

## VI.    Whether the Board Followed the Court's 2023 Remand Order and Relevant AFIs

The Court begins by reviewing whether the Board acted in accordance with the Court's

2023 Remand Order, AFI 36-2110, and AFI 36-3207. First, the Court analyzes if the Board considered all relevant evidence related to plaintiff's withdrawal requests and whether plaintiff's email constituted a request to withdraw separation. Provided plaintiff's email did constitute a request to withdraw her separation, the Court next discusses whether the Wing Commander's failure to provide rationale in a written indorsement memorandum (when denying plaintiff's withdrawal request) and the Board's failure to explain the Wing Commander's lack of written indorsement were proper. The Court then turns to whether the Board's decision analyzed if the Air Force acted in its best interests. Finally, the Court assesses whether the Board evaluated if the Air Force's treatment of plaintiff's claim included any bad faith.

### A.    The Board Did Not Consider Plaintiff's Emails as Requests

In its 2023 Order, the Court remanded the case to the Board "to consider[] all relevant evidence[,] provide[] a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it," and reconsider plaintiff's multiple withdrawal requests. *Stahl v. United States*, 167 Fed. Cl. 657, 686, 693 (2023). Specifically, the Court found "the Board's failure to acknowledge plaintiff's separation withdrawal requests was arbitrary and capricious," and "[t]he Board's failure to provide reasoning regarding the Air Force's violation of AFI 36-2110 § 2.30.1.5 (2009) [was] arbitrary and capricious given the evidence plaintiff and agency personnel characterized plaintiff's emails seeking separation withdrawals as proper." *Id.* at 686, 691. The Order also analyzed if plaintiff was required to submit a formal memorandum, or if plaintiff was required to send the withdrawal request to a particular recipient, to constitute a proper withdrawal request. *See id.* at 685 ("The government presents additional procedural requirements for a separation withdrawal request at oral argument (i.e., a formal memorandum to immediate command supervisor) but is unable to locate a regulation for the requirements."); *id.* at 684 ("The government does not articulate an AFI that disallows directing separation withdrawal requests to The Colonels Group but contends not going through the chain of command is 'improper or unusual.'"). As part of its 2023 remand, the Court instructed the Board to:

> Compile satisfactory explanations as to: (1) why the Air Force did not act on plaintiff's 12 September 2016 and 16 November 2016 requests to withdraw her separation according to AFI 36-2110, § 2.30.1.5 (2009) . . . .

*Id.* at 693.

In determining whether the Board acted in accordance with the Court's remand instructions, the Court reviews the Air Force's advisory opinions after remand, the parties' arguments, the evidence in the AR, the procedural and substantive requirements for withdrawal requests, and the Board's failure to explain its rationale in finding plaintiff's emails did not constitute requests.

### 1.    The Air Force's Post-Remand Actions

On remand, the Air Force produced an 8 March 2024 advisory opinion memorandum penned by the AF/A1LO and a 3 July 2024 Decision from the AFBCMR, adopting the

recommendations of the AF/A1LO memorandum.  *See* AR at 540 (AF/A1LO's 8 March 2024 Memorandum for AFBCMR); AR at 1 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings).  The AF/A1LO stated plaintiff's 12 September 2016 email "is actually a brief email from the Air National Guard (ANG) Palace Chase Program Manager to an AF/A1LO staff member, relaying information that [plaintiff] no longer wished to pursue Palace Chase to transition to the ANG," so in the Air Force's view, "[t]his email does not appear to be a separation withdrawal request."  AR at 540.  Then, regarding the 16 November 2016 email, the AF/A1LO concluded it was an "email thread which includes a response from AF/A1LO Action Officer . . . explain[ing plaintiff]'s separation will continue to be processed because she declined an assignment" and plaintiff "was required to be separated from the Air Force as a result of not having enough time to Retire In Lieu of an Assignment, and then provid[ing plaintiff] with further relevant AFI 36-3207 policy guidance."  AR at 541.  According to AF/A1LO, "leading up to that email exchange"—on 14 November 2016—"the Action Officer provided guidance for submitting a memo to withdraw separation," but "it does not appear [plaintiff] sent a memo for processing, nor did she select a date for the separation package" before the deadline set by the action officer.  *See id.*

The 3 July 2024 AFBCMR Decision "concur[red] with the rationale and recommendation of AF/A1LO and f[ound] a preponderance of the evidence does not substantiate [plaintiff]'s contentions."  AR at 9 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings).  In its decision, "the Board found no evidence [plaintiff] submitted an *official* request to withdraw her voluntary request for separation on either 12 Sep 16 or 16 Nov 16 for the Air Force to act upon."  *Id.* (emphasis added).  According to the Board, plaintiff's "16 Nov 16 email was not an *official* request to withdraw her voluntary separation, but instead, was a declaration that she had previously withdrawn her separation request on 14 Sep 16, in accordance with AFI 36-3207, and there was no need for her separation."  *Id.* (emphasis added).  The Board claims:

> Regarding the 16 Nov 16 email between the applicant and AF/A1LO, the evidence contradicts the applicant's contention her email was ignored. In fact, AF/A1LO promptly responded to the applicant providing relevant information and guidance. More importantly, the applicant's 16 Nov 16 email was not an *official* request to withdraw her voluntary separation, but instead, was a declaration that she had previously withdrawn her separation request on 14 Sep 16, in accordance with AFI 36-3207, and there was no need for her separation; therefore, once again, there was no request for AF/A1LO to act upon. In his response, the AF/A1LO representative attempted to correct her misunderstanding of her status, and offered clarifying guidance which addressed her specific circumstances. Further, in an earlier 14 Nov 16 email from the applicant to the same AF/A1LO representative, she referred to a memorandum she was drafting to request a waiver of her separation from active duty acknowledging her understanding that an *official* written request was required, and the AF/A1LO responded that same day asking her to send him the completed memorandum for action. No *official written memorandum* requesting a waiver of her separation was sent by the applicant to AF/A1LO to initiate the withdrawal of voluntary separation process.

*Id.* (emphasis added). The Board reasserts later in its decision "neither email presented as evidence of her contentions contains an *official* request to withdraw the separation action," and "AF/AlLO was, in fact, following Air Force guidance by continuing the applicant's separation process under the Seven Day Option, in accordance with AFI 36-2110." *Id.* The Board concluded "there d[id] not appear to be an *official* request from her to withdraw her separation indorsed by her chain of command." *See* AR at 5 (emphasis added).

### 2.    The Government's Arguments at Oral Argument in Support of the Board's Decision

At oral argument, the government asserted the Board "ma[de] a factual determination . . . based on the evidence in the record[, a]nd their factual determination, in reviewing those emails, is that there was not a request for separation there." *See* Tr. at 81:10–82:8. The government stated the standard for analyzing plaintiff's emails is "the [B]oard's interpretation of the evidence of record"—*i.e.*, "a factual question" as to whether the emails are "a withdrawal request." Tr. at 70:20–24. For the 12 September 2016 email, the government echoes the Board's finding plaintiff's email is "'actually a brief email from the Air National Guard Palace Chase program manager'" and asserts the email is "a[n] internal email between the individuals working on the Palace Chase program saying that Dr. Stahl no longer wishes to participate in it." Tr. at 43:8–25, 52:14–19. Regarding the 16 November 2016 email, the government stated Lt. Col. Somers emailed plaintiff the same day requesting her to choose a separation date and provide a written memorandum for Lt. Col. Somers to start processing her request. Tr. at 64:12–65:2. The government also admitted "the Court's instruction was to find out why a separation request wasn't forwarded." *See* Tr. at 53:7–16.

### 3.    The AR Shows Plaintiff's November 2016 Email Was a Withdrawal Request

The government's arguments and the evidence in the record confirm plaintiff's November 2016 email demonstrated a request to withdraw separation (as the Court already noted in the 2023 Order) and should have been considered by the AF/A1LO. *See Stahl v. United States*, 167 Fed. Cl. 657, 685 (2023) (Holte, J.) ("The Board does not identify why plaintiff's . . . email[s] seeking separation withdrawals were not reviewed by the Air Force pursuant to AFI 36-2110 § 2.30.1.5 (2009)."). Pursuant to AFI 36-2110—which the Board relies on for "continuing the applicant's separation process under the Seven Day Option"—withdrawals of separation requests are routed to the AF/A1LO for consideration: "Airmen who establish a separation or retirement date under [seven]-day option provisions who later decide they do not want to separate or retire may request withdrawal of the approved date through separation or retirement channels. [The Air Force Personnel Council ("AF/PC")] separation or retirement office will route the request to the assignment [Office of Primary Responsibility ("OPR") (in this case, AF/A1LO)] for consideration." AFI 36-2110 § 2.30.1.5 (2009); AR at 9 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings). The government does not dispute "[i]n the [November 2016] email, [plaintiff] indicate[d] she does not want to be separated," nor does the government dispute the AF/A1LO—which considers withdrawal requests under the AFI—was apprised plaintiff "later decide[d she did] not want to separate or retire." Gov't Cross MJAR at 14; AFI 36-2110 § 2.30.1.5 (2009). As

evidence of the latter, at oral argument, the government agreed a reasonable person, including Lt. Col. Somers, "reading th[e] traffic between September and November of 2016 would assume and know that plaintiff desired to withdraw her separation," and "that's exactly what Colonel Somers said in his November 2016 email." *See* Tr. at 79:11–18. On remand Air Force staff's own internal notes characterized plaintiff's emails as "requests for withdrawal of separation," which further evidences the Air Force's understanding plaintiff sought to withdraw her separation.[5] After receiving the email from plaintiff which states "I do not want to be separated," Lt. Col. Somers replied, referring to the email as a request, implementing a memorandum requirement, and mentioning he will "process" the "request" when he receives a memorandum: "As soon as I have [plaintiff's separation date] and your memo, I will process the request." AR at 600 (Plaintiff's 16 November 2016 Email to Lt. Col. Somers). The government also confirms "[plaintiff is] thinking she's staying on active duty and then she's shocked when [T]he Colonel[s] Group [told] her, no, you're still getting separated," given plaintiff believes she followed the Air Force instructions related to withdrawing separation requests. Tr. at 60:11–20; *see also* Tr. at 105:17–107:12 ("[THE COURT:] [In the] November 16th[] email at 3:15 p.m. . . . AR page 600 . . . [plaintiff] cites the rule . . . AFI 36-3207, 2.14.1, and notes that in her opinion, she has complied with the requirements, right? [THE GOVERNMENT]: She says that she requested a separation, yes, Your Honor. . . . THE COURT: [S]o put succinctly, . . . she assumes that she has already placed a request to withdraw the separation request back in September, and that she has complied with the rules? [THE GOVERNMENT]: That's what she's, you know, claiming to state. So, again, that's why the board said, looking at what she says here, there is no reason for Colonel Somers to look at that and say, oh, I need to act on her withdrawal request."); AR at 600 (Plaintiff's 16 November 2016 Email to Lt. Col. Somers) ("I requested a separation and withdrew that request on 14 SEPT 16 as a courtesy before receiving separation orders . . . . Consequently, nothing prevented me from withdrawing my request to separate. I believe this resolves our problem here and obviates the need for setting a separation date or appealing to the SAF."). All of this evidence and discussion at oral argument directly contradicts the government's argument the Board "ma[de] a factual determination[,] . . . based on the evidence in the record[ and a] . . . review[ of] those emails, . . . that there was not a [withdrawal] request." *See* Tr. at 81:10–82:8.

---

[5] The Air Force's own Bullet Background Paper characterized plaintiff's emails as "requests for withdrawal of separation." *See* AR 544–45 (Bullet Background Paper on Separation Withdrawal Request). The government agreed the Bullet Background Paper prepared by Air Force staff—which it characterized as "a memo sort of summarizing the case and . . . sent to the AF/A1LO" before their advisory opinion—characterized plaintiff's emails as "requests for withdrawal of separation." *See* Tr. at 16:3–13, 73:20–75:1 ("THE COURT: Well, so just looking back at . . . bullet points that we started out with, those bullet points characterized the November 2016 email, 'consideration for withdrawal from separation.' [and] 'AR 545 requests for withdrawal of separation.' . . . So someone in the Air Force characterized the email exchange as that. Is that correct? . . . [THE GOVERNMENT]: I mean, yes, someone drafted that document, but it's the board's decision that's on review, not this document."); AR at 544–45 (Bullet Background Paper on Separation Withdrawal Request). The government was "somewhat confused . . . as to what [the Paper] was" but believed it was a "memo . . . summarizing this case and plaintiff's arguments in advance of [the AF/A1LO's] opinion." Tr. at 15:24–16:13. The government urged the Court to dismiss the Paper because "certainly there's nothing in here that would represent the agency's position on the case." Tr. at 16:21–17:5. Though the government "do[es]n't believe that this memo has any effect on the [B]oard's decision," to the extent the Board thought the Paper was unclear, did not represent the agency's position on the case, or is not relevant, the Board did not explain its reasoning. Tr. at 16:21–17:5.

Even if Dr. Stahl's withdrawal was made but failed to meet formality requirements, the Board does not identify any Air Force Instructions with which plaintiff failed to comply. As already explained in the Court's 2023 Order: when the Board solicited information from the AF/A1LO to complete its decision, the "AF/A1LO could have explained why the Air Force did not act on . . . plaintiff's withdrawal request or why such actions are consistent with procedural regulations." *Stahl*, 157 Fed. Cl. at 682. To the extent the Air Force had procedural regulations (other than the purported memorandum requirement created by Lt. Col. Somers via email) regarding the form, substance, addressee, or formatting of a separation withdrawal request, the Board could have explained the procedural regulations and analyzed how plaintiff's email did not satisfy the procedural regulations in its post-remand decision. By providing some explanation, the Board would have apprised the Court of the procedural regulations, which "the military [would be] bound to follow" (to the extent the regulations exist). *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993) (citing *Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990)). Instead of providing an explanation, the Board concluded the Air Force did not act on the request because "there was no request for AF/A1LO to act upon"—the Board did not show any procedural or substantive defect in plaintiff's email. *See* AR at 9–10 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings); *see also* AR at 6 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings) (describing basis of AF/A1LO decision) ("AF/A1LO concludes the Air Force did not ignore the applicant's request to withdraw her separation because there is no record of such request."). Discussion at oral argument revealed the government's continued lack of clarity as to the procedural requirements for a withdrawal request. On the one hand, if plaintiff submitted a Post-It note asking to withdraw her separation, plaintiff's request likely would not constitute a request. Tr. at 69:15–22 ("THE COURT: What I'm asking about is . . . if Dr. Stahl writes on a Post-it note, I wish to withdraw my separation, and it doesn't have a date and it doesn't have her name on it, and she folds it into a paper airplane and she throws it at the colonel, that's not good enough. [THE GOVERNMENT]: I would agree with that, Your Honor."). On the other hand, if plaintiff "draft[ed] a 10-page memo on formal letterhead[,] sen[t] via certified mail, signature required, and [CC'd] everybody [in] the chain of command, all the way up to the Secretary of the Air Force," the government agreed with Court "that would probably be formal enough." Tr. at 69:23–70:4. Determining the standard for a withdrawal request and this proper middle ground—*i.e.*, "[s]omewhere in between the Post-It note paper airplane and the letterhead memo"—was the substance of the Court's discussion "in [its] 2023 [Order] on pages 684 and 685.'" *See* Tr. at 70:5–71:21. Considering: (1) plaintiff sent an email stating "I do not want to be separated," AR at 600 (Plaintiff's 16 November 2016 Email to Lt. Col. Somers), to the person responsible for considering withdrawal requests under AFI § 36-2110; (2) the government agreed a reasonable person would consider this email a request to withdraw her separation; and (3) the Board did not identify rationale demonstrating this email failed to satisfy any procedural or substantive requirement, the Court finds plaintiff's November 2016 email sufficient to constitute a proper request to withdraw.

### 4.    The Board Interjected a Formal Memorandum Requirement for Plaintiff's Withdrawal Request Without Rationale

The Court, in its 2023 Order, instructed the Board to "[c]ompile satisfactory explanations as to . . . why the Air Force did not act on plaintiff's 12 September 2016 and 16 November 2016

requests to withdraw her separation according to AFI 36-2110, § 2.30.1.5 (2009)," but the Board did not explain in its decision why the AF/A1LO did not consider plaintiff's email request for withdrawal despite acknowledging Lt. Col. Somers received plaintiff's 16 November 2016 email with the separation request and understanding plaintiff wished to withdraw her separation request. *See Stahl v. United States*, 167 Fed. Cl. 657, 693 (2023) (Holte, J.). The Board instead identified the AF/A1LO's request for a completed memorandum as a prerequisite "action . . . to initiate the withdrawal of voluntary separation process." AR at 9 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings); 600 (Lt. Col. Somer's 14 November 2016 Email to Plaintiff) ("As soon as I have [your separation date] and your memo, I will process the request."). This explanation falls short of the Court's 2023 Order, especially given the Court's finding the government did not identify any AFIs requiring plaintiff to submit a formal memorandum as a prerequisite to considering her withdrawal request:

> The government could not specifically reference an AFI mandating a written memorandum to the Wing Commander through the chain of command. [2023] Tr. at 162:19–23 ("[THE GOVERNMENT]: I don't specifically see where it says it has to be via memorandum . . . ."); [2023] Tr. at 157:22–58:7 ("THE COURT: [W]hat is the process to [submit a separation withdrawal request] properly? [THE GOVERNMENT]: [T]he separation or retirement channels . . . will route the request to the assignment [Office of Primary Responsibility] for consideration.").

*Stahl*, 167 Fed. Cl. at 685. The government also confirmed at oral argument the Air Force does not require a memorandum and an email could suffice to request withdrawal. Tr. at 75:2–11 ("THE COURT: Does the rule require a withdrawal request be in a 'memo format?' [THE GOVERNMENT]: There is nothing in the Air Force instruction that says memorandum, no. THE COURT: So is a memorandum required or not? [THE GOVERNMENT]: I would say no, but there has to be some type of request. THE COURT: Can an email be a request? [THE GOVERNMENT]: I don't know, Your Honor. It's possible."). Moreover, the Board explains plaintiff "underst[ood] that an official written request was required," but then elevates the written request requirement to an "official written memorandum requesting a waiver of her separation . . . to initiate the withdrawal of voluntary separation process." AR at 9 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings). Plaintiff sent an email on 16 November 2016 to the AF/A1LO asking to not be separated—which constitutes a written request seeking a separation withdrawal request—and the AF/A1LO understood plaintiff's emails were indeed requests. *See* Tr. at 79:11–18; AR at 600 (Lt. Col. Somer's 14 November 2016 Email to Plaintiff) ("As soon as I have that and your memo, I will process the *request*.") (emphasis added).

Despite plaintiff's written request seeking withdrawal of her separation request, the Board concluded "there d[id] not appear to be an *official* request from her to withdraw her separation indorsed by her chain of command" because the request was not an "*official* written memorandum." *See* AR at 9 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings) (emphasis added). Instead of construing plaintiff's email as a withdrawal request pursuant to AFI 36-2110 § 2.30.1.5, the Board raised the standard for what constitutes a withdrawal without explanation. Tr. at 75:2–11 ("THE COURT: Does the rule require a withdrawal request be in a 'memo format?' [THE GOVERNMENT]: There is nothing in the

Air Force instruction that says memorandum, no.  THE COURT:  So is a memorandum required or not?  [THE GOVERNMENT]:  I would say no, but there has to be some type of request.");
*see also* 26 May 2023 Oral Arg. Tr. at 162:19–21 ("[THE GOVERNMENT]:  I don't specifically see where it says it has to be via memorandum.").  In so doing, the Board ignored the Court's 2023 Order noting the government did not prove withdrawal of a separation request requires submission of a written memorandum to the Wing Commander through the chain of command.  *See Stahl*, 167 Fed. Cl. at 686 (2023) ("Considering the Board analyzed one email and one memorandum, the Board could engage with all separation withdrawal requests alleged by plaintiff, yet, without citing a regulation, the Air Force claims only the memorandum was 'proper.'") (citations omitted).

Given the Court expressly noted no AFI mandated a written memorandum to initiate a separation withdrawal under AFI 36-2110 § 2.30.1.5, and given the Board's post-remand decision relied on the AF/AILO's response requiring a completed memorandum "to initiate the withdrawal of voluntary separation process," the Board contravened AFI 36-2110 and the Court's 2023 Order by imposing a memorandum requirement on plaintiff's request.  The AFCBMR "may be reviewed for failure to correct plain legal error committed by the military . . . includ[ing] the military's 'violation of statute, or regulation, or published mandatory procedure, or unauthorized act;'" accordingly, the Board's contravention of the AFI and the Court's 2023 Order is arbitrary and capricious and runs contrary to applicable statutes and regulations.  *Dodson v. U.S. Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citing *Arens v. United States*, 969 F.2d 1034, 1037 (Fed. Cir. 1992); *Grieg v. United States*, 640 F.2d 1261, 1266, 226 Ct. Cl. 258 (1981)) (other citations omitted); *Roth v. United States*, 378 F.3d 1371, 1394–96 (Fed. Cir. 2004) (mandating the AFBCMR to correct injustices and errors clearly presented in the record); *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (discussing this court's power to disturb factual findings of a correction board when a board's decision is "contrary to applicable statutes and regulations").

### 5.    The Board Did Not Explain Why It Concluded Plaintiff's Email Was Not a Request

Despite the Court's 2023 remand instructions requiring the Board to explain why it did not act on plaintiff's requests, the Board's decision: (1) did not address the Court's 2023 remand instruction; (2)  did not analyze whether any procedural or substantive requirements exist to define "official" standards for a withdrawal request, *see supra* Section VI.A.3; and (3) to the extent the requirements do exist, did not explain how plaintiff's emails failed to satisfy those requirements.  *See generally* AR at 1–9 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings).  The Board instead held "[plaintiff] has not presented any evidence the Air Force ignored her request [because] neither email presented as evidence of her contentions contains an *official* request to withdraw the separation action."  *Id.* at 9 (emphasis added).  Specifically, the Board did not explain how plaintiff's email fell short of a request to withdraw the separation request.  *See generally id.* at 2–9.  The only item the government identified at oral argument when asked "where [the Board] discuss[es] the decision not to forward that request" was the AF/A1LO's conclusion adopted in the Board's decision, which read: "'having examined and considered all of the September 2016 emails in the administrative record, AF/A1LO concludes that the Air Force did not ignore the Applicant's request to withdraw her separation,

because we have no record of such request.'" Tr. at 44:11–22. The Board's entire justification for not acting on plaintiff's request thus relies on the AF/A1LO's unsubstantiated conclusion plaintiff's 16 November 2016 email was not a request—despite the Court's instruction to compile a satisfactory explanation as to why it did not act on plaintiff's requests (*i.e.*, why the Board thought plaintiff's email was defective). Given the Court finds plaintiff's November 2016 email constituted a withdrawal request, *see supra* Section VI.A.3, and the Board failed to substantiate its "formal memorandum" requirement, *see supra* Section VI.A.4, the Board's decision was arbitrary and capricious and unsupported by substantial evidence—the decision "entirely failed to consider an important aspect of the problem" by neither acting on nor explaining refusal to act on plaintiff's requests, as required by the Court's 2023 instructions. *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Accordingly, the Court remands to the Board (1) to consider if the Air Force's failure to construe plaintiff's November 2016 email as a proper withdrawal request resulted in an error or injustice to plaintiff; and (2) should the Board find errors or injustices occurred, to fix those errors and injustices. *See infra* Section IX.

### B.    The Board Did Not Identify the Wing Commander's Rationale

In addition to requiring the Board to compile a satisfactory explanation for not acting on plaintiff's email requests, the Court required the Board to explain the Wing Commander's rationale in denying plaintiff's requests. *See Stahl v. United States*, 167 Fed. Cl. 657, 693 (2023) (Holte, J.). The Court, in its 2023 Order, found "AF/A1LO could have explained why the Air Force did not act on, and the Wing Commander did not provide reasons for denying, plaintiff's withdrawal request or why such actions are consistent with procedural regulations." *Id.* at 682. Specifically, the Court instructed the Board to "[i]dentify the Wing Commander's rationale for failing to provide reasons under AFI 36-3207 § 2.14.4 (2004) or articulate the reason the Wing Commander cannot be contacted," and "remand[ed to the Board] the issue of whether the Wing Commander's exercise of discretion in refusing to indorse the 13 February 2017 request was a violation of AFI 36-2110 § 2.30.1.5 (2009) and AFI 36-3207 § 2.14.4 (2004) . . . to review plaintiff's 12 September 2016 and subsequent separation withdrawal requests." *Id.* at 688–689, 693.

After the 2023 Remand, the Wing Commander provided a written statement on the circumstances of plaintiff's separation and withdrawal requests. *See* AR at 543 (Maj. Gen. April Vogel's 22 December 2023 Memorandum). In the statement, the Wing Commander admitted she "do[es] not recall the disposition of the indorsement of Lt Col Stahl's request, nor do[es she] have in [her] possession documentation of [her] response." *See id.* The Wing Commander stated she "remember[s] discussing the situation" and concluded her "actions in this case appear to have been consistent with the process [she] customarily use[s]" for personnel actions—all without recalling the disposition of the indorsement or confirming receipt of the documentation. *See id.* The Wing Commander "did not find it appropriate to approve the request" based on plaintiff's request "along with the needs of the Air Force, guiding regulations and recommendations from subordinate commanders." *Id.*

The Board confirms the Wing Commander did not provide a written indorsement: "there

is no evidence the wing commander provided a written response to the applicant's request in accordance with AFI 36-3207." AR at 10 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings). Though the Wing Commander made "no record on a written indorsement listing the reasons for denial," the Board uses the Wing Commander's in-person meeting with plaintiff to justify the lack of written indorsement. *Id.* "While there is no evidence the wing commander provided a written response to the applicant's request in accordance with AFI 36-3207," the Board concluded "the wing commander considered her request and the reasons for denial were communicated to her." *Id.*

Pursuant to AFI 36-3207 § 2.14 (2004), after an officer requests to withdraw separation, the Military Personnel Flights ('MPFs'), which provide a variety of personnel services to active duty and retired military, reservists, civilian employees, and families, must:

> Forward a copy of the separation application, the withdrawal request of a separation instead of assignment, and the wing commander indorsement directly to [Headquarters Air Force Personnel Center (Randolph Air Force Base, TX) / Retirements and Separation Branch ('HQ AFPC/DPPRSO'); f]orward all other withdrawal requests with wing commander indorsements and a copy of the application for separation based on conscientious objector through the same channels that processed the application for separation[;] and [n]otify the command or headquarters to hold the application for separation until receiving the withdrawal request. The command or headquarters processes both the application for separation and the withdrawal request. Commanders indorsing withdrawals must include their reason for recommending approval or disapproval.

AFI 36-3207 §§ 2.14.1-2.14.4 (2004). The Court, in its 2023 Order, analyzed this same AFI, holding the Wing Commander's failure to provide a written indorsement evidenced "the Air Force['s] fail[ure] to comply with established procedures, specifically AFI 36-3207 § 2.14.4 (2004), and [concluded] the Board's decision upholding the lack of reasonable process is arbitrary and capricious." *Stahl*, 157 Fed. Cl. at 683 (citations omitted).

Absent from the Board's post-remand decision and the AR is "record o[f] a written indorsement listing the reasons for denial" and "evidence the wing commander provided a written response to the applicant's request in accordance with AFI 36-3207"—contravening the AFI and the Court's 2023 Order. *See* AR at 10 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings); *Stahl*, 157 Fed. Cl. at 693. The Court instructed the Board to provide the Wing Commander's "rationale for failing to provide reasons under AFI 36-3207 § 2.14.4"—the Board and the Wing Commander did not. *See id.* At oral argument, the government admitted the Board did not address the non-indorsement nor the rationale for the non-indorsement. *See* Tr. at 121:23–122:14 ("[THE COURT:] [D]o you agree that the advisory opinion and the board decision do not discuss whether the non-endorsement and the failure to provide reasons was a violation specifically of the AFIs that were cited? . . . [THE GOVERNMENT: I]t's not possible to violate the AFI if there's no . . . . appropriate request. THE COURT: So that's why the board does not address? [THE GOVERNMENT]: Yes."). Given the Court found plaintiff's November 2016 email constitutes an appropriate withdrawal request, *supra* Section VI.A.3, AFI 36-3207 § 2.14.4 mandates the Wing "Commander[]

indorsing [the] withdrawal[ to] include the[] reason for recommending approval or disapproval."
As the government admits the Wing Commander failed to provide a written rationale for
indorsement and considering the Board "entirely failed to consider an important aspect of the
problem" by not identifying the Wing Commander's rationale, the Board's decision was
arbitrary and capricious and contrary to law. *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d
1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.
Co.*, 463 U.S. 29, 43 (1983)). Accordingly, the Court remands to the Board (1) to consider if the
Wing Commander's failure to provide an indorsement resulted in an error or injustice to
plaintiff, and (2) should the Board find errors or injustices occurred, to fix those errors and
injustices. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004). *See infra* Section IX.

### C.    The Board Did Not Properly Consider Its Best Interests

The Court next reviews whether the Board's decision analyzed if "the Air Force acted in
its 'best interests.'" *See Stahl v. United States*, 167 Fed. Cl. 657, 686 (2023) (Holte, J.). Since
2018, this court has questioned whether the Air Force acted in its best interests, as "the fact that
[p]laintiff was rehired as a civilian in the same position of responsibility appears to indicate that
[p]laintiff's separation was not in the 'best interests' of the Air Force." *See Stahl v. United
States*, 141 Fed. Cl. 396, 407 (2018) (Braden, J.). In its 2023 Order, the Court noted "the
AF/A1LO makes a recommendation of approval or disapproval of the separation withdrawal
request based on the manning and best interests of the Air Force," but because "the Board
accepted AF/A1LO's conclusion the Air Force acted in its 'best interests' without any detail,"
the Court found the Board failed to "ask what 'best interests' meant in accordance with AFI
36-2110 § 2.30.1.5 (2009)." *Stahl*, 167 Fed. Cl. at 686 (Holte, J.). Accordingly, the
Court held in its 2023 Order the Board's acceptance of "AF/A1LO's rationale without sufficient
review of the relevant evidence and adequate understanding of AF/A1LO's 'best interest'
determination" was arbitrary and capricious. *Id.* at 686–87 ("The Board therefore arbitrarily and
capriciously concurred with AF/A1LO's opinion the Air Force's failure to abide by procedure
was in the best interests of the agency notwithstanding the lack of substantial evidence."). The
Court remanded "the issue of whether the Wing Commander's exercise of discretion in refusing
to indorse the 13 February 2017 request was a violation of AFI 36-2110 § 2.30.1.5 (2009) and
AFI 36-3207 § 2.14.4 (2004) to the AFBCMR to review plaintiff's 12 September 2016 and
subsequent separation withdrawal requests." *Id.* at 688–89 (citations omitted).

Plaintiff maintains the Wing Commander and the Air Force "failed to consider the best
interest of the Air Force and replaced it with her perception that Dr. Stahl had to be 'all in', that
no airman who declined an assignment should be retained on active duty." Pl.'s MJAR at 16.
Plaintiff contends the Board failed to adequately assess this "unwritten 'being all in' concept."
*Id.* at 5–6, 16. Given plaintiff later "was rehired as a civilian in the same position of
responsibility," and the Wing Commander "believed that airmen who decline an assignment
should not serve in the Air Force," plaintiff contends the Board acted "contrary to Department of
Defense Instruction 1315.18 Procedures for Military Personnel Assignments (2015) [after]
incorporating change 3 (2019) and AFI 36-3207." Pl.'s MJAR at 5–6. Plaintiff argues "the fact
that [plaintiff] was rehired as a civilian in the same position of responsibility" and "the Secretary
of the Air Force [] faced the 84% manning shortage" is evidence plaintiff's "separation was not
in the best interest of the Air Force." *Id.* at 5, 20 (citing *Stahl*, 141 Fed. Cl. at 407). Plaintiff

further argues the Board "accept[ed] the best interests of the Air Force *post hoc* justifications without any questions," "failed to reference any evidence to show that [plaintiff]'s requests to properly process her withdrawal request were improper," "conducted an imbalanced review of the evidence that favored the Air Force Colonel Management," and "effectively declared the violations harmless." *Id.* at 6.

In response, the government argues "although Dr. Stahl was an excellent physician, her desire to remain stationed only at MacDill was not in the best interest of the Air Force." Gov't's Cross-MJAR at 6. According to the government, the "all in" concept is not a secret given the Air Force provides a separation option for members who wish to not be subjected to military requirements, which could mean being away from their families for extended periods of time and relocating around the world. *See id.* at 20. Further, the government argues "the Court should not afford weight to the board staff's choice of language" because "the questions were derived from plaintiff's written submission," indicating the Board "considered all relevant evidence in reaching its decision." *Id.* at 24 (cleaned up). According to the government, the Board "did not make a finding that there was a violation of Air Force regulations." *Id.* (emphasis omitted).

At oral argument, the government admitted "[t]he board did not address the best interest question in this decision" and "do[es]n't believe [the Board] did" address the question in its 2024 decision and opinion. Tr. at 99:7–17. Specifically, the government explains the Board is "analyzing the emails and the Wing Commander's lack of endorsement, . . . but neither one of those contemplates the best interests of the Air Force." Tr. at 101:21–102:15. The government understands "[plaintiff] was employed . . . as a civilian at MacDill" working at the same hospital at which she previously worked. Tr. at 157:5–16. Despite acknowledging plaintiff "was undeniably a 'talented' physician" (and internally discussing whether plaintiff knew about the "all in" concept), the Board did not consider or address the issue of what "all in" means. Gov't's Cross-MJAR at 23; Tr. at 100:1–101:11. Instead, the government simply asserts plaintiff may have known about the "all in" concept, based on "the fact that Colonel Vogel had a[n] in-person meeting with Colonel Stahl on 16 February 2017," but admits " [it] do[es]n't recall seeing the all-in phrase in the [Board's] decision. Tr. at 100:1–101:11.

Despite the Court having already twice instructed the Board to consider all relevant evidence and address the best interests of the Air Force in its decision, the Board's decision neither addressed the Wing Commander's "all in" concept nor the best interests of the Air Force. *See generally* AR at 9–10 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings). The Board again "accepted AF/A1LO's conclusion the Air Force acted in its 'best interests' without any detail." *Stahl*, 167 Fed. Cl. at 686. For the same reasons Judge Braden held in 2018, and the Court held in 2023, the Court again holds the Board "acted arbitrarily and capriciously [(1)] in accepting AF/A1LO's 'best interests' determination upholding the Wing Commander's denial of plaintiff's withdrawal request without sufficient explanation in violation of AFI 36-3207 § 2.14.4 (2004) [and; (2) in accepting] AF/A1LO's 'best interests' conclusion with respect to the Air Force's failure to follow procedure without additional explanation." *Id.* at 686–89; *see also* Tr. at 99:7–17 ("THE COURT: Has there been any rebuttal to the points made in plaintiff's February 2017 memo regarding her desire to be kept in the Air Force and why it would be in the Air Force's best interest? [THE GOVERNMENT]: The board did not address the best interest question in this decision. THE COURT: In the 2024 decisions and opinion, did

- 23 -

those provide analysis for what the best interest of the Air Force is at all?  [THE GOVERNMENT]:  I don't believe they did, Your Honor.").  "Where, as here, a correction board[] 'fails to support its decision with a reasoned explanation of an important issue, a remand is appropriate.'"  *Stahl*, 167 Fed. Cl. at 692 (quoting *Rominger v. United States*, 72 Fed. Cl. 268, 273 (2006)).  Accordingly, the Court remands to the Board to consider, in accordance with this Order, whether the Air Force acted in its best interests.  *See infra* Section IX.

### D.    The Board Did Not Address Bad Faith

The Court next reviews whether the Board investigated any "flavoring of bad faith" on behalf of the Colonels Group.  *See Stahl v. United States*, 167 Fed. Cl. 657, 687 (2023) (Holte, J.).  In its 2023 Order, the Court found:

> The Board failed to consider if the correspondence between The Colonels Group and plaintiff had a flavoring of bad faith rising to the level of '[m]isrepresentation[, which is] caused by providing misleading information or by failing to provide relevant information.' . . .  Specifically, the Board could have inquired to The Colonel's Group regarding:  (1) their communications with plaintiff, including their provision of incomplete instructions regarding the requirement to have a Wing Commander indorse withdrawal requests; (2) their failure to properly process plaintiff's 2016 separation requests; and (3) their decision not to forward plaintiff's withdrawal request.

*Id.* at 687–88 (quoting *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983); *Tippet v. United States*, 185 F.3d 1250, 1255 (Fed. Cir. 1999)).  Despite (1) the Court finding the Board failed to consider evidence in the record regarding misrepresentations by the Colonels Group; and despite (2) plaintiff's briefs alleging her requests were ignored and citing an Air Force officer email offering "a few rounds at CORONA" to quickly separate plaintiff given her efforts to stay on active duty, the government nevertheless claimed at oral argument plaintiff's briefing did not raise the issue of bad faith.  *See Stahl*, 167 Fed. Cl. at 687–88; Pl.'s MJAR at 6–10, 17; Pl.'s Reply at 3, 8, 10–11, 13; Tr. at 123:22–125:7.  When pressed at oral argument regarding whether "the 2024 advisory opinion, or June 2024 decision, ever consider[ed] bad faith," the government admitted "[t]here is no reference in there to bad faith" and reasserted based on "[its] recollection of the briefing[,] that issue was also not raised."  Tr. at 123:22–124:16.  The government also argued "the Court has already addressed" "the implication [plaintiff] was somehow misled or . . . not provided sufficient information" and maintained it "do[es]n't think the board addressed it . . . , because there just simply wasn't any evidence" the Board "was misleading."  Tr. at 123:22–124:16.  Moreover, regarding plaintiff's multiple allegations of bad faith and Air Force personnel avoiding her in the record, the government admitted at oral argument plaintiff's allegations were not reviewed by the Wing Commander:

> THE COURT:  [In] Dr. Stahl's declaration, she makes a number of statements regarding her interactions or inability to get in touch with Colonel Vogel at the time.  [THE GOVERNMENT]:  Right.  THE COURT:  Does Colonel Vogel address that?  [THE GOVERNMENT]:  Colonel Vogel doesn't address those accusations directly.

. . .

> THE COURT:  Related to General Vogel, Dr. Stahl has alleged that General Vogel
> was avoiding her at the time these communications were occurring in 2017.  Is there
> anything in the record that details General Vogel's review of that?    [THE
> GOVERNMENT]:    That specific assertion that she was avoiding her?    THE
> COURT: Yeah.  [THE GOVERNMENT]:  I don't believe so, Your Honor.

Tr. at 110:1–8, 121:7–17.  Similar to the Board's failure to address the Court's instructions
regarding whether the Air Force was acting in its best interests, the government agreed "[t]here is
no reference in [the Board's decision] to bad faith."  Tr. at 123:22–25.  Given the Court
previously found the Board failed to consider and investigate bad faith or misrepresentation in
the withdrawal correspondence with plaintiff, and considering the government's admission the
Board again made no attempt to do so, the Board arbitrarily and capriciously failed to "consider[]
all of the relevant evidence and provide[] a reasoned opinion that reflects a contemplation of the
facts and circumstances pertinent to the case before it."  *Verbeck v. United States*, 97 Fed. Cl.
443, 451 (2011) (citing *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) ("Under
the substantial evidence rule, *all* of the competent evidence must be considered.")).
Accordingly, the Court remands to the Board to consider all relevant evidence, including but not
limited to correspondence between the Colonels Group and plaintiff, and provide a reasoned
opinion related to whether, upon contemplation of the facts and circumstances, the evidence
shows bad faith.  *See infra* Section IX.

## E.    The Board Did Not Review Plaintiff's New Declaration

After the 2023 Remand, on 10 April 2024, plaintiff provided an eleven-page declaration
recounting her perspective of her separation from the Air Force, where she stated, "[i]t was
nearly impossible to schedule an appointment with Col Vogel in early February 2017" as it
seemed "Col Vogel was simply avoiding [her] and ignoring [her] requests for an appointment"
given Col Vogel's "secretary kept telling [her] that Col Vogel was always out and not available."
AR at 567 (Plaintiff's 10 April 2024 Declaration).  According to plaintiff, after multiple requests,
Col. Vogel met with plaintiff and told her: (1) "anyone who declined an Air Force assignment
should not be allowed to remain on active duty;" (2) Col. Vogel "had complete discretion
regarding her endorsement/nonendorsement;" and (3) Col. Vogel "would not consider any
hardships."  *Id.* at 567–69.  In one paragraph, the Board's decision disposed of plaintiff's
eleven-page declaration:

> Finally, the applicant has posited several different, often conflicting facts to support
> her contentions.  Arguments introduced by the applicant include being misinformed
> regarding her options under the Seven Day Option policy, her entitlement to a
> hardship waiver, her entitlement to withdraw her voluntary separation, her inability
> to transfer to the reserve component, her willingness to "take any assignment,
> anywhere, at any time" and her inequitable treatment compared to those similarly
> situated.  None of these declarations are supported by evidence.  Combined with
> the applicant's failure to acknowledge the delay in her separations process was, in

part, self-imposed due to her request to the Secretary of the Air Force Personnel Council for an active duty service commitment waiver and her initiation of the PALACE CHASE process, the inconsistencies and constant flexing of her justification for relief weakens her position in the eyes of the Board. Therefore, the Board recommends against correcting the applicant's records.

AR at 10 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings).

The Court reviews whether the Board reviewed "all relevant evidence on record regarding the impact of the Air Force's failure to follow separation withdrawal procedures," *Stahl v. United States*, 167 Fed. Cl. 657, 693 (2023) (Holte, J.), and whether the Board "considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it." *Verbeck v. United* States, 97 Fed. Cl. 443, 451 (2011) (citing *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983).

At oral argument, the government maintained plaintiff's declaration was inconsistent and provided conflicting facts. *See* Tr. at 119:11–16. When asked, however, whether it was "fair to say that there's nothing that conflicts what Dr. Stahl has concluded factually in her declaration," considering "General Vogel's declaration is . . . not factually substantive," the government admitted "that would be fair to say," but argued Maj. Gen. Vogel wasn't tasked with rebutting plaintiff's 2024 declaration because that's "the board's problem[, as] this is one of the tasks that the board has as part of its function, [*i.e.*,] to review and weigh evidence, and that's what's going on here. *See* Tr. at 117:6–119:11. The government agreed Maj. Gen. Vogel's declaration did not present facts conflicting with the facts presented in plaintiff's declaration. Tr. at 119:1–8 ("[THE COURT:] What I'm wondering is that there's only two declarations in the record, and at least when it comes to the two declarations, the two don't conflict. [THE GOVERNMENT]: I guess [] yes, I guess that would be accurate."). In an effort to clarify the Board's reference to conflicting facts in plaintiff's declaration, the government noted the Board's mention of "declarations" in its decision does not relate to plaintiff's declaration, but instead refers to plaintiff generally "posit[ing] several different often conflicting facts to support her contentions." Tr. at 120:3–21. Although the Board said "[n]one of these declarations are supported by evidence," the government "do[es]n't think the declaration word there is meaning in the legal sense of . . . this is a document." *Compare* AR at 10 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings) *with* Tr. at 120:16–121:6.

The Board is tasked with reviewing and weighing all evidence before it. *Verbeck*, 97 Fed. Cl. at 451 (citing *Heisig*, 719 F.2d at 1157 ("Under the substantial evidence rule, *all* of the competent evidence must be considered.")). The Board failed to review all the evidence, considering, according to the government, the only reference to a "declaration" in the Board's decision does not even refer to plaintiff's declaration. *See* AR at 9 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings); Tr. at 120:16–121:6; *Verbeck*, 97 Fed. Cl. at 451 (citing *Heisig*, 719 F.2d at 1157). To evidence the Board's contemplation of plaintiff's declaration or explain why the Board found the allegations in plaintiff's declaration contradictory, the Board could have included information from the declaration and compared it to the record or the Wing Commander's statement. To the extent the Board found the

declaration unpersuasive, the Board should have explained it reviewed plaintiff's declaration and then explained why it concluded the allegations were contradictory. *Verbeck*, 97 Fed. Cl. at 451 (citing *Heisig*, 719 F.2d at 1157). The Board did neither. *See* AR at 9 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings). Given the Board did not review or consider plaintiff's declaration nor explain why it believes plaintiff's declaration is inconsistent or contradictory, the Board did not "consider[] all of the relevant evidence and provide[] a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it." *Verbeck*, 97 Fed. Cl. at 451 (citing *Heisig*, 719 F.2d at 1157. Accordingly, the Court remands to the Board to consider all relevant evidence, including but not limited to plaintiff's declaration, and provide a reasoned opinion related to whether, upon contemplation of the facts and circumstances, the evidence shows contradictory allegations. *See infra* Section IX.

## VII.    The Board and the Government Propose New, Unsupported Conclusions

Having considered whether the Board contravened applicable AFIs and whether it followed the Court's 2023 remand instructions, the Court next determines the propriety of the Board's new justifications for (1) disregarding plaintiff's requests and (2) the Wing Commander's failure to provide a written indorsement. First, the government, in its Cross-MJAR, maintains none of plaintiff's emails constituted a withdrawal request because (a) plaintiff did not "file" a request; and (b) email messages do not qualify as "official" correspondence in the Air Force. *See* Gov't's Cross-MJAR at 12–17. The government also proposes plaintiff's declaration is inconsistent and contradictory. *See* Tr. at 119:11–16. Second, the government argues the Wing Commander did not need to provide a written indorsement. *See* Tr. at 29:2–30:13.

### A.    New Justifications for Disregarding Plaintiff's Requests

After the 2023 remand, the government argues, for the first time, the Board did not act on the request because plaintiff "didn't *file* the request." *See* Tr. at 64:6–20; *see also supra* Section VI.A; *Stahl v. United States*, 167 Fed. Cl. 657, 684–85 (2023) (Holte, J.); *see* Tr. at 75:2–11 ("THE COURT:  Does the rule require a withdrawal request be in a 'memo format?' [THE GOVERNMENT]:  There is nothing in the Air Force instruction that says memorandum, no. THE COURT:  So is a memorandum required or not?  [THE GOVERNMENT]:  I would say no, but there has to be some type of request."); *see also* 26 May 2023 Oral Arg. Tr. at 162:19–21 ("[THE GOVERNMENT]:  I don't specifically see where it says it has to be via memorandum."). As discussed in both the 2023 Order and this Order, the AFIs do not contain procedural regulations, *i.e.*, whether withdrawal requests must be "filed," sent to a particular recipient, or submitted in a specific format. *See supra* Section VI.A; *Stahl*, 167 Fed. Cl. at 682 ("AF/A1LO could have explained why the Air Force did not act on, and the Wing Commander did not provide reasons for denying, *plaintiff's withdrawal request* or why such actions are consistent with procedural regulations. AF/A1LO instead did not answer the Board's questions . . . . The Board, however, deemed AF/A1LO's non-answer sufficient without following up regarding previously identified rule violations.") (emphasis added). To the extent the Board explains procedural regulations *do* exist or apply in this proceeding, such as, for

example, a requirement to "*file* the request," the Board should have identified such procedural regulations in response to the Court's instruction to "compile satisfactory explanations" for not acting on plaintiff's request. Because the Board did not consider whether plaintiff was required to *file* the request, and "such explanations have been submitted 'for the first time in response to [plaintiff's] petition for judicial review[,]'" these explanations constitute "improper post hoc justification[s]." *Verbeck v. United States*, 97 Fed. Cl. 443, 460 n.25 (2011) (quoting *Poole v. Harvey*, 571 F. Supp. 2d 120, 126 (D.D.C. 2008)) (some alterations in original); *Poole*, 571 F. Supp. 2d at 126 ("It is a 'fundamental rule of administrative law' that a court reviewing an agency's decision 'must judge the propriety of [agency] action solely by the grounds invoked by the agency.'") (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (alterations in original).

In another new argument, the government introduced a section of the Air Force Handbook, which states "[e]mail communications are generally not sufficient to be considered official actions in the Air Force." Gov't's Cross-MJAR at 14 n.8 (citing Air Force Handbook § 33-337). The Board, however, did not consider Air Force Handbook § 33-337 or whether email communications constitute official actions. *See generally* AR at 1–11 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings); *see also* Tr. at 75:12–76:23 ("THE COURT: So Footnote 8 in your cross-MJAR argued that, 'Email communications are generally insufficient,' and you cited an Air Force Handbook rule. Is that true? . . . [THE GOVERNMENT]: I would fall back on the Air Force Handbook for what's required and what's not. THE COURT: Did the Air Force consider this argument or did anyone on the board cite that rule? . . . [THE GOVERNMENT:] Off the top of my head, I don't believe it's in there . . . THE COURT: So a requirement within the Air Force Handbook, though, you agree would be a post hoc justification? It wasn't something that the board found on their own? [THE GOVERNMENT]: I wouldn't want to answer that, Your Honor, without taking the opportunity to go back and review the board's determination before I could answer that question clearly. THE COURT: How about plaintiff, was the Air Force Handbook cited in any of the board records on remand or before? [PLAINTIFF]: No, Your Honor."). Accordingly, given the Board did not consider the Handbook or whether emails constitute official actions, "[e]ven if the government's current arguments as to these matters provided sufficient merit to substantiate the Board's conclusions . . . such explanations have been submitted 'for the first time in response to [plaintiff's] petition for judicial review[,]' and thus constitute "improper post hoc justification[s]." *Verbeck*, 97 Fed. Cl. at 460 n.25 (quoting *Poole*, 571 F. Supp. 2d at 126) (some alterations in original); *Poole*, 571 F. Supp. 2d at 126 ("It is a 'fundamental rule of administrative law' that a court reviewing an agency's decision 'must judge the propriety of [agency] action solely by the grounds invoked by the agency.'") (quoting *Chenery Corp.*, 332 U.S. at 196).

**B.    New Justifications for Non-Indorsement of Plaintiff's Request**

In addition to ignoring the Court's 2023 Order requiring the Board to "[i]dentify the Wing Commander's rationale for failing to provide reasons," the government proffers another novel argument: under "the Air Force's interpretation of [AFI 36-3207 § 2.14.4,] there's

actually a third option[:] . . . [the Wing Commander] can endorse with approval, [it] can endorse with disapproval, or [it] cannot endorse at all." Tr. at 29:11–25. As a result, the government proposes, the Wing Commander "do[es]n't have to endorse at all." *Id.* AFI 36-3207 § 2.14.4 (2004) requires "[c]ommanders indorsing withdrawals [to] include their reason for recommending approval or disapproval," and AFI 36-3207 § 2.14.2.1 (2004) further requires Military Personnel Flights to "[f]orward a copy of the separation application, the withdrawal request of a separation instead of assignment, *and* the wing commander indorsement directly to HQ AFPC/DPPRSO." AFI 36-3207 §§ 2.14.2.1, 2.14.4 (2004) (emphasis added). When asked at oral argument where AFI 36-3207 § 2.14.4 provides a commander need not indorse at all, the government admits: "In this particular provision, it doesn't." Tr. at 29:11–25. The government's position, however, is belied by the AF/A1LO explaining "separations [withdrawal] requests are *required* to be indorsed by the service member's chain of command." AR at 6 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings) (emphasis added). The government further argued the Wing Commander did not need to make an indorsement decision because plaintiff's request was not submitted within the 30 days of the separation. *See* Tr. at 40:1–41:10.

Regardless of whether the AFIs support the government's position and regardless of whether the AF/A1LO confirmed indorsements are required, plaintiff proposes these arguments were not considered by the Board. Pl.'s MJAR at 8–9. At oral argument, the government admits the Board did not consider whether the Wing Commander needed to indorse with approval or disapproval:

> THE COURT: Where in the board decision does the board justify that General Vogel did not need to endorse with approval or disapproval, if it were a proper request? The board does not address that? [THE GOVERNMENT]: Well, no, Your Honor, because it found that it wasn't a proper request. So after making that finding, it didn't engage in that hypothetical.

Tr. at 36:8–14. Moreover, regarding the timing of plaintiff's request, the Wing Commander's statements were silent about a 30-day requirement and plaintiff's purported failure to satisfy the requirement. *See generally* AR at 539 (Maj. Gen. Vogel's 22 December 2023 Memorandum). At oral argument, the government admits the Board did not characterize the reasoning for the non-indorsement but argues "the legal requirement is in the regulation . . . [and the Board] said it was a prohibited request. . . . Beyond that, [the government is] not sure anything further is required." Tr. at 40:1–41:24. Apart from stating plaintiff's request was a "prohibited request," the Board did not cite to the regulation, did not mention a 30-day requirement in its decision, and did not explain how a failure to satisfy the 30-day requirement constitutes a prohibited request nor how it would excuse a non-indorsement from the Wing Commander. *See generally* AR at 1–11 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings). The government clarified the Board only stated plaintiff's request was a "prohibited request"—which the government believes resulted from the 30-day requirement—and it "won't speculate beyond that." Tr. at 113:7–114:20. To the extent the Wing Commander did not need to submit an indorsement, either the Wing Commander or the Board could have mentioned in it in their documents—but they did not. Tr. at 114:21–115:17; *see also* AR at 539 (Maj. Gen. Vogel's 22 December 2023 Memorandum); AR at 1–11 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings). Further, if the government is correct, *i.e.*, the "prohibited request"

determination *is* derived from plaintiff's purported failure to submit her request within 30 days, the Board is required to *explain* the legal requirements in the regulation and why plaintiff's requests did not satisfy the legal requirements. *See Verbeck v. United States*, 97 Fed. Cl. 443, 458 (2011) ("The court cannot construe the Board's six-word statement on this issue to encompass the numerous arguments the government now presents") ("While an agency can provide a 'brief statement' justifying its decision, such a statement must explain 'why it chose to do what it did.'") (citing *Epstein v. Geren*, 539 F. Supp. 2d 267, 274 (D.D.C. 2008) (quoting *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001)). Considering the government admits it is "not sure anything further is required," Tr. at 40:1–41:24, and admits a full understanding of the Board's determination the request was prohibited would require "speculat[ion]," Tr. at 113:7–114:20, the Board did not demonstrate it considered whether the 30-day requirement applies, whether plaintiff's request failed to satisfy the 30-day requirement, or whether the Wing Commander was excused from submitting a non-indorsement as a result of the 30 day requirement.

The government agreed "arguments made in this court that were not relied on by the agency below . . . [are] not okay" and constitute improper *post hoc* justifications. *See* Tr. at 9:9–10:22. Specifically, the parties agreed "the *post hoc* justification legal rule" prohibits "an argument that the government makes for the first time in response to litigation and judicial review to prop up or otherwise substantiate the Board for Correction of Military Records' decision." Tr. at 7:10–19, 9:20–10:22; *see Watson v. United States*, 113 Fed. Cl. 615, 635–38 (2013). The parties also confirmed the *post hoc* justification rule prohibits the government "from introducing new evidence or new arguments before the [C]ourt that the board did not consider." *See* Tr. at 10:23–11:7; *see also* Tr. at 9:9–10:22. "Even if the government's current arguments as to these matters provided sufficient merit to substantiate the Board's conclusions . . . such explanations have been submitted 'for the first time in response to [plaintiff's] petition for judicial review[,]' and thus constitute "improper post hoc justification[s]." *Verbeck*, 97 Fed. Cl. at 460 n.25 (quoting *Poole v. Harvey*, 571 F. Supp. 2d 120, 126 (D.D.C. 2008)) (some alterations in original); *Poole*, 571 F. Supp. 2d at 126 ("It is a 'fundamental rule of administrative law' that a court reviewing an agency's decision 'must judge the propriety of [agency] action solely by the grounds invoked by the agency.'") (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) (alterations in original); *see also* AR at 6 (AFBCMR's 3 July 2024 Decision and 7 June 2024 Record of Proceedings) ("[S]eparations requests are *required* to be indorsed by the service member's chain of command.").

## VIII.   The Board Is Required To Follow The Court's 2023 Remand Instructions

Having determined the Board did not follow the Court's 2023 remand instructions, the Court next reviews whether the Board was required to do so. The parties agreed at oral argument the Board is required to follow the Court's 2023 remand instructions. *See* Tr. at 26:18–27:6 ("[THE GOVERNMENT:] I would certainly agree that the board has to follow. . . the court's order . . . If there's an order from this court, the board is going to follow it. . . . [PLAINTIFF:] We would agree that the board is bound by the court's decision, and if the board ignores the court's decision or instructions, then we would contend that the board is acting arbitrary and capricious and contrary to law."). The government assented "[i]f the board disregarded this court's conclusion of law, . . . that would be arbitrary and capricious." Tr. at 25:7–18. Case law

further confirms the Board's duty to follow the mandate issued in the Court's 2023 Order: "the tribunal, in this case the Board, 'has no power or authority to deviate from the mandate issued.'" *Aydin Corp. (W.) v. Widnall*, No. 96-1267, 1997 WL 413329, at *3 (Fed. Cir. July 24, 1997) (quoting *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948) and citing *N. Helex Co. v. United States*, 634 F.2d 557, 560 (Ct. Cl. 1980)) (reversing the findings of the Armed Services Board of Contract Appeals for failing to adhere to the scope of the court's remand order). Considering the Board was mandated to follow the Court's 2023 Order and having determined the Board did not follow the Court's 2023 remand instructions, the Court remands the case to the AFBCMR for reconsideration of plaintiff's claim. *See infra* Section IX.

## IX.  Remand Instructions

In its 2023 Order, the Court remanded the case to the Board, instructing it "to evaluate plaintiff's record and consider how the separation withdrawal requests may affect her back pay and bonus payment." *Stahl v. United States*, 167 Fed. Cl. 657, 692 (2023) (Holte, J.) (citations omitted). The Court also required the Board to consider, "even if plaintiff's 2016 separation withdrawal requests for hardship were routed to the Wing Commander earlier than February 2017, [whether] the withdrawal request: (1) could have been denied; or (2) if approved, would have resulted in plaintiff submitting a humanitarian deferment request, which also could have been denied. The Board should also consider whether: (1) plaintiff's request to withdraw her separation had been proper; or (2) further delay in separation as a result of reviewing plaintiff's humanitarian request would necessitate months of back pay during that extended time." *Id.*

The parties agreed, at oral argument, should the Court remand the case, the Board must be provided yet another opportunity to address the remand instructions outlined in the Court's 2023 Order and consider plaintiff's requested relief. Tr. at 156:2–7 ("[THE COURT:] If the board's most recent decision from 2024 is arbitrary and capricious, are we right back there as where we were in 2023? [THE GOVERNMENT]: I mean, I guess, yeah, proceeding with the hypothetical that there is a finding that the board was arbitrary and capricious."); *see also* Tr. at 162:4–163:25. The Board must follow all explicit instructions of the Court's 2023 Order, which held "the Board's failure to acknowledge *plaintiff's separation withdrawal requests* was arbitrary and capricious." *See Stahl v. United States*, 167 Fed. Cl. at 691–93 (2023) (Holte, J.) (emphasis added). Specifically, the Board must carry out the appropriate next steps after receiving plaintiffs' withdrawal requests in September and November 2016, consistent with the remand instructions in the Court's 2023 Order. *See id.*; *see also* Tr. at 159:6–160:9 ("[THE COURT: L]et's assume in September of 2016, [plaintiff] did formally submit a withdrawal request. [THE GOVERNMENT]: My understanding is . . . the board is empowered to make a determination as to what's in the best interest of the Air Force. So even assuming [plaintiff made an appropriate request], the board still could make a determination that her separation on the appropriate date was in the best interest of the Air Force."). The Board must also consider plaintiff's requested relief (including but not limited to plaintiff's separation withdrawal and requests for backpay) and analyze whether the Secretary would have approved plaintiff's separation withdrawal in 2016. *See Stahl*, 167 Fed. Cl. at 689–93; Tr. at 160:10 –161:10 ("[THE

GOVERNMENT]:  [T]he [C]ourt would have to say, based on the standard of review, that the factual finding of the board was incorrect.  THE COURT:  And then just remand to the board with instructions on how to figure out what would come next?  [THE GOVERNMENT]: Yes . . . . [THE COURT: The Board then does] an after-the-fact conclusion on whether or not in 2016 the Secretary would have approved a separation withdrawal?  [THE GOVERNMENT]: That's right."); Tr. at 162:4–163:3 ("THE COURT:  [The Board w]ould make a decision as to what the Secretary of the Air Force would have done in 2016?  [PLAINTIFF]:  Yes . . . .  [THE GOVERNMENT]:  It's just the board."); Tr. at 157:5–158:6 (the Court noting the government's question of whether plaintiff would be owed backpay considering the pay plaintiff already received as a civilian in the Army Reserve after her separation, and directing the government to the Court's 2023 Order indicating the Board needed to consider that question); *see also Roth v. United States*, 378 F.3d 1371, 1381, 1394–96 (Fed. Cir. 2004) (mandating the Board to correct injustices and errors clearly presented in the record pursuant to 10 U.S.C. § 1552); *Aydin Corp. (W.) v. Widnall*, No. 96-1267, 1997 WL 413329, at *3 (Fed. Cir. July 24, 1997) ("[T]he trial tribunal, in this case [an Armed Services Board], 'has no power or authority to deviate from the mandate issued by an appellate court.'") (quoting *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306 (1948) and citing *N. Helex Co. v. United States*, 634 F.2d 557, 560 (Ct. Cl. 1980)).

In conducting its review, the Board **SHALL**, consistent with this and the Court's 2023 Order:

1.  Compile satisfactory explanations as to:  (1) why the Air Force did not act on plaintiff's 12 September 2016 and 16 November 2016 requests to withdraw her separation according to AFI 36-2110 § 2.30.1.5 (2009); or (2) why the Wing Commander did not list the reason(s) the applicant's request to withdraw her separation were denied in accordance with AFI 36-3207 § 2.14.4 (2004), *see supra* Sections VI.A–C, VIII;

2.  Review and consider all relevant evidence on record regarding the impact of the Air Force's failure to follow separation withdrawal procedures pursuant to AFI 36-2110 (2009) and AFI 36-3207 (2004) on plaintiff's separation date, including but not limited to the evidence the Court has found the Board decision under review did not address, *see supra* Sections VI.A, VI.D–E, VIII;

3.  Identify the Wing Commander's rationale for failing to provide reasons under AFI 36-3207 § 2.14.4 (2004) or articulate the reason the Wing Commander cannot be contacted, *see supra* Sections VI.B, VIII;

4.  Provide a complete explanation of the Board's determinations surrounding plaintiff's separation withdrawal requests, *see supra* Sections VI, VIII;

5.  Consider if the Air Force's failure to construe plaintiff's November 2016 email as a proper withdrawal request resulted in an error or injustice to plaintiff, and, should the

Board find errors or injustices occurred, fix those errors and injustices. *See supra* Section VI.A;

6. Consider if the Wing Commander's failure to provide an indorsement resulted in an error or injustice to plaintiff, and, should the Board find errors or injustices occurred, fix those errors and injustices. *See supra* Section VI.B;

7. Consider whether the Air Force acted in its best interests. *See supra* Section VI.C;

8. Consider all relevant evidence, including but not limited to correspondence between the Colonels Group and plaintiff, and provide a reasoned opinion related to whether, upon contemplation of the facts and circumstances, the evidence shows bad faith. *See supra* Section VI.D; and

9. Consider all relevant evidence, including but not limited to plaintiff's declaration, and provide a reasoned opinion related to whether, upon contemplation of the facts and circumstances, the evidence shows contradictory allegations. *See supra* Section VI.E.

## X.    Conclusion

For the foregoing reasons, the Court **GRANTS** plaintiff's Motion for Judgment on the Administrative Record, ECF No. 86, and **DENIES** the government's Cross Motion for Judgment on the Administrative Record, ECF No. 88. Consistent with this Order, the Court **REMANDS** the case to the AFBCMR for reconsideration. The remand proceedings **SHALL** be completed within six months of the date of this decision. The parties **SHALL** file a joint status report every sixty days advising the Court of the status of the proceedings on remand. The Court will retain jurisdiction over the case during the course of the proceedings on remand. The Court **STAYS** proceedings in the instant case during that time. Pursuant to Rule 52.2(e) of the Rules of the United States Court of Federal Claims, the parties **SHALL** file notice with the Court within thirty days of the Board's decision on remand stating whether that decision affords a satisfactory basis for the disposition of the case or whether the parties require further proceedings before the Court. The Clerk's Office is directed to serve a copy of this Opinion and Order upon the Board at the following address:

Deborah F. Davidson, Executive Director
Air Force Board for Correction of Military Records
SAF/MRBC
3351 Celmers Lane
Joint Base Andrews NAF
Washington, MD 20762-6435

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge